**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMOND WESTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 20 C 6189** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **CITY OF CHICAGO, ESTATE OF** | ) | |
| **MICHAEL KILL, ANTHONY** | ) | |
| **MASLANKA, WILLIAM MOSER,** | ) | |
| **JOHN PALADINO, DAN MCWEENY,** | ) | |
| **ANDREW CHRISTOPHERSON,** | ) | |
| **JEROME RUSNAK, VICTOR** | ) | |
| **BRESKA, and UNKNOWN** | ) | |
| **EMPLOYEES OF THE CITY OF** | ) | |
| **CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff, Demond Weston,

accuses numerous Chicago police officers of violating his constitutional rights by fabricating

evidence against him and coercing him to confess to a murder he did not commit. Defendants move

to dismiss certain of plaintiff's claims and to strike certain allegations in his complaint. For the

following reasons, the motions are denied.

## BACKGROUND

The following is a summary of the allegations of plaintiff's complaint, which the Court

must assume true at the pleading stage. On May 29, 1990, around 10 p.m., there were three

shootings in or near Chicago's West Englewood neighborhood. On June 8, 1990, there was another

shooting in which a man named Curtis Sims was killed. The following day, plaintiff, then

seventeen years old, was walking to a store in his neighborhood when he was arrested by defendants Kill, Breska, and Rusnack. Defendants took him to the Area 3 Detective Headquarters, without explaining to plaintiff why he had been arrested or giving him a *Miranda* warning. Once there, plaintiff was locked in an interrogation room and handcuffed to a chair, without being Mirandized or allowed to call his mother.

For hours, defendants interrogated plaintiff about the Sims murder, and he told them, truthfully, that he knew nothing about it and was not involved in any way. The officers surrounded plaintiff and physically abused him in an effort to coerce him to confess. After several hours, defendants also accused plaintiff of committing the unsolved May 29 shootings. Scared, injured, and exhausted, plaintiff finally agreed to give a statement to an Assistant State's Attorney falsely implicating himself in the May 29 shootings. Defendants told plaintiff exactly what to say, and he gave a statement in which he said that he participated in planning and executing an attack by members of the Gangster Disciples on members of a rival gang, the Vice Lords. The statement was fabricated by and fed to plaintiff by Moser and other defendant officers. Each of the defendant officers was present at some point during his interrogation and participated in the coercion that forced plaintiff to make a false statement. Plaintiff was charged with murder and attempted murder in connection with two of the May 29 shootings.

Meanwhile, defendants were also interrogating another man, Dwayne Macklin, having been informed that he had been involved in the Sims shooting. They physically and psychologically abused Macklin to coerce him to sign a statement falsely implicating plaintiff in one of the May 29 shootings, which took place at 57th Street and Wolcott Avenue. The statement contained the same fabricated account of a planned attack by Gangster Disciples on the Vice Lords that had been fed to plaintiff. Macklin had not been able to tell the officers anything about

plaintiff's involvement until they provided the information that his statement ultimately contained. Similarly, the officers approached Deneen Coats, a surviving victim of another of the May 29 shootings, which took place at 5530 South Justine Street. Like Macklin, she did not identify plaintiff as the shooter until defendants instructed her to select plaintiff's photograph from a photo array.

Based solely on the fabricated and coerced evidence, plaintiff was wrongfully convicted of committing the 57th Street and Justine Street shootings and sentenced to 75 years' imprisonment. Plaintiff filed a direct appeal, multiple petitions for post-conviction relief, and a petition for a writ of habeas corpus. Over the years, some of the defendant officers became notorious for coercing false confessions from suspects under the direction of disgraced Chicago Police Commander Jon Burge. Plaintiff alleges that the abuse he suffered was part of a pattern and practice of similar abuse and misconduct by Chicago police officers, including the defendant officers, which resulted in dozens of wrongful convictions like plaintiff's. Plaintiff filed a petition for a new trial in 2014, and the motion was granted in 2016. Subsequently, Special Prosecutor Robert Milan moved to vacate plaintiff's conviction and dismiss the charges against him. On December 19, 2019, plaintiff was released, after nearly thirty years in prison. In October 2020, this lawsuit followed.

Plaintiff's complaint consists of the following eleven counts asserting claims pursuant to § 1983 and Illinois law: Count I, for coercing his false confession in violation of his Fifth Amendment self-incrimination rights; Count II, for coercing his false confession in violation of his due process rights; Count III, for violating his due process rights by fabricating and suppressing evidence; Count IV, for malicious prosecution and unlawful pretrial detention under the Fourth and Fourteenth Amendments; Count V, for failure to intervene in the above-listed constitutional violations; Count VI, for conspiracy to commit the above-listed constitutional violations; Count

VII, for malicious prosecution in violation of Illinois law; Count VIII, for intentional infliction of emotional distress; Count IX, for civil conspiracy in violation of Illinois law; Count X, against the City of Chicago, for liability under the doctrine of respondeat superior; and Count XI, against the City of Chicago, for indemnification of the defendant officers under 745 ILCS 10/9-102. Plaintiff asserts the § 1983 claims in Counts I through VI against not only the defendant officers but also the City of Chicago, under the theory that the City's pattern of widespread practices caused the deprivation of constitutional rights that plaintiff suffered. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

## ANALYSIS

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to strike pursuant to Rule 12(f).

## I.     Motion to Dismiss

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Section 1983 creates a 'species of tort liability,'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983.

Defendants move to dismiss the following claims under Rule 12(b)(6): the coerced-confession due process claim in Count II; the suppression of evidence and suggestive procedures claims in Count III; the pretrial detention claim in Count IV, to the extent it is premised on the Fourteenth Amendment, rather than the Fourth, or purports to assert a federal malicious prosecution claim; the conspiracy claim in Count VI; and any derivative claims, including the failure to intervene, conspiracy, or *Monell* claims, to the extent they are based on any primary claim that the Court dismisses.

### A.  Count II: Coerced-Confession Due Process Claim and Statute of Limitations

"The Fourteenth Amendment provides that no person shall be deprived 'of life, liberty, or property, without due process of law.' Convictions based on evidence obtained by methods that are 'so brutal and so offensive to human dignity' that they 'shoc[k] the conscience' violate the Due Process Clause." *Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (quoting *Rochin v. California,* 342

U.S. 165, 172 (1952)). The Seventh Circuit has "acknowledged that a free-standing due process claim may succeed in a situation involving conscience-shocking interrogation tactics." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (citing *Wallace v. City of Chicago*, 440 F.3d 421, 429 (7th Cir. 2006)).

Section 1983 claims borrow the statute of limitations for personal-injury torts in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois, the relevant statute of limitations period is two years. *See id.*; *Dickens v. Illinois*, 753 F. App'x 390, 392 (7th Cir. 2018). According to defendants, the Court should dismiss the coerced-confession claim in Count II because it is time-barred. Relying on *Johnson v. Winstead*, 900 F.3d 428, 438 (7th Cir. 2018), which relied, in turn, on *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014), defendants argue that the limitations period on this claim began to run at the time of plaintiff's alleged abuse at defendants' hands in 1990.

Plaintiff responds that, under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), his claim is timely because it did not accrue until 2019, when his conviction was vacated. In *Heck*, the Supreme Court held that a § 1983 claim that, if proven, would "necessarily imply the invalidity" of the plaintiff's criminal conviction cannot proceed unless and until the plaintiff "can demonstrate that the conviction . . . has already been invalidated" by some official means, including direct appeal or collateral review. *Id.* Further, the Supreme Court explained, a § 1983 claim that would imply the invalidity of the plaintiff's criminal conviction "does not accrue"—and the statute of limitations period does not begin to run—"until the conviction . . . has been invalidated." *Id.* at 489-90.

The parties' dispute over this issue comes down to whether plaintiff's due process coerced-confession claim necessarily implies the invalidity of his conviction. Of course, not all § 1983

claims of police misconduct do so. For example, "[m]any claims that concern how police conduct searches or arrests are compatible with a conviction." *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017) (citing *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010)); *see Rollins v. Willett*, 770 F.3d 575, 576-77 (7th Cir. 2014) ("Whether the arresting officer had probable cause to arrest the plaintiff had no bearing on the validity of the . . . conviction."). But *Heck* may apply if a § 1983 plaintiff "insists that the arrest and prosecutions were wrongful because he never" committed the offense. *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013); *see also Rollins*, 770 F.3d at 576 ("So suppose a defendant convicted of possessing illegal drugs found on his person sued the officer who had found the drugs, alleging that the officer planted them. If he won the suit, it would imply the invalidity of his drug conviction.").

In *Moore v. Burge*, one of the cases defendants rely on, the Seventh Circuit explained that *Heck* did not bar the plaintiffs' due process claims based on their coercive interrogations and coerced confessions because such claims do not imply the invalidity of the conviction, just as certain claims that an officer committed an unreasonable search or seizure do not necessarily imply the invalidity of a subsequent conviction:

> [C]laims based on out-of-court events, such as gathering of evidence, accrue as soon as the constitutional violation occurs. That's because misconduct by the police does not (at least, need not) imply the invalidity of any particular conviction. See not only *Wallace*[, 549 U.S. at 387,] but also, e.g., *Rollins*[, 770 F.3d at 577]; *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). These decisions deal with the Fourth Amendment's rule against unreasonable searches and seizures; their holdings are equally applicable to contentions that police tortured suspects during interrogation, because that misconduct is actionable whether or not a suspect confesses, and whether or not any statement is used in evidence at trial.

771 F.3d 444, 446 (7th Cir. 2014).

However, some courts in this district have wondered whether this holding in *Moore*, which undergirded the decision defendants principally rely on in *Johnson v. Winstead*, 900 F.3d at 438,

survived the Supreme Court's recent decision in *McDonough v. Smith*, 139 S. Ct. 2149, 2157-58 (2019). In *McDonough*, the plaintiff alleged that the defendant fabricated evidence, including by "falsif[ying] affidavits, coach[ing] witnesses to lie, and orchestrat[ing] a suspect DNA analysis," 139 S.Ct. at 2154, and used the evidence against the plaintiff in two separate trials. The first trial resulted in a mistrial; the second resulted in an acquittal. Even though the plaintiff was never convicted, the Supreme Court held that his fabricated-evidence claim did not accrue "prior to favorable termination of his prosecution." *Id.* at 2156. The Court's decision was based on many of the same "pragmatic" concerns that had animated the *Heck* doctrine from the beginning, including the risk of "conflicting civil and criminal judgments" and "collateral attacks on criminal judgments through civil litigation." *Id.* at 2157. Additionally, the Court explained that a contrary approach requiring plaintiffs to sue as soon as they learned of fabricated evidence being used against them would "create practical problems" by imposing on criminal defendants an "untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id.* at 2158. The second alternative would require the criminal defendant to risk "tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context" by instituting "parallel civil litigation" that would "run counter to core principles of federalism, comity, consistency, and judicial economy." *Id.*

Subsequently, in *Savory v. Cannon*, the Seventh Circuit, sitting *en banc*, held that the plaintiff's claims asserting "the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction," including a claim for "coerc[ing] a false confession from [the plaintiff] in violation of his due process rights under the Fourteenth Amendment," accrued only after his conviction was invalidated. 947 F.3d 409, 417 (7th Cir. 2020); *see id.* at 412-13

(describing claims). Applying the "analytical paradigm of *Heck* and *McDonough*," the Seventh Circuit reasoned that there was "no logical way to reconcile those claims with a valid conviction," so *Heck* applied. *Id.* at 417. The court explained that it was the "considerations raised in *Heck*"— and echoed in *McDonough*—concerning the "pragmatic" need to "avoid[] parallel criminal and civil litigation over the same subject matter" that "controlled the outcome: [the plaintiff] had no complete cause of action until he received a favorable termination of his conviction." *Id.* at 417-18.

The Seventh Circuit did not specifically address the accrual of the coerced-confession due process claim, and on remand in *Savory*, the defendants maintained that the claim was untimely because it accrued at the time of the coerced confession. The district court explained that the argument "presents the difficult question whether *Moore* . . . survived *McDonough*, which holds that the *Heck* bar applies when a claim, as pleaded, would necessarily imply the invalidity of criminal proceedings or a conviction." *Savory v. Cannon*, No. 17 C 204, 2021 WL 1209129, at *5 (N.D. Ill. Mar. 31, 2021). The court saw no reason to "run to ground" this challenge to the due process claim at the pleading stage because "discovery on the Fourteenth Amendment coerced confession claim will be no broader than discovery on the Fifth Amendment claim" asserting a violation of the plaintiff's self-incrimination privilege. *Id.* Therefore, it denied the motion to dismiss, without prejudice to renewal at summary judgment. *Cf. Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *5 (N.D. Ill. Sept. 26, 2019) (denying motion to dismiss claim for "coercive interrogation, which resulted in a fabricated confession that was used against [the plaintiff] at trial in violation of his right to be free from compulsory self-incrimination and due process rights," reasoning that *Johnson v. Winstead* is "in tension" with *McDonough* and the cases "cannot readily be reconciled," so *Johnson* must give way).

This case is similar to *Savory*, and the Court is inclined to follow the same approach that the district court followed on remand there. It will not significantly change the scope of discovery in this case to put off this "difficult question," given that plaintiff has raised a similar coerced-confession claim under the Fifth Amendment. And putting the question off may prove to simplify it, when it is considered in the light of a full factual record and any intervening authority that might arise in the interim. Defendants' motion is denied as to the due process coerced-confession claim, without prejudice to renewing the argument at summary judgment.

### B. Count III: *Brady* Suppression and Suggestive Procedures Due Process Claims

In Count III, plaintiff alleges that defendants violated his due process right to a fair trial by withholding exculpatory and impeachment evidence, fabricating evidence falsely implicating plaintiff in criminal wrongdoing, and soliciting false evidence against him. Defendants concede that plaintiff states a due process claim based on the allegations of fabrication of evidence. However, defendants argue that plaintiff does not state a claim in Count III for withholding material evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), or for soliciting evidence via suggestive procedures. According to defendants, any purported *Brady* or suggestive procedures claim is merely an attempt to recast his fabrication claim as something different.

As an initial matter, plaintiff responds that defendants' arguments are essentially over the proper legal theory of recovery governing the allegations in Count III, and such arguments are out of place at the pleading stage. According to plaintiff, that is because, at the pleading stage, he need not specify which legal theory he is pursuing, so long as he states a claim under some theory. *See Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). Further, unlike at the summary judgment stage, the Court may not make "piecemeal dismissals of parts of claims," *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Plaintiff is of course correct about these

principles, as the Court has recently recognized, *see City of Chi. v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *6 (N.D. Ill. Mar. 31, 2021) (citing *BBL*), and it is true that in a similar context the Seventh Circuit has spoken of separate due process theories, rather than separate due process claims. *See, e.g., Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 344 (7th Cir. 2019) ("[Plaintiff] presents three distinct theories for [his] claim [that defendants violated the Fourteenth Amendment's Due Process Clause by depriving him of a fair trial]: (1) defendants fabricated evidence by coercing a false statement from [a witness]; (2) defendants used unduly suggestive procedures that tainted [a witness's] identifications; and (3) defendants violated their *Brady* obligations by withholding [a] lineup photo."); *see also Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) ("[A claim is] the aggregate of operative facts which give rise to a right enforceable in the courts.").

But a theory can be either factual or legal, *see BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540 (7th Cir. 2018), and these theories are not factually coextensive. Plaintiff's fabrication claim and his *Brady* claim, though they overlap, are not predicated on precisely the same operative facts: the former is based on what sort of evidence defendants revealed, and the latter is based on what evidence defendants withheld. Regardless, whether these are two claims or one is another issue that the Court need not run to ground because, even if there are two, as the Court will explain below, the Court agrees with plaintiff that he states a *Brady* claim. Regarding the suggestive procedures used to interrogate the witness Coats, the Court tends to agree with defendants, as it will explain below, that the allegations may be a better fit within the fabrication rubric, but either way, dismissal is unwarranted because plaintiff states a claim at least under that theory.

### 1. *Suppression of Evidence under Brady*

To prevail on a claim for violation of due process under *Brady*, plaintiff must show the following: "(1) the suppressed evidence is either exculpatory or impeaching and is favorable to the accused; (2) the government, either willfully or inadvertently, suppressed the evidence; and (3) the suppressed evidence resulted in prejudice." *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). To show that the suppressed evidence resulted in prejudice, plaintiff must show that it was "material to the outcome of his trial," *i.e.*, "that there is a 'reasonable probability' that the result would have been different had the suppressed evidence been put before the jury." *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019) (quoting *Kyles v. Whitley*, 514 U.S. 419, 445 (1995)). This standard is "less rigorous" than a preponderance of the evidence standard; plaintiff need only show "that the cumulative effect of all the suppressed information is to undermine confidence in the verdict." *Goudy*, 922 F.3d at 842.

Defendants argue that plaintiff does not make any allegations of evidence that defendants suppressed; he merely alleges that defendants fabricated evidence without disclosing they had done so. According to defendants, such claims do not fit within the *Brady* framework, as *Brady* "does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015). Defendants argue that merely alleging that police officers "ke[pt] quiet about their wrongdoing," *id.*, or lied about what they had observed, *see Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) and *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) *overruled in part on other grounds by Wallace v. City of Chi.*, 440 F.3d 421, 423 (7th Cir. 2006)), does not state a *Brady* claim.

Plaintiff responds that defendants' argument is not premised on a fair characterization of his allegations because he *has* identified evidence that defendants failed to disclose, evidence apart from defendants' own machinations. That evidence includes the facts that Macklin and Coats were initially unable to identify plaintiff as a participant in the May 29 shootings and that defendants coerced or pushed them to fabricate their statements implicating plaintiff by telling them precisely what to say. Plaintiff cites two cases—*Avery v. City of Milwaukee*, 847 F.3d 433, 443-44 (7th Cir. 2017), and *Anderson v. City of Rockford*, 932 F.3d 494, 506–07 (7th Cir. 2019)—in which the Seventh Circuit recognized that similar evidence could serve as the basis for a *Brady* claim.

In fact, in *Avery*, the Seventh Circuit specifically distinguished the cases on which defendants rely, including *Gauger*, *Sornberger*, and *Harris*, because the evidence that was suppressed in those cases was already known to the plaintiff or, in the case of *Harris*, the claim was simply that the "officer did not admit to falsifying his report." *Avery*, 847 F.3d at 443-44. Those cases did not mean that evidence of the "pressure tactics" that the defendant officers had used to obtain certain witnesses' statements against the plaintiff or of a witness's prior inconsistent statements could not serve as the basis for a *Brady* claim. *Id.* In *Avery*, those facts amounted to more than an admission of wrongdoing by the officers (though they were also that) because they bore on the credibility of those witnesses and were therefore material impeachment evidence.

Defendants reply that Macklin never testified at plaintiff's trial, so, according to defendants, any impeachment evidence against him was not material. While it may be true that Macklin did not testify, *see U.S. ex rel. Weston v. Clark*, 101 F. Supp. 2d 685, 689 (N.D. Ill. 2000), it does not necessarily follow that evidence of what happened during the interrogation of Macklin is immaterial, particularly because it might have been offered for purposes other than impeaching Macklin. Plaintiff cites (without reply from defendants) *Kyles v. Whitley*, in which the Supreme

Court explained that the prosecution in that case should have disclosed certain conflicting statements of a non-testifying witness (known as "Beanie") who was key to the investigation, along with other details of Beanie's interactions with police,[1] reasoning that disclosing such evidence would have "raised opportunities to attack . . . the thoroughness and even the good faith of the investigation." 514 U.S. at 445. Although Beanie did not testify against Kyles at trial, still, the Court explained, the evidence of Beanie's interactions with police was material because Kyles could have called Beanie himself or examined the investigating police officers "to good effect on their knowledge of Beanie's statements and so have attacked the reliability of the investigation." *Id.* at 446 (citing *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation.") and *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial because withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case"). Likewise, here, evidence of what happened in defendants' interrogation of Macklin could have cast doubt on the integrity of defendants' investigation.

Similarly, in *Anderson*, the Seventh Circuit recognized that police misconduct in procuring a false statement from a potential witness who did not testify against the plaintiff could still support a *Brady* claim to the extent that police procured the false statement in an attempt to "neutralize" a witness who might otherwise have been called to testify for the plaintiff. 932 F.3d at 507. The Court is in no position now, at the pleading stage, to say that the evidence of what happened during Macklin's interrogation could not have been used like the interrogation evidence in *Kyles* and

---

[1] Beanie made numerous statements to police implicating Kyles, the criminal defendant, who was not a suspect until Beanie approached police to implicate him. The statements were riddled with inconsistencies, and the circumstances suggested an inference that Beanie was attempting to frame Kyles. 514 U.S. at 424-32.

*Anderson*.[2] Further, defendants do not make the same argument about the interrogation of Coats, and the Court may not make "piecemeal dismissals of claims," *BBL*, 809 F.3d at 325, which this would certainly be, even if defendants were correct to think of plaintiff as asserting a separate *Brady* claim rather than a *Brady* theory. *See Goudy*, 922 F.3d at 837-38 (citing *Kyles*, 514 U.S. at 436, for proposition that "materiality of suppressed evidence is considered collectively, not item by item").

Defendants insist that *Anderson*, *Avery*, and *Goudy* are distinguishable from this case because the suppressed evidence was somehow more substantial, sometimes because it was contained in tangible documents, than here, where, according to defendants, plaintiff is essentially claiming that defendants had a duty to create—rather than merely disclose—exculpatory evidence. The Court sees no basis for any such distinction in these cases. In *Avery* and *Anderson*, in particular, the *Brady* claims were based, at least in part, on alleged omissions to disclose or include in contemporaneous reports that witnesses had made certain statements due to police "pressure and inducements." *Avery*, 847 F.3d at 443; *see id.* at 436-37; *Anderson*, 932 F.3d at 501, 506-07. This case is no different. Plaintiff is not claiming merely that defendants should have admitted that they lied or that the evidence that they were offering was false, but that they were aware of material evidence—namely, events that occurred during the Macklin and Coats interrogations bearing on those witnesses' credibility and on the integrity of defendants' investigation—that they were required to disclose under *Brady*. Assuming plaintiff's allegations are true and drawing reasonable inferences in his favor, defendants could have disclosed the evidence that Macklin and Coats had

---

[2] The cases defendants cite (Defs.' Reply Br. at 3, ECF No. 59) in reply are not to the contrary. The portions defendants rely on state, unremarkably, that police misconduct such as fabricating evidence and coercing a confession does not violate a criminal defendant's due process rights by itself, if it has no impact on the trial; they do not state that evidence of a non-testifying witness's interrogation cannot qualify as material *Brady* evidence.

initially been unable to identify plaintiff as having been involved in the May 29 shootings and had only identified him as the shooter following police coercion and suggestion. There was similar *Brady* evidence in cases such as *Anderson*, *Avery*, *Kyles*, and *Goudy*, and under those cases, plaintiff states a *Brady* claim.

### 2. Suggestive Procedures

"The U.S. Constitution does not mandate that photo arrays and lineups meet a certain standard of quality. . . . But the Fourteenth Amendment's Due Process Clause requires the exclusion of an eyewitness identification if the unduly suggestive circumstances are so egregious as to taint the entire trial." *Coleman*, 925 F.3d at 347 (citing *Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)); *see Killebrew v. Endicott*, 992 F.2d 660, 664 (7th Cir. 1993). Nevertheless, "an officer is not automatically liable for violating a suspect's constitutional rights whenever a judge later deems a witness's identification inadmissible." *Coleman*, 925 F.3d at 347 (citing *Philips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012)). To be liable for violating the suspect's constitutional rights, the officer must have used "a specific interrogation technique clearly proscribed by existing law," such as "physical violence." *Coleman*, 925 F.3d at 347-48 (citing *Phillips*, 668 F.3d at 917).[3]

---

[3] Defendants argue that the portions of *Coleman* and *Phillips* that discuss this "proviso," *Coleman*, 925 F.3d at 347-48, to the general rule that suggestive procedures are not actionable under § 1983 are dicta. Even if so, the Court does not consider that fact to require dismissal, for two reasons. First, as the Court will explain below, whether plaintiff states a claim under *Coleman* and *Phillips* makes no difference at the pleading stage because, as defendants appear to concede, he states a claim arising out of the Coats interrogation for fabrication of evidence, and he need not identify the correct legal theory now. Second, "[a]s a general rule, district courts should be guided by the views of the court of appeals . . . even when those views are expressed in dicta." *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 978 (W.D. Wis. 2003). This is particularly true when those dicta are "considered," rather than a mere aside. *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) ("[W]here it is a recent dictum that considers all the relevant considerations and adumbrates an unmistakable conclusion, it would be reckless to think the Court likely to adopt a contrary view in the near future. In such a case the dictum provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it."). Assuming the proviso is dicta, it is clear from even a cursory reading that it is of a "considered" sort, meant for lower courts to follow. *See Phillips*, 668 F.3d at 917; *see also Coleman*, 925 F.3d at 347-48.

Plaintiff alleges that defendants used unduly suggestive procedures by showing Coats a photo array and specifically instructing her to identify plaintiff's photo as the one depicting the person who had shot her. Defendants appear not to dispute that specifically instructing a witness to choose a suspect's picture from a photo array is "proscribed by existing law," *Coleman*, 925 F.3d at 347; they argue, however, that it is a "fabrication allegation," not a suggestive procedures allegation. (Defs.' Reply Br. at 12, ECF No. 59.) Even if so, the Court fails to see why the distinction matters for purposes of this Rule 12(b)(6) motion. As the Court has already mentioned, plaintiff is not required to identify the correct legal theory at the pleading stage. *Rabe*, 636 F.3d at 872. "Complaints plead *grievances*, not legal theories." *Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020). Plaintiff has pled a grievance with roots in Coats's interrogation that states a claim under the due process clause, and whether it is properly characterized as a claim for fabrication of evidence or egregiously suggestive procedures makes no difference at this point. Defendants' motion to dismiss is denied as to Count III and any claims therein.

### C. Count IV: Pretrial Detention Claim

Plaintiff's Count IV is captioned, "Malicious Prosecution and Unlawful Pretrial Detention in Violation of the Fourth and Fourteenth Amendments." (Compl. ¶ 155.) Defendants argue that any claim for malicious prosecution or unlawful pretrial detention arising under the Fourteenth Amendment must be dismissed because the Seventh Circuit has held that any such claim arises strictly under the Fourth Amendment. *See Lewis v. City of Chi.*, 914 F.3d 472, 476-78 (7th Cir. 2019); *see also Manuel v. City of Joliet*, 137 S.Ct. 911, 919 (2017) ("*Manuel I*"). Relatedly, defendants argue, it is now well established in Seventh Circuit precedent that there is no federal malicious prosecution cause of action. *See Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir.

2018) ("*Manuel II*"); *Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021) (citing *Manuel II*).

Plaintiff argues in response that, while defendants are correct about the holding of *Lewis*, the Supreme Court subsequently left open the possibility that the due process clause might support claims of unlawful pretrial detention in *McDonough*, 139 S. Ct. at 2155, where it assumed, without deciding, that the Second Circuit had properly treated a similar claim as arising under the due process clause. According to plaintiff, *McDonough* therefore called *Lewis* into question on this point.

The Court need not weigh in on the merits of plaintiff's position at this point. Whether he proves to be right or wrong about whether the Supreme Court will consider or the Seventh Circuit reconsider the correctness of *Lewis* makes no difference at this stage because, as the Court has already explained, his "complaint [is] not required to include a legal theory, let alone a correct citation" to the correct amendment. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC.*, 836 F.3d 770, 784 (7th Cir. 2016). "Complaints plead *grievances*, not legal theories," and plaintiff's complaint was required to do no more than "spell[] out his grievance." *Koger*, 950 F.3d at 974; *see BRC*, 900 F.3d at 540-41. He has done that, regardless of whether it is the Fourth or Fourteenth Amendment that governs his claim.

Even if there are separate Fourth and Fourteenth Amendment claims in Count IV, the claims appear to be factually coextensive, so declining to dismiss the Fourteenth Amendment claim at the pleading stage will make discovery no broader. On that basis, several courts in this district have declined to dismiss the Fourteenth Amendment claim at the pleading stage, *see Wright v. City of Chicago*, No. 20 C 1739, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021) (citing *Culp v. Flores*, 454 F. Supp. 3d 764 (N. D. Ill. 2020) and *Mack v. City of Chicago*, No. 19 C 4001, 2020

WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020)). This Court follows their lead and declines to dismiss the Fourteenth Amendment claim for now.

### D. Count VI: Conspiracy Claim

Defendants move to dismiss plaintiff's conspiracy claim under the intracorporate conspiracy doctrine. Under this doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867-68 (2017). The Supreme Court has not decided whether the doctrine applies to civil rights conspiracies, *id.* at 1868; but numerous circuits, including the Seventh Circuit, apply it to conspiracy claims brought under 42 U.S.C. § 1985. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990) ("managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory"); *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508-09 (7th Cir. 1994) (extending the doctrine to bar § 1985(2) conspiracy claims against "individual members of a single *government* entity," at least so long as "the plaintiff 'does not claim that the conspiracy was part of some broader discriminatory pattern . . . or that it in any way permeated the ranks of the organization's employees'") (quoting *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.*, 4 F.3d 465, 470 (7th Cir. 1993)); *see also Bowie v. Maddox*, 642 F.3d 1122, 1130-31 (D.C. Cir. 2011) (describing a circuit split on the intracorporate conspiracy doctrine). "The underlying rationale is that employees who work for a *single* entity cannot be said to conspire with one another, because (like tangoing) it takes two (or more) to conspire." *Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020) (citing *Travis*, 921 F.2d at 110 ("[C]orporate employees acting to pursue the business of the firm could not be treated as conspirators. Courts look[] past the individual acts to

concentrate on the collective decision.")). The Seventh Circuit has not yet decided whether the doctrine applies to conspiracy claims brought under § 1983, but at least two circuit courts have concluded that it does. *See Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019) (citing *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010)).

Defendants argue that the intracorporate conspiracy doctrine applies here, and, because they all worked for the same government entity (they were all Chicago police officers), they cannot have conspired to violate plaintiff's civil rights. Further, defendants argue, although the Seventh Circuit has not conclusively decided that the intracorporate conspiracy doctrine applies to § 1983 claims, the uncertainty entitles them to dismissal on grounds of qualified immunity. *See Haliw*, 2020 WL 1304697, at *4-5 (citing *Abbasi*, 137 S. Ct. at 1868 ("[T]he fact that the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established. When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability.")).

Plaintiff responds that the intracorporate conspiracy doctrine plainly does not apply in the factual circumstances of this case, so there is no need to consider whether it applies to § 1983 claims generally or whether the uncertainty surrounding its application to § 1983 claims means that defendants are entitled to qualified immunity. First, plaintiff argues, "[t]he doctrine applies only when the agents of a corporation or government entity act within the scope of their employment in joint pursuit of the entity's lawful business." *Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020) (citing *Travis*, 921 F.2d at 110, and *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 633 (7th Cir. 1999) (holding that the doctrine applies "so long as all are working in the corporation's (or governmental entity)

interest")). Therefore, in cases of police misconduct, courts in this district have often concluded that the doctrine is inapplicable because "the alleged misconduct is 'not the product of routine police department decision-making.'" *Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016) (quoting *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1085 (N.D. Ill. 2015)); *see Pena v. Ortiz*, No. 20 C 3352, 2021 WL 722853, at *4 (N.D. Ill. Feb. 23, 2021); *Harris*, 2020 WL 7059445, at *5. Plaintiff argues that the Court should follow these decisions and conclude that plaintiff has adequately alleged that defendants' misconduct fell outside the bounds of routine police decision-making.

Second, plaintiff argues that courts have also recognized an exception to the intracorporate conspiracy doctrine "where the alleged conspiracy forms 'part of some broader unlawful pattern that permeates the ranks of the organization's employees.'" *Pena*, 2021 WL 722853, at *4 (quoting *Thomas*, 178 F. Supp. 3d at 654); *see Hartman*, 4 F.3d at 471; *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972) ("Agents of the [Ku Klux] Klan certainly could not carry out acts of violence with impunity [*i.e.*, without running afoul of 42 U.S.C. § 1985(3)'s prohibition against conspiring to violate civil rights] simply because they were acting under orders from the Grand Dragon."); *cf. Stenson v. Town of Cicero*, No. 03 C 6642, 2005 WL 643334, at *7-9, *9 n. 22 (N.D. Ill. Mar. 15, 2005).

In this case, as in *Pena*, plaintiff has alleged facts that, if proved, might permit a reasonable factfinder to conclude that either exception applies. First, plaintiff has alleged that the defendant officers conspired to frame him for murder. This is hardly "the sort of 'routine, collaborative business decision' the intracorporate conspiracy doctrine is intended to protect." *Stenson*, 2005 WL 633334c, at *9 (quoting *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000)); *see Dombrowski*, 459 F.2d at 196; *see also Fairley v. Andrews*, 300 F. Supp.

2d 660, 669 (N.D. Ill. 2004) ("We fail to comprehend how agreeing to harass and retaliate against employees is within the scope of Defendants' employment. While some of the retaliatory conduct—assigning double-duty shifts, [etc.]—were routine, everyday decisions, the alleged agreement to harass and retaliate against Plaintiffs cannot be similarly described. Plaintiffs did not allege a conspiracy to assign double-duty shifts, but a conspiracy to deprive them of their First Amendment rights.") (internal citation omitted). Although defendants argue that plaintiff's allegations that defendants acted within the scope of their employment (he repeats the phrase numerous times throughout the complaint) directly contradict his position regarding the intracorporate conspiracy doctrine, that does not suffice to make a conspiracy to frame plaintiff for murder into routine police business.

Of course, there is a sense in which plaintiff does indeed allege that defendant's misconduct was routine police business, to the extent he alleges that defendants acted pursuant to a widespread pattern and practice of such misconduct within the Chicago Police Department. But defendants do not make that argument, presumably because they recognize that it would get them no closer to dismissal because it would trigger the second exception, the exception for conspiracies that are "part of some broader unlawful pattern that permeates the ranks of the organization's employees." *Thomas*, 178 F. Supp. 3d at 654; *see Pena*, 2021 WL 722853, at *4. Defendants do not address this exception at all in their reply brief, but the Court concludes that plaintiff has alleged facts that, if proved true, could support the application of the second exception here.

Thus, the Court need not consider, at this stage, whether the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims generally or whether the uncertainty over the question cloaks defendants with qualified immunity. Even if the doctrine does apply to § 1983 claims generally, plaintiff has alleged facts that, if true, would bar the application of the doctrine to his

claim. And defendants have not shown that there was such uncertainty surrounding the question of whether the intracorporate conspiracy doctrine applies to a claim such as his, *i.e.*, a claim that police officers conspired to frame a citizen for murder, whether pursuant to a widespread pattern and practice or otherwise, that the claim should be barred by qualified immunity. *See Pena*, 2021 WL 722853, at *4; *Harris*, 2020 WL 7059445, at *5; *see also Rios v. City of Chicago*, No. 15 CV 03119, 2021 WL 809735, at *6 (N.D. Ill. Mar. 3, 2021) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question") and citing *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (citing *Hope*)). Defendants' motion to dismiss is denied as to the conspiracy claim.

### E.  Derivative Claims

Finally, defendants argue that the Court should dismiss plaintiff's derivative claims—namely, the failure to intervene, conspiracy, and *Monell* claims—to the extent it dismisses any other claims from which these derive. However, as the Court has explained above, it declines to dismiss any of plaintiff's primary claims at this stage, so the derivative claims based on them also survive.

## II.   Motion to Strike

Defendants move to strike the allegations in paragraphs 93 through 110(g) from plaintiff's complaint, arguing that they are impertinent, redundant, and unduly prejudicial. These allegations generally refer to reports of police abuse committed by the individual defendants against other suspects and to other cases in which the defendants were accused of committing civil rights violations similar to those at issue here.

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A district court has "considerable discretion" in ruling on a Rule 12(f) motion to strike. *Delta Consulting*

*Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "Motions to strike are generally disfavored because such motions often only delay the proceedings." *Kesterke v. BCD White Inc.*, No. 1:18-CV-146-WCL-PRC, 2018 WL 3343079, at *1 (N.D. Ind. July 9, 2018). Therefore, "a court ordinarily will not strike a matter unless it can confidently conclude that the portion of the pleading the motion addresses has no possible relation to the controversy and is clearly prejudicial." *Id.* (internal quotation marks omitted); *see* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed.) ("there appears to be general judicial agreement . . . that [motions to strike under Rule 12(f)] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). On a Rule 12(f) motion to strike, the "movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Vakharia v. Little Co. of Mary Hosp. & Health Care Centers*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)).

Plaintiff responds that the allegations defendants challenge are relevant to his claims, particularly his *Monell* claim, which requires him to establish that defendants acted pursuant to a widespread pattern and practice. Further, other instances in which defendants committed similar police abuses are relevant and admissible to his other claims, plaintiff argues, as evidence of other bad acts to prove *modus operandi* under Federal Rule of Evidence 404(b). Defendants reply that any such evidence would be unduly prejudicial, beyond the scope of Rule 404(b), and, with regard to the *Monell* claim, redundant.

Whether evidence of these other incidents will prove to be admissible under Rule 404(b) is not an issue that the Court must resolve now; indeed, the Court doubts whether it could fairly do so at this early stage. Although, in their briefs, defendants try to place the burden for demonstrating the potential admissibility of these facts on plaintiffs, that puts the burden in the wrong place. To prevail on their motion, defendants have to show that "the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Vakharia*, 2 F. Supp. 2d at 1033; *see Kesterke*, 2018 WL 3343079, at *1-2.

At the very least, the challenged allegations here are highly relevant to the *Monell* claim. Defendants' argument as to that claim seems to be that the allegations are redundant because plaintiff could have pleaded the *Monell* claim in more general terms without them, but the Court suspects that if plaintiff had done so defendants would have turned around and moved to dismiss for failure to state a claim under Rule 12(b)(6). *See Kesterke*, 2018 WL 3343079, at *2 ("the Court shares Plaintiff's concern that the Complaint without [the challenged] allegations . . . would not provide the necessary notice to Defendant"). The Court is not aware of any authority that requires a plaintiff to leave out factual details that he will rely on to prove one of his claims, and instead plead the claim in more general terms, because the allegations are embarrassing to the defendants. Nor do defendants cite any. The challenged allegations are "unrelated" to plaintiff's claim, so the Court sees no reason to strike them. *Id.* at *1; *see id.* at *2.

The challenged allegations may not be so closely related to some of plaintiff's other claims, but even if there were no *Monell* claim, the Court likely would not be inclined to engage in the "judicial editing" defendants ask for. *Silberman v. Stewart*, No. 20 C 1745, 2021 WL 1057719, at *2 (N.D. Ill. Mar. 18, 2021) (citing *Dace v. Chicago Pub. Sch.*, No. 19 C 6819, 2020 WL 1861671, at *2 (N.D. Ill. Mar. 18, 2020)). Plaintiff's complaint must contain a "short and plain statement of

the claim," Fed. R. Civ. P. 8, but short does not mean no longer than necessary. Plaintiff is not required to demonstrate the relevance and admissibility of all of his allegations at this early stage. The Court cannot "confidently conclude that the portion of the pleading the motion addresses has no possible relation to the controversy," *Kesterke*, 2018 WL 3343079, at *1, so the motion to strike is denied.

## **CONCLUSION**

Defendants' motion to dismiss [42] and motion to strike [41] are denied.

**SO ORDERED.**                                    **ENTERED:  May 27, 2021**

 _____
 **JORGE L. ALONSO**
 **United States District Judge**