IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMOND WESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 C 6189 |
| | ) | |
| CITY OF CHICAGO, ESTATE OF MICHAEL KILL, ANTHONY MASLANKA, WILLIAM MOSER, JOHN PALADINO, DAN McWEENY, ANDREW CHRISTOPHERSON, JEROME RUSNAK, VICTOR BRESKA, and UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) | Judge Jorge L. Alonso<br><br>Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER BIFURCATION OF THE *MONELL* CLAIM**

Defendant City of Chicago ("City"), by its attorneys, for its response in opposition to Plaintiff's motion to reconsider bifurcation of the *Monell* claim, states as follows:

**INTRODUCTION**

The City moved to bifurcate the *Monell* claim in this matter based on a number of factors, including interests of efficiency, minimizing the complexities and costs of the case, and avoidance of prejudice. Dkt. #85. The City's motion detailed plaintiff's broad and wide-ranging *Monell* claim, which included subjects such as fabrication of evidence, suppression of *Brady* material, a dysfunctional disciplinary system, inadequate training and supervision, and the so-called "code of silence," among other allegations. In seeking bifurcation, the City did not have to speculate on the massive scope of burdensome and time-consuming discovery related to such a broad *Monell* claim; rather, the City's motion identified and attached the extensive *Monell*-related discovery sought in

1

plaintiff's initial written discovery requests. See Dkt. #85, at 8-10. The Court ultimately granted the City's request to bifurcate the *Monell* claim. Dkt. #110.

Plaintiff now seeks reconsideration of the Court's bifurcation order, basing his request on only one aspect of his wide-ranging *Monell* claim. According to plaintiff, "recent discovery in this case indicates that exculpatory evidence was withheld from plaintiff in a street file, and that the withholding may not have been the result of intentional misconduct by one of the individual defendants." Motion, at 3. Plaintiff's focus on this discrete *Brady*-based issue fails to address all the other reasons bifurcation is appropriate in this case. Moreover, plaintiff's request for reconsideration relies on highly speculative inferences and a misleading and incomplete characterization of the testimony and record on which the request is based. As explained below, there is no reason for this Court to reconsider the stay and cause the parties to undertake burdensome and potentially unnecessary *Monell* discovery until discovery on the underlying case is complete and individual liability issues are resolved through a summary judgment process based upon a full record.

## LEGAL STANDARD

Motions to reconsider are "disfavored." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). A motion to reconsider is appropriate where there has been a controlling or significant change in law or facts since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "This is a heavy burden for the moving party …." *SMK Associates, LLC v. Sutherland Global Servs., Inc.*, 2017 WL 2214998, at *2 (N.D. Ill. May 9, 2017). "Motions to reconsider should be granted only in rare circumstances." *Caine v. Burge*, 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Bank of Waunakee*, 906 F.2d at 1191 (the basis "for a motion to reconsider would be a controlling or

2

significant change in the law or facts since the submission of the issue to the Court. *Such problems rarely arise and the motion to reconsider should be equally rare*.")) (emphasis in original); see also *Ace Hardware Int'l Holdings Inc. v. Masso Expo Corp.*, 2012 WL 182236, *3 (N.D. Ill. Jan. 23, 2012).

As set forth below, Plaintiff's motion fails to meet the heavy burden of demonstrating a "significant change" in the facts that would warrant reconsideration. Plaintiff's motion for reconsideration should be denied.

## DISCUSSION[1]

Plaintiff's motion for reconsideration is premised entirely on a flawed and unfair interpretation of the current discovery record. Plaintiff attempts to manufacture a *Brady*-based claim by suggesting "discovery has revealed that detectives identified an alternative suspect . . . but that information was not contained in the documents disclosed to Plaintiff's criminal defense attorney." Motion, at 3. Plaintiff's description of Detective Moser's testimony to support that argument takes the testimony out of context. Moreover, plaintiff's conclusion that the identity of the alternative suspect was not disclosed in police records and/or not available to the State (and criminal defense attorneys)[2] is demonstrably wrong. Plaintiff's motion provides no valid reason for this Court to reconsider bifurcation of *Monell*.

A full and fair reading of Detective Moser's testimony undermines plaintiff's request for reconsideration. Plaintiff claims Detective Moser "testified he would have documented the interview of [a suspect named Kavin] McMorris." Motion, at 5. According to plaintiff, "Moser

---

[1] In the interests of brevity, the City's response will only address the single issue raised in plaintiff's motion to reconsider. The City incorporates by reference the grounds set forth in its earlier briefs that supported (and continue to support) bifurcation of the *Monell* claims. (Dkt. ## 85, 108).

[2] As explained below, the police discharge their *Brady* obligations by disclosing information to the State. *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015).

3

explained that he would have put the documentation of the interview in the street file." *Id*. Further, plaintiff contends "that information was not contained in the documents disclosed to Plaintiff's criminal defense attorney." *Id*. at 3. From these assertions, plaintiff concludes "a jury could find that while no individual defendant intentionally withheld exculpatory evidence from Plaintiff, the City's policy and practice of maintaining street files was the moving force behind the *Brady* violation." *Id*. The initial flaw with plaintiff's speculative argument is that Detective Moser's actual testimony does not support plaintiff's proposed conclusion.

In fact, Detective Moser's testimony contradicts plaintiff's allegation that he failed to submit General Progress Reports ("GPRs") for inclusion in the permanently maintained homicide file kept at the police station, known as the Investigative File.[3] Detective Moser testified unequivocally that he submitted the originals of his GPRs for inclusion in the "permanent file in the office," and a copy of that GPR would be placed in a running file (aka "street file") that could be taken out of the office to conduct further investigation on the street. (Exhibit 1, Moser dep at 33:21-24). Moser made clear that a running file would be a "duplicate of the permanent" file kept in the office (i.e., the Investigative File) and that "Originals … went to the office." (*Id*. at 34:10-18). As demonstrated at the deposition, Plaintiff's attorney fully understood Det. Moser's testimony, clarifying as follows:

Q  Okay, so originals of GPRs would go in the office file?

A  Yeah.

---

[3] The written directives of the Chicago Police Department refer to the "office file" Detective Moser described as an "Investigative File." (See Ex. 2, CPD's 1988 Detective Division Standard Operating Procedures, Chapter 18, Investigative Files). Should this Court be interested in further background information about the Chicago Police Department's "Investigative Files," Magistrate Judge Finnegan addressed them in some detail in an opinion in *Taylor v. City of Chicago*, 2015 WL 5675363, *1-2 (N.D. Ill. Sept. 24, 2015) (Finnegan, J.).

4

> Q	And copies of the GPR would go in the street file?
>
> A	Yeah.

*Id.* at 34: 19-25). Unfortunately, plaintiff fails to inform the Court of this testimony (which refutes the central premise of his request for reconsideration) anywhere in his motion. Detective Moser never testified that he would put documentation of a witness interview only in a running file. Later in the deposition when counsel asked Moser if he would place GPR notes of an interview of Kavin McMorris (assuming one was conducted[4]) in a running file, Moser accurately said yes, but he was not asked, and had no reason to volunteer, whether the original of any interview notes would have been submitted for inclusion in the Investigative File. He had already explained that the original of a GPR would go into the Investigative File, and it is disingenuous for plaintiff to suggest otherwise.

Thus, an accurate reading of Detective Moser's testimony in full is that if he created a GPR based on an interview of a suspect, he would have submitted the original GPR for inclusion in the Investigative File. Any running file would contain only a *duplicate* of that GPR. Detective Moser never testified he would place a GPR of an interview only in the running file. Detective Moser's testimony, taken in full context rather than in misleading snippets, provides no support for plaintiff's claim that recent discovery indicates exculpatory information was withheld from plaintiff in the running file, let alone a "clandestine file" maintained in secret by the CPD.[5]

---

[4] As for whether Detective Moser interviewed McMorris, Moser testified he did not recall McMorris and did not recall interviewing him before he was taken to be polygraphed. (Exhibit 1, at 125:23 – 126:10). The testimony cited in plaintiff's motion was given in response to a series of hypothetical questions and does not establish that, in fact, Moser interviewed McMorris. *Id.* at 126:11 – 127:4.

[5] In another objectionable ploy, plaintiff attaches two old CPD memoranda (Exhibits D and E to the motion) to argue an "admission" by the City that according to its policy, "documentation concerning alternative suspects is exactly the type of information that went into street files." Motion, at 5. Plaintiff does not attach the actual CPD policy effective in 1990. (*See* Exhibit 2). Among other provisions, Chapter 18 required the creation of an "investigative file case folder" in all homicide investigations that would contain all official reports, notes, memoranda, and miscellaneous documents generated by a detective during an investigation,

Likewise, Detective Moser's testimony fails to support plaintiff's *Monell* claim that the CPD withheld exculpatory information in clandestine street files. See Complaint, ¶72.

The need to evaluate the full context of Detective Moser's testimony is but one example of why this Court should not undertake reconsideration of *Monell* bifurcation at this stage of the proceedings. With respect to the *Brady*-based *Monell* issue, plaintiff's complaint alleges that *Brady* material was suppressed by the Defendant Officers by "intentionally secreting discoverable reports, memos, and other information . . . in clandestine files" withheld from prosecutors and criminal defendants. Complaint, ¶72. "Intentionally secreting" exculpatory information in clandestine files where the officers knew it would not be disclosed does not involve the possibility that a well-meaning police officer violated plaintiff's rights only because of an impermissible City policy. In an effort to circumvent the very language of his complaint, plaintiff suggests the alleged withholding "may not have been the result of intentional misconduct." Motion, at 3. As discussed above, this argument is based on an incomplete and unfair characterization of Detective Moser's testimony. But even accepting, *arguendo*, plaintiff's flawed premise, this Court still must speculate to accept plaintiff's proposed justification for reconsidering bifurcation: the alleged withholding *may not have been* the result of intentional misconduct. The need to adopt such a speculative inference underscores the inaptness of reconsidering bifurcation at this stage of discovery.[6]

---

which would provide all parties engaged in a criminal proceeding (judges, ASAs, defense attorneys, and other detectives) with the available written documentation about a criminal investigation. *See* Chapter 18.2(A). Chapter 18.3(C) further required detectives to submit all handwritten notes and investigative documents for inclusion in the investigative file case folder. Unfortunately, plaintiff's citation to inapplicable CPD memoranda cannot be attributed to inadvertence. As plaintiff's motion (at 6) acknowledges, the "street files" issue "has been extensively litigated," including in cases involving plaintiff's counsel.

[6] In his complaint, plaintiff does not assert (nor could he) a *Monell* claim for the inadvertent misfiling or misplacing of GPRs from Investigative File/office files, which may explain why he did not inform this Court of Moser's testimony that he submitted all of his GPRs for inclusion in the Investigative File.

Plaintiff's motion includes other arguments that will benefit by deferring reconsideration of bifurcation until discovery on the underlying case is complete and individual liability issues are resolved through summary judgment. For example, the very documents attached to plaintiff's motion refute the assertion that the identity of the alternative suspect (McMorris) was not disclosed in police records available to the State (and criminal defense attorneys). According to plaintiff, detectives identified an alternative suspect (McMorris, nickname "Shank"), but that information "was not contained in the documents disclosed to Plaintiff's criminal defense attorney." Motion, at 3. To the contrary, the documents referenced by plaintiff appear to disprove a *Brady* violation attributable to the City. Plaintiff concedes there was information from the police department in the State's Attorney's file pertaining to McMorris/Shank. Plaintiff's motion (at 4) acknowledges GPRs in the police department file (and the State's file) disclosed "Shank" as a potential suspect.[7] Another document in police department records that was disclosed to the State is a Crime Lab report indicating McMorris was sent for a polygraph.[8]

Plaintiff nevertheless complains that nothing in the CPD file identifies "Shank" as McMorris. Motion, at 5. According to plaintiff, he only recently learned that an alternative suspect (McMorris) was sent to be polygraphed by detectives. *Id*. at 4. But plaintiff points to a document produced in this litigation from the State's Attorney's file containing polygraph case notes that reflect, among other things, that McMorris's nickname was "Shank." *Id*.; *see also* Exhibit A attached to plaintiff's motion. That means that the Chicago Police Department did not withhold this information. Since the document was in the State's file, it had to have been disclosed to the

---

[7] A copy of the GPR referencing "Shank" attached to plaintiff's motion as Exhibit B is also contained in the State's file, and attached hereto as Exhibit 7.

[8] Although vaguely referenced in his motion (at 4-5), plaintiff does not attach the document, which reflects McMorris's polygraph indicated deception. (It is attached hereto as Exhibit 3).

7

prosecution by CPD, thereby discharging CPD's obligations under *Brady*. *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015) (police officers discharge their *Brady* obligations by turning over exculpatory material to the prosecutor, and it is the prosecutor's responsibility to turn the evidence over to defense counsel). If, as plaintiff asserts, the polygraph notes were not disclosed to criminal defense counsel, any failure would not lie with the CPD. *Id*. The documents identified by plaintiff in his motion therefore refute any notion that criminal defense counsel could not have known that McMorris's nickname was "Shank" because of some failure on the part of CPD.[9]

Moreover, plaintiff's allegation that his criminal defense attorney (Paul Katz) did not possess the McMorris polygraph notes is not supported by a record citation. Motion, at 4-5. When served with a subpoena for his file in this case, Mr. Katz indicated that he did not possess his file any longer. Exhibit 4, Paul Katz 6/5/22 email. Mr. Katz stated that he previously gave his file to Northwestern law students. *Id*. For its part, Northwestern did not produce Mr. Katz's file in response to subpoena, so there appears to be no criminal defense file for the parties to review in this case. It is therefore unclear what the factual basis of plaintiff's allegation that the McMorris polygraph notes were withheld might be.

---

[9] Acknowledging as he must that the State and his criminal defense attorney possessed information on McMorris/Shank, plaintiff is left to speculate that a non-existent GPR note of a possible Detective Moser interview of McMorris may have existed, and, if it did exist, may have contained exculpatory information. Unsurprisingly, the law precludes plaintiff from pursuing a *Brady* claim based on that type of speculation. *Serrano v. Guevera and Montanez v. Guevera*, 2020 WL 3000284, at * 19 (N.D. Ill. June 4, 2020 (Shah, J.) ("[T]here is no evidence in the record suggesting that these notes, to the extent they even existed, contained exculpatory information. Plaintiff's speculation cannot survive summary judgment."); *Taylor v. City of Chicago*, 2019 WL 4597383, at *9 (N.D. Ill. Sept. 23, 2019) ("But because no such [street] file has been produced in this case, Taylor's position that the file would contain *Brady* material is purely speculative. And mere speculation that exculpatory evidence may have existed cannot support a *Brady* claim."); *Hill v. City of Chicago*, 2009 WL 174994, at *4 (N.D. Ill. Jan. 26, 2009) (finding the plaintiff's "mere speculation that [certain reports] may have existed" in a street file "cannot be the basis for his *Brady* claim").

But even if the prosecutors did not disclose the polygraph notes to criminal defense counsel, the documents plaintiff admits were contained in the police department Investigative File and the State's file (the Crime Lab report indicating McMorris was polygraphed, and the GPRs suggesting "Shank" was a suspect) refute the claim that "discovery has revealed that detectives identified an alternative suspect . . . but that information was not contained in the documents disclosed to Plaintiff's criminal defense attorney." Motion, at 3. That information was contained in the police department records, and plaintiff does not contest it was not contained in the State's file. Moreover, a reasonable inference from those disclosed records was that McMorris was a potential suspect, based on the fact detectives took him for a polygraph. Plus, criminal defense counsel also would have known from the GPRs that detectives had information about a potential suspect nicknamed Shank, which plaintiff does not contend were withheld. Reasonable diligence by a criminal defendant investigating possible "alternative suspects" such as McMorris and "Shank" would have uncovered that they were one and the same. *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) (suppression of exculpatory evidence required to be disclosed to a criminal defendant pursuant to *Brady* does not occur when the defendant could have discovered it himself through reasonable diligence). In any event, plaintiff cannot fairly argue information concerning alternative suspect McMorris was not contained in documents disclosed to criminal defense counsel because he does not dispute the McMorris polygraph report was available in the Investigative File and the State's file. Exhibit 3. In short, none of the reasons offered by plaintiff in seeking reconsideration is justified by the record presented.

Much of the remainder of plaintiff's motion constitutes re-argument of issues previously rejected by the Court. For example, plaintiff again argues he might prove a constitutional violation at trial but lose his claim because of a successful qualified immunity defense by the individual

defendants, creating the possible need for a second trial. Motion, at 8. As the City previously explained, the qualified immunity issue has been addressed by its Limited Consent to Entry of Judgment Against Defendant City of Chicago, wherein the City would agree to entry of judgment against it for compensatory damages and, to the extent allowed by the Court, reasonable attorneys' fees, if the finder of fact determines a named Defendant Officer violated plaintiff's constitutional rights in one of the ways alleged in the complaint, *even if the finder of fact further determines that officer is not liable because he is entitled to qualified immunity*. See City's Motion to Bifurcate, Dkt. 85, at 5-6, and Exhibit C; City's Reply in Support of Motion to Bifurcate, Dkt. #108, at 4-5.

Plaintiff also submits that reversing the bifurcation ruling will not unduly delay completion of discovery. Motion, at 9. The notion that the completion of discovery would not be delayed by reversing bifurcation is belied by the scope of plaintiff's discovery requests. The City's Motion to Bifurcate (Dkt. #85, at 8) details the sweeping and extremely burdensome *Monell* discovery requests already issued in this matter, which include a request for 17 years of homicide files from all detective areas within the City, among other similarly onerous requests. In the *Reyes v. Guevara,* 18 C 1028*,* and *Solache v. Guevara,* 18 C 2312*,* cases pending in this courthouse, discovery related to the underlying claims ended on June 30, 2021, but the parties are still engaged in expert *Monell* discovery on the "street files" claim to this day. See *Reyes v. Guevara,* 18 C 1028, Dkt. 410, 467, 527. For this reason alone, bifurcation remains warranted. *See, e.g.*, *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *2 (N.D. Ill. July 16, 2008) (Aspen, J.) (granting bifurcation of *Monell* where "Plaintiffs' contention that the *Monell* litigation will not require substantial additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests").

10

Similarly, plaintiff's argument that the necessary *Monell* "street files" discovery would not increase costs is baseless. Motion, at 9. Conservatively, it would take the parties' attorneys, paralegals, and experts hundreds of hours to litigate this claim, and cost hundreds of thousands of dollars. The first step in such a *Monell* discovery scheme would be to identify an appropriate sample set of Investigative Files in a relevant time period around the May 1990 murder at issue in this case which resulted in a conviction, including homicide files from the old Area 3 where this case was investigated. After identifying hundreds of files, the City would then need to locate, review, and produce those files in discovery. Next, the parties would have to secure the State's Attorney's files, criminal court records, transcript of proceedings, appellate court records, and any and all defense attorneys files, that corresponded with the identified Investigative Files.[10] Plaintiff would then need to investigate those cases to determine whether *Brady* material was withheld in any such case and, if so, whether it had anything to do with the CPD. Plaintiff would also need to identify witnesses to lay the foundation for the completeness of the files, what was produced during the criminal discovery process and what was supposedly withheld, and what the impact on each specific case the allegedly withheld information had. The City would then need to take discovery regarding the plaintiff's disclosure of documents and witnesses, obtain any follow up documents plaintiff omitted, and then identify rebuttal witnesses and documents in response to plaintiff's claims. Expert discovery would then likely follow, along with summary judgment.

There are courts in this district that have and continue to expend an extraordinary amount of unnecessary time and effort overseeing a similar *Monell* claim. It is not possible to contend the

---

[10] In other cases, plaintiff's counsel has wrongly suggested that the only files he needs for comparison to pursue a similar *Brady*-based *Monell* claim are the defense attorney files, but the Office of the Cook County Public Defender has questioned that theory in a recent motion to quash subpoena for dozens of its files in *Velez v. City of Chicago*, 18 C 8144, Dkt. 256 at 4, attached hereto as Ex. 5.

11

costs in those cases have been anything but exorbitant. (See City's Motion for Protective Order to Prevent Undue Strain on Resources of Public Entities for Speculative *Monell* Discovery filed in *Reyes v. Guevara*, 18 C 1028, Dkt. 503 (N.D. Ill.) and other cases against Detective Guevara and the City, attached as Exhibit 6 without exhibits). Plaintiff's suggestion that much "street files" discovery has already been conducted is misplaced and irrelevant to the motion, and more to the point, provides no basis for this Court to reconsider bifurcation. Similar *Monell* discovery would need to be conducted here by both parties, just as it is being conducted in *Reyes, et al.*[11] What's more, this Court would be tasked with spending a significant amount of time and effort evaluating *Monell* discovery disputes, ruling on *Daubert* motions, and studying extensive motions for summary judgment and supporting material. Plaintiff's motion to reconsider does not justify any of that extensive time, effort, and burden.

## CONCLUSION

Plaintiff's attempt to manufacture a "street files" claim based upon Kavin McMorris is without merit and certainly does not justify reconsideration of *Monell* bifurcation. Plaintiff's motion presents a flawed and misleading factual background, requires unwarranted speculation, and appears to disregard fundamental legal principles associated with *Brady*. This Court should defer any reconsideration of the *Monell* bifurcation until discovery in the underlying case is completed, a fully formed record is established, and the Court has had the ability to properly assess the underlying liability issues. Plaintiff's motion for reconsideration should be denied.

Dated: February 21, 2023                  Respectfully submitted,

By: /s/ Paul A. Michalik
Special Assistant Corporation Counsel

---

[11] The City is not estopped from any finding in *Fields* and *Rivera*, and plaintiff's undeveloped argument regarding same should be disregarded. *Shipley v. Chicago Board of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.")

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
*Attorneys for Defendant City of Chicago*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I electronically filed the foregoing ***Defendant City of Chicago's Response in Opposition to Plaintiff's Motion to Reconsider Bifurcation of the Monell Claim*** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to counsel of record.

*/s/ Paul A. Michalik*