IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DEMOND WESTON, <br>                 Plaintiff, <br>      v. <br> CITY OF CHICAGO, et al. <br> Defendants. | Case No. 20-cv-6189 <br><br> Hon. Lashonda A. Hunt <br> Mag. Holleb Hotaling |

**Plaintiff's Motion to Exclude Defendants' Proposed Police Practices Expert**

Plaintiff, Demond Weston, by and through his attorneys, Loevy & Loevy, respectfully seeks to exclude the opinions of Defendants' Police Practices Expert, Richard Rudolph, pursuant to Federal Rules of Evidence 702 and 703.

**Introduction**

Plaintiff was convicted of first-degree murder and several attempt murders which occurred in 1990. Plaintiff always maintained his innocence of the crimes and overturned his conviction in 2019. This lawsuit followed. The parties have disclosed opposing police practices experts to opine on the investigation that led to Plaintiff's wrongful arrest and conviction.

Plaintiff's police practices expert, Joseph Allio, explains that the investigation that led to Plaintiff's conviction did not meet the standards for homicide investigations in 1990. *See* Ex. 1, Allio Report. He offers opinions regarding Defendants' failure to follow up on leads; failure to justify the arrest of Mr. Weston; use of coercive interrogation tactics on numerous civilian witnesses and "feeding facts" to witnesses; use of coercive interrogation tactics with Mr. Weston

1

and "feeding facts" to Mr. Weston; failure to accurately document the investigation; use of a suggestive photo array and lineup; and failure to maintain accurate and complete homicide files. *Id.*

Mr. Allio's opinions in this case are based in part on his own experiences investigating homicides during the relevant time period. Mr. Allio was a detective investigating crimes against persons from 1990-1994. Ex. 2, Allio Dep., at 25:14-27:15. He attended "homicide school" for 40 hours to learn how to investigate homicides. *Id.* at 27:16-20. During the 1990-1994 time period, he worked on approximately 20 homicide investigations and was the lead investigator on 8-10 of those homicides. *Id.* at 30:6-18. Subsequent to that, he went on to become a sergeant, lieutenant, captain, and chief of police. Ex.3, Allio Curriculum Vitae at 1.

Defendants disclosed Richard Rudolph to rebut the opinions of Mr. Allio. Mr. Rudolph worked for the New York City Police Department before his retirement. Mr. Rudolph opines that Defendants "conducted a proper and thorough investigation." Ex. 4, Rudolph Report at 4. Mr. Rudolph's report states that "Unless specifically stated otherwise, the generally accepted police standards referenced in this report are the standards of homicide investigation and documentation from 1990 that I have personally worked in, studied, and taught to others." *Id.* at 3.

Mr. Rudolph began his career in policing in 1991. Ex. 5, Rudolph Dep. at 25:5-10. Throughout the 1990s, Mr. Rudolph's career was focused on patrol and efforts to prevent burglaries, robberies, and drug crimes. Ex. 5, Rudoph Dep., at 25:19-29:6. Accordingly, Mr. Rudolph's understanding of homicide investigations in 1990 does not stem from his personal experience investigating homicides at that time, but solely from reviewing cases from that time period much later in his career. *Id.* at 85:10-86:13, 87:6-88:20. The homicide cases from 1990

that Rudolph "worked with" or "studied" or "taught to others" stem from cold cases apparently used later in his career or referred to in a training course. *Id.*

When asked about the standards for investigation in 1990, Mr. Rudolph said that:

"**I don't think we really had investigative standards back in 1990.** And obviously, you know, **I didn't read a lot of cases from 1990 I only read them later on in my career** and I could tell you **the cases that I read from New York City Police Department, some of them were worse than the cases that I read for Chicago PD**, but that was their -- that was their standard and their -- and how they operated back then. So the standards were in their rules and procedures on how to write supplemental reports, and that's how they did it. I mean, I would like it to be different, but that's how they did it back then."

*Id.* at 196:3-16.

While Mr. Allio is able to connect his opinions to his own experiences working on homicides in the early 1990s, Mr. Rudolph has no such experiences. Nor does Mr. Rudolph attempt to make up for this gap in his experience by citing any national police standards in his report. Mr. Rudolph wants to offer the jury a subjective opinion that Defendants' investigation was satisfactory because some of the investigations he saw from that time period were actually "worse," and he doesn't believe there were any investigative standards in 1990 anyway. This approach is not a "methodology" under *Daubert* because Mr. Rudolph is not comparing the investigation to any industry-wide standard. Accordingly, Mr. Rudolph's opinions should be barred.

In addition, Mr. Rudolph should not be permitted to simply act as a mouthpiece for Defendants' version of events, because such statements are not opinions at all. Finally, Mr. Rudolph should not be permitted to speculate on the motives or intentions of any witnesses.

### Legal Standards

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if

3

the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under, Rule 702 the Court must ensure expert evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). That requirement distinguishes a well-grounded expert opinion, which is admissible, from "subjective belief," which is not. *Id.* at 590. "[N]othing . . . requires a district court to admit opinion evidence" that rests solely on "the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. at 152, 157 (1999).

Relatedly, although an "expert may base an opinion on facts or data . . . that the expert has been made aware of or personally observed," reliance on facts or data that would otherwise be inadmissible is allowable only if the facts or data are of the sort that an expert in the field typically relies upon. FED. R. EVID. 703. It is not permissible for a witness to "become [a] mouthpiece" for inadmissible evidence "under the guise of giving expert testimony." *Loeffel Steel Products v. Delta Brands*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). Otherwise inadmissible facts or data can be disclosed to the jury in the course of expert testimony "only if the[ ] probative value in helping the jury evaluate the opinion substantially outweighs the[ ] prejudicial effect." FED. R. EVID. 703.

## Argument

**I.  Mr. Rudolph's conclusions are a subjective opinion, not grounded in a reliable methodology.**

4

The Seventh Circuit has recognized that a police practices expert may offer an opinion as to "sound professional standards" governing a defendant's actions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful."). Such experts assist the jury by describing the relevant standards and "identifying departures from them." *Id.* (internal citations omitted); *see also*, *Abdullahi v. City of Madison,* 423 F.3d 763, 772 (7th Cir.2005) (commenting that expert's testimony could be relevant to jury in determining whether officers deviated from reasonable police practices).

In doing so, however, the expert must actually provide information about the relevant standards. Even a supremely qualified expert cannot render unreliable opinions divorced from any sound methodology. *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). The expert must explain the "'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)); *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir.1989) (finding expert's opinion inadmissible where he "presented nothing but conclusions ... no discussion of hypotheses considered and rejected"). An expert must "'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.'" *Huey v. United Parcel Serv., Inc.,* 165 F.3d 1084, 1087 (7th Cir.1999) (citing *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir.1997)). "A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 396 F.3d 416, 419 (7th Cir. 2005). The critical inquiry is whether there is support

5

for the expert's opinion beyond that of the expert's naked assertion. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).

Here, Mr. Rudolph contends that his opinions "evaluate whether the investigators [sic] conduct was reasonable and appropriate and conformed with accepted police practices at the relevant time." Ex. 4, Rudolph Report at 3. Mr. Rudolph repeats several times in his report that the homicide file he reviewed met acceptable police investigative standards "back in 1990." *Id.* at 6-7, 27. But Mr. Rudolph does not cite any national police investigative standards in 1990 or otherwise. *See generally, id*. He also lacks any experience with homicide investigations in 1990. And, as he explained, he doesn't think there actually *were* any such standards in 1990. There were just things police officers did during investigations, some worse than others. Ex. 5, Rudolph Dep., at 196:3-16. This opinion amounts to the type of "bottom line" opinion that is not permissible under Rule 702.

To the extent that Mr. Rudolph will claim that his experience supervising homicides many years after the investigation at issue here provides support for his conclusions, he must actually "explain how the application of his prior experience to the facts of the case compels his conclusion." *Jordan v. City Chicago*, 2012 WL 254243, at *6 (N.D. Ill. 2012) (excluding opinion entirely based on "30+ years of experience as a firearms expert"); *see also* Fed. R. Evid. 702 advisory committee's note ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *Am. Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, 2014 WL 2893179, *8 (W.D. Wis. 2014) (refusing to admit proffered expert opinion that Defendant behaved "unethically"). But

6

throughout his report, Mr. Rudolph refuses to "show his work," and instead offers conclusions. For example, when considering the Defendants' interview with witness Dwayne Macklin, Rudolph states that Allio's opinions about the Macklin interview do not "call into question whether the interview was conducted according to general [sic] accepted law enforcement practices." Ex. 4, Rudolph Report at 14. But he does not provide any basis for this opinion. *Id.* Macklin has provided sworn statements dating back to the 1990s that police coerced him into making his statements. Rudolph dismisses those statements out of hand and concludes "the interview and interrogation of Macklin was conducted properly and professionally and consistent with police investigative best practices. The detectives interviewed Macklin and obtained probative information and presented the facts of their investigation to the State's Attorney's Office who also conducted their own interview of Macklin." *Id.* at 14. He does not explain what it means for the interview to be "conducted properly" or what "best practices" he is applying. He just credits the police narrative and declares their conduct appropriate without any discussion of why.

      A police practices expert who does not connect his experiences to the opinions offered, or cite any sources for the standards of the time, ought to be excluded. *Andersen v. City of Chicago*, 454 F. Supp. 3d 740, 744–46 (N.D. Ill. 2020). In *Andersen,* the plaintiff in a wrongful conviction lawsuit presented a very well qualified expert, former CPD superintendent Richard Brezcak, to offer opinions about the investigation. *Id*. at 744. However, because Brezcak did not connect his opinions to his own specific experiences, or cite to any national standards for policing during the relevant time period, the court excluded his testimony. *Id*. at 744-745. *See also*, *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017) (Evidence of purely localized police procedure is less likely to be helpful than nationally or widely used policy. The jury's task is to determine how a

7

reasonable officer would act in the circumstances, not how an officer in a particular local police department would act.)

Like Mr. Brezcak, Mr. Rudolph had a long and apparently successful career in law enforcement in one specific department. But he does not connect that experience to this investigation or cite any broader standards for homicide investigations in 1990. Just as in *Andersen*, an impressive career does not allow Rudolph to opine on *any* issue in police practices from any time period, in any place, without reference to any overarching standard. *Rivera v. Guevara*, 2018 WL 3093339, *5–6 (N.D. Ill. 2018) (barring former prosecutor and criminal court judge from opining on matters relating to criminal defense strategy and discovery practices); *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1024 (N.D. Ill. 2011) (barring police policies expert witness because despite "impressive credentials and extensive research in many areas of policing, he lacks the requisite foundation for his CPD-specific opinions").

Because Mr. Rudolph does not apply a reliable methodology in order to reach his conclusions, his opinions must be barred.

## II. Mr. Rudolph may not simply recite Defendants' version of the facts.

The vast majority of Mr. Rudolph's report is simply a repetition of what Defendants believe the evidence shows; he provides a brief "synopsis" of events, but then even in the subsequent section (titled "homicide investigation") he largely just repeats information from the homicide file, often as though it is fact. For example, he states "Weston provided specific and incriminating details as to his actions during this homicide. His statement corroborated information previously provided by Macklin." Ex. 4, Rudolph Report, at 14. Of course, the central matter of dispute in this litigation is whether Weston actually provided any specific or incriminating details, or whether, as Plaintiff contends, all of those facts were fed to him by

8

Defendants in the course of the torture inflicted on him. Likewise, Macklin denies ever providing information that would "corroborate" Weston's statement and also contends he was coerced. Mr. Rudolph's report is made up mostly of such statements of "fact" for paragraphs and paragraphs, but such matters are for the jury to decide, not a proper subject of expert testimony. *Burns v. Sherwin-Williams Co.*, No. 19-CV-5258, 2022 WL 4329417, at *20 (N.D. Ill. Sept. 18, 2022), *aff'd*, 78 F.4th 364 (7th Cir. 2023) ("An expert cannot simply spout facts and dress them up *as* opinions. An expert witness is not a fact witness, and an expert witness is not a mouthpiece for telling the jury facts by calling them 'opinions.'") (emphasis in the original); *United States v. Vance*, No. 07 CR 0351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011) (expert would not be permitted to testify about his review of discovery materials and his weighing of the evidence because that is the jury's role). *Estate of Arama v. Winfield*, No. 2:13-CV-381-JD, 2017 WL 1951462 at *4 (N.D. Ind. May 11, 2017) (expert "must testify to something more than what the jury can decide for itself").

    **III.**     **Mr. Rudolph may not speculate as to the motives or reasoning of witnesses.**

Mr. Rudolph should not be permitted to provide opinions about the motives or intentions of witnesses. Expert opinion must be grounded in facts or data and expert testimony must be excluded if it is unfairly prejudicial. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony . . . have a factual basis."). *See also Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions") (quoting Fed. R. Evid. 703). That is because Rules 702 and 703, and *Daubert* require expert opinions to be "based on sufficient facts or data" and be the "product of reliable principles and methods." Fed. R. Evid. 702(b) & (c). *United States v. Glover*, 479 F.3d 511, 517 (7th Cir. 2007) (expert testimony, like

other evidence, is subject to Rule 403 analysis and exclusion). For example, Rudolph speculates that Macklin may have had a "fear of retaliation" from either Plaintiff or another witness (Vic Brown) because of their alleged gang affiliation. Ex. 4, Rudolph Report, at 13. These types of guesses about a witness's intentions do not require expertise and are so unreasonably prejudicial that they warrant exclusion.

## Conclusion

For all of the foregoing reasons, the Rudolph's testimony should be excluded.

Respectfully submitted,

/s/ Theresa Kleinhaus
*One of Plaintiff's Attorneys*

Jon Loevy
Gayle Horn
Theresa Kleinhaus
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
Tess@loevy.com

## Certificate of Service

I, Theresa Kleinhaus, hereby certify that on January 17, 2025, I caused the foregoing document to be filed using the Court's CM/ECF system, thereby effecting service on all counsel of record.

/s/Theresa Kleinhaus