**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DEMOND WESTON,<br>Plaintiff,<br>v.<br>CITY OF CHICAGO, et al.<br>Defendants. | Case No. 20-cv-6189<br><br>Hon. Lashonda A. Hunt<br>Mag. Holleb Hotaling |

**Plaintiff's Motion to Exclude the Testimony of Dr. John Wixted**

Plaintiff, Demond Weston, by and through his attorneys, Loevy & Loevy, respectfully seeks to exclude the opinions of Defendants' identification and memory expert, John Wixted, pursuant to Federal Rules of Evidence 702 and 703.

**INTRODUCTION**

Defendants have identified Dr. John Wixted as an eyewitness identification expert to rebut the testimony of Plaintiff's expert Dr. Brian Cutler. Plaintiff does not dispute that Dr. Wixted is qualified to opine about eyewitness identification, but instead challenges the relevance of his two opinions. First, Dr. Wixted's opinion that highly confident identifications are made with high accuracy is inadmissible. That is because the correlation between confidence and accuracy has only been proven in certain circumstances—during the first identification procedure, which must be conducted under pristine conditions, with confidence contemporaneously recorded—which Dr. Wixted admits are not present in the instant litigation. Second, Dr. Wixted's opinion that three witnesses who have either testified or made statements

favorable to Plaintiff *may have been* recalling false memories should be barred as an improper credibility determination and because it is not helpful to the jury.

**FACTUAL BACKGROUND**

Plaintiff's conviction stems from three shootings that occurred on May 29, 1990. The shootings occurred close in time to one another and a few blocks apart. Ex. 1, May 29, 1990, Supp. Report at 2. Detectives believed that the shootings were committed in sequence and that they were motivated by gang retaliation. Ex. 2, Watson Closing Report. Defendants began questioning gang members from the area where the shootings occurred. *Id.* at 1-11. None of those witnesses mentioned Demond Weston's name as being involved. *Id.* Indeed, several of them testified in this civil case that they never knew Demond Weston until he was charged alongside them. Ex. 3, Walker Dep. at 18:7-11; Ex. 4, Strong Dep. at 27:16-18; Ex. 5., Smith Dep. at 27:3-10; Ex. 6, McCurine Dep. at 12:18-22.

On June 8, 1990, as the May 29, 1990 shootings remained unsolved, Curtis Sims was killed in close proximity to the location where the May 29, 1990 shootings had occurred. Ex. 7, Sims Supp. Report. Detectives quickly developed a lead in the Sims case, which led to the arrest of Dwayne Macklin. *Id.* Defendants determined that the same weapon was used in the May 29, 1990 shootings and the June 8, 1990 shooting of Curtis Sims. Ex. 7, Sims Supp. Report; Ex. 2, Watson Closing Supp. Report. According to the Defendants, when speaking to Macklin about the Sims case, Macklin implicated Demond Weston in the May 29, 1990 shootings. Ex. 2 Watson Closing Supp. Report at 10-11. Macklin asserts that any statements he made about Weston were a result of being coerced by Defendant Kill and were not true. Ex. 8, Macklin 1997 Affidavit; Ex. 9, Macklin 2019 Affidavit.

Plaintiff was arrested while Macklin was in the back of a squad car. Ex. 10, Weston Affidavit at ¶6. At the time, Kill kept asking Weston whether he was "Vic Brown," another suspect in the Curtis Sims murder. *Id* at ¶¶7, 9; Ex. 7, Sims Supp. Report. When Weston said no, Kill said something to the effect of "you'll do." Ex. 10, Weston Affidavit at ¶¶7, 9. Kill seized Weston and brought him to Area 3, where Defendants Moser and Maslanka proceeded to torture him into falsely confessing to the May 29, 1990 shooting of Joseph Watson. *Id.* at ¶¶16-38. Moser and Maslanka did not ask Weston about the other two shootings that occurred on May 29, 1990. Ex. 11, Weston GPR.

Several weeks later, Defendants were still investigating the other two May 29, 1990 shootings—one of which involved victim Deneen Coats, and another involved victim Derrick Mason. Defendants had no evidence implicating Weston in either shooting. Nonetheless, the Defendants put Weston—along with four other suspects—in a lineup for Coats and Mason to view. Ex. 12, Coats Lineup Report; Ex. 13, Mason Lineup Report. Coats selected Weston and two others; her confidence level in her identifications was not recorded. Ex. 12, Coats Lineup Report. Deneen Coats later told investigator Susan Swanson that detectives showed her photographs before viewing the lineup and that police officers indicated to her who their suspects were. Ex. 14, Swanson Dep. at 86:17-88:10; 99:13-100:8; 100:19-101:10. Mason also viewed a lineup and selected Weston but the police documented that Mason was "not positive" in his identification. Ex. 15, Mason GPR; Ex. 13 Mason Supp. Report.

**DR. WIXTED'S OPINIONS**

Dr. Wixted provides two opinions in this case, both of which should be barred. First, Dr. Wixted has opined that an eyewitness' confidence in his identification during the first identification procedure is highly correlated with accuracy, if the confidence level is

contemporaneously recorded and the identification is made under pristine conditions. Ex. 16, Wixted Report at 14-15. That opinion has no bearing on the instant case because none of the criteria for its application have been met.

Second, Dr. Wixted opined that Plaintiff's, Dwayne Macklin's and Deneen Coats's memories of their interaction with police may be false memories. Ex. 16, Wixted Report at 15-17 Wixted testified that there is no way to tell whether a memory is true or false without independent corroborating evidence; nonetheless, he tries to do so here. *Id.* at 15. That opinion is an improper credibility determination and unhelpful to the jury..

## LEGAL STANDARD

The Federal Rules of Evidence ("Rules") permit expert opinion only if the testimony is "based on sufficient facts or data" and "the product of reliable principles and methods," which the expert has "reliably applied." Rule 702; *Higgins v. Koh Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). The trial judge occupies a "gatekeeping role" and must scrutinize proffered expert testimony to ensure it satisfies each requirement of Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597 (1993). A trial court should exclude expert testimony that is not pertinent to a disputed issue in the case even if the methodology underlying the testimony is sound. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).The proponent of the expert evidence bears the burden of establishing by a preponderance of the evidence that the requirements set forth in Rule 702 and *Daubert* have been satisfied. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## Argument

### I. DR. WIXTED'S OPINION REGARDING CONFIDENCE AND ACCURACY IS IRRELEVANT

Much of Dr. Wixted's opinion focuses on his hypothesis and attendant research that confidence and accuracy are correlated. This opinion should be barred as the criteria for its applicability have not been met here. It is, therefore, not a "fit" to the instant case.

### A. The Accuracy-Confidence Analysis Cannot be Done on Coats's Identification Because Her Confidence Level Was Never Recorded

As Dr. Wixted explained, the correlation between confidence and accuracy exists (a) at the time of the first test and (b) where confidence is contemporaneously recorded. Ex. 16, Wixted Report at 12 ("the relationship between confidence and accuracy on the first test is very strong"); Ex. 17, Wixted Dep., at 104:5-17 (getting an "immediate confidence statement [b]efore the witness gets any feedback or anything else" is "the most important thing"). Dr. Wixted explained that in these circumstances, high confidence identifications are highly accurate and low confidence identifications are "inconclusive," which Dr. Wixted defined as equivalent to "random chance." Ex. 17, Wixted Dep. at 150:2-17.

Dr. Wixted applied this framework to two identifications in this case—those made by Derrick Mason and Deneen Coats—but at most, only one is a fit. As to Mason, Mason's confidence level was contemporaneously recorded in the police report memorializing the lineup he viewed; it stated that Mason "could not be positive of his identification." Ex. 13, Mason Lineup Report at CCSAO 2647; Ex 15, Mason GPR, at CCSAO 2450. From this, Dr. Wixted concluded that Mason's identification was a "low confidence" identification. Ex. 17, Wixted Dep. at 157:2-14.

Coats's identification, by contrast, is missing the necessary predicate for Dr. Wixted's analysis and his attendant ability to ascribe an accuracy level to it. Notably, as Dr. Wixted admits, there is no recording of Coats's confidence level in her identification of Plaintiff, let alone a contemporaneous one. Ex. 17, Wixted Dep., at 152:25-153:13. Rather, the police report simply

indicates that Coats identified Plaintiff (along with John Walker and Jerrod Smith). Ex. 12, Coats Lineup Report.

Dr. Wixted tried to replace this gaping hole with speculation, stating that "[y]ou could infer that [the police] would've made it a – a notation if – if Coats' ID was low confidence . . . ." Ex. 17, Wixted Dep., at 152:2-3; *see also id*. at 152:25-153:13 (admitting that "there's no indication" that Coats was asked about her confidence level or provided information about that); *id*. at 124:8-18 (admitting he has no knowledge that the Chicago Police Department recorded confident, positive identifications by not noting confidence levels). But there is no evidentiary support for such a proposition—and speculation cannot be the basis for an expert opinion. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony . . . have a factual basis."); *see also Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions") (quoting Fed. R. Evid. 703); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Because Dr. Wixted has no factual foundation for applying his confidence-accuracy relationship to Coats's identification, it should be barred.

### B. The Accuracy-Confidence Analysis Cannot be Applied because the Lineups Were Not Prisine

But that is not the sole basis for barring this opinion. The relationship between confidence and accuracy has only been proven where the lineup was given under pristine conditions. Ex. 16, Wixted Report, at 14. A pristine lineup occurs when each of the following conditions are met: (a) a lineup with at least five fillers; (b) one suspect per lineup; (c) the suspect cannot stand out; (d) the police must provide cautionary instructions that the suspect may not be in the lineup; (e) the lineup is administered double-blind; and (f) confidence is recorded at the time of the lineup. Ex. 17, Wixted Dep., at 103:5-105:23. Dr. Wixted admitted that the lineup

that Coats (and Mason) viewed was not pristine: There were five suspects, there is no evidence that cautionary instructions were given, the lineup was not administered double-blind and only Mason's confidence was recorded. Ex. 17, Wixted Dep., at 103:10-11; 121:14-122:21, 123:13-18.

Nonetheless, according to Dr. Wixted, "[c]onfidence tells you a lot, even if it's a non-pristine procedure, it just doesn't tell you as much." Ex. 17, Wixted Dep. at 136:15-19. But Dr. Wixted admitted at his deposition that he has not investigated how a non-pristine lineup might affect the accuracy of a highly confident identification. For example, Dr. Wixted testified that if a lineup has multiple suspects "[i]t's reasonable to assume that it was reduce the accuracy of, for example, a high confidence ID to some extent" but it "hasn't been specifically investigated." *Id.* at 125:11-23; *see also id*. at 127:2-24 (admitting there is "very little research" on the impact of giving cautionary instructions); *id*. at 131:2-133:1 (explaining that "there's very little research" on impact of blind versus non-blind administration on accuracy of identifications).

Moreover, the only citation in Dr. Wixted's report to support the connection between accuracy and confidence requires a pristine lineup—Wells, et. al. "Policy and procedure recommendations for the collection and preservation of eyewitness identification evidence" (hereinafter "Wells 2020"). Ex. 16 (Wixted Report) at 14 (explaining that a confident identification "is more accurate the more the procedure approximates a pristine lineup," citing Wells et. al., 2020); *id*. at 26 (listing Wells 2020 article). On that score, the Wells 2020 article explains that "eyewitness confidence is a useful cue to the accuracy of a witness's decision when instructions do not imply the presence of a culprit [*i.e.*, cautionary instructions are given],

double-blind administration is used and fair lineups are presented." Ex. 18, Wells 2020, at 22. In short, if a lineup is pristine.

Because the criteria for the correlation between accuracy and confidence are not met here, and because the relationship between accuracy and confidence has not been studied outside of a pristine lineup, there is no scientific foundation for application of this hypothesis to the case. *See* Rule 702 (requiring the testimony be "the product of reliable principles and methods"); *see also Sacchetti v. Galludet U.*, 344 F. Supp. 3d 233, 248 (D.D.C. 2018) (barring testimony where "Dr. Welner has not identified or explained his methods or how they were applied in this case"). Where there is no reliable scientific foundation for an opinion, Rule 702 requires exclusion.

**C. Dr. Wixted Cannot Opine on Plaintiff's Guilt**

Finally, in his report, Dr. Wixted stated that Coats's identification of three suspects in this case makes it "not unreasonable to suppose that these three faces were identified because they matched her memory of the perpetrators" and in this way, "moves the needle in the direction of guilt . . .." Ex. 16, Wixted Report, at 15; This is improper.

To start, an expert cannot opine on guilt or innocence. It is up to the jury to determine whether Plaintiff is innocent or guilty; Dr. Wixted is in no better position to make this factual finding than the jury and he cannot usurp its role as the factfinder in this case. *See United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) ("[A]n expert's role is to 'help the trier of fact to understand the evidence,' Fed. R. Evid. 702(a), not to draw conclusions *for* the fact finder when no help is needed[,]" and the Federal Rules "prohibit expert opinions that would "merely tell the jury what result to reach."); *Thomas v. Landrum*, No. 11 C 09275, 2014 WL 11370447, at *1 (N.D. Ill. Mar. 18, 2014) ("Although expert opinions are not objectionable 'just because' they 'embrace[ ] an ultimate issue,' very often that type of opinion will not help the trier of fact

understand evidence or determine a fact in issue, which is the basic precondition for permitting expert testimony.").

Nor has Dr. Wixted provided any methodology for his opinion that Coats's identification of three suspects "points towards guilt." There is no scientific connection between the statistical probability of Coats picking three suspects and their guilt—particularly where Plaintiff's conviction has been overturned, and the other two people Coats has identified have asserted their innocence and testified that they did not know Plaintiff. Ex. 3, Walker Dep. at 30:2-15 (didn't have anything to do with the crimes); Ex. 5, Smith Dep. at 13:11-13. Indeed, Dr. Wixted cites nothing for this proposition other than his own say-so. Ex. 16, Wixted Report, at 15. That type of *ipse dixit* testimony is precluded. *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (affirming exclusion of opinion of expert who "does not say what software he used, what data he fed it, what results it produced, and how alternative explanations (including spoofing) were ruled out. We have said over and over that an expert's *ipse dixit* is inadmissible.").

Wixted also fails to account for the alternative possibility that Coats selected these three suspects because the Defendants induced her to—a possibility supported by testimony from Susan Swanson. Ex. 14, Swanson Dep., at 86:17-88:10; 99:13-100:8; 100:19-101:10. That failure too warrants the exclusion of this testimony. *See Brown v. Burlington Northern Santa Fe Railway Co.*, 765 F.3d 765, 770, 773 (7th Cir. 2014) (explaining that while an "expert need not exclude all alternatives with certainty," the expert should "adequately account for obvious alternative explanations") (internal quotes omitted); *see also Am. Fam. Mut. Ins. Co. SI v.*

*Electrolux Home Prods., Inc.*, No. 20-CV-1455, 2024 WL 1715590 at *5 (E.D. Wis. April 22, 2024) (excluding opinion about the case of the fires because the expert "did not articulate what alternative explanations he considered and ruled out"); *Rogers by Rogers v. K2 Sports, LLC*, 348 F. Supp. 3d 892, 898 (W.D. Wis. 2018) (excluding opinion by expert, in part, because the expert did not "address alternative explanations for the damage to Scott's helmet, such as the existence of a manufacturing defect or a weakening of the helmet through multiple Impacts"); *Jerid Enterprises, LLC v. Lloyd's London*, No. 3:10-CV-435 JD, 2012 WL 6115673, at *11 (N.D. Ind. Dec. 10, 2012) (excluding expert opinion where expert "does not seem to have adequately accounted for alternative explanations").

Finally, Dr. Wixted's opinion that Coats's identifications point toward guilt is too vague to be useful to the jury. Dr. Wixted admits that Coats's identification "could happen by chance." Ex. 16, Wixted Report at 15. His opinion to the contrary states at most that it is "not unreasonable to suppose that these three faces were identified because they matched her memory of the perpetrators" but he admits he cannot say "to what degree" her identifications are "in the direction of guilt." Ex. 16, Wixted Report) at 15. "Expert testimony cast in terms of "mays" and "mights" is inherently less reliable than opinions stated with a reasonable degree of scientific certainty." *R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2019 WL 6053223, at *11 (M.D. Pa. Nov. 15, 2019).

## II. Dr. Wixted's Opinions Regarding False Memories are Not Admissible

Dr. Wixted's second opinion fares no better. In opining that Plaintiff's, Macklin's and Swanson's memories might be false memories, Dr. Wixted improperly invades the province of the jury by making credibility determinations, and is so vague as to be confusing—instead of helpful. For those reasons, it should be barred.

### A. Dr. Wixted's Opinion Regarding False Memories is an Improper Credibility Determination

Dr. Wixted's opinion regarding false memories is an improper credibility determination. Taking a step back, Dr. Wixted opined that people can have memories that are false but which they sincerely believe to be true. Ex. 16, Wixted Report at 11, 15. Dr. Wixted testified that you cannot tell from the memory itself whether the memory is false or not. Rather, the only way to make that determination is to evaluate independent corroborating evidence. Ex. 17, Wixted Dep. at 191:3-11; Ex. 16, Wixted Report at 11 ("The qualities of the memories themselves cannot distinguish true from false memories; only independent corroborating evidence can tell you if the memories are accurate."). That is precisely the function of the jury. Ex. 17, Wixted Dep., at 193:2-10, 218:7-10, 219:1-11, 232:23-233:10. *U.S. v. Tapia*, 610 F.3d 505, 512 (7th Cir. 2010), *as amended on denial of reh'g* (Aug. 16, 2010) (courts can find statements reliable where "they are generally consistent, both internally and with the remainder of the evidence"); *U.S. v. Williams*, No. 19-CR-66, 2023 WL 1970326, at *5 (N.D. Ill. Feb. 13, 2023) (assessing credibility by "observ[ing] his demeanor under direct- and cross-examination" and determining its "consisten[cy]"); *see also* Seventh Cir. Pattern Civil Jury Inst. 1.13 (Testimony of Witnesses [Deciding What to Believe]); Seventh Cir. Pattern Civil Jury Inst. 1.14 (Prior Inconsistent Statement).

Dr. Wixted admitted that the factfinder's job is to weigh the evidence and make a determination about whether a particular memory is false or not. Ex. 17, Wixted Dep., at 219:1-11, 232:23-233:10. Indeed, Dr. Wixted has no greater expertise in doing so than a lay juror. *See Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011). Nonetheless, Dr. Wixted engaged in an analysis of whether Plaintiff's, Macklin's and Coats's memories of the relevant events were false memories. Ex. 16, Wixted Report, at 14-17. In doing so, at best, Dr. Wixted

highlighted differences in their testimony over time—again, the job of the jury. To that end, Dr. Wixted detailed differences in Weston's recounting of his torture over time. Ex. 16, Wixted Report, at 15-16. At worst, Dr. Wixted is essentially telling the jury that these witnesses—Plaintiff, Macklin and Coats (as told to Swanson)—are not credible and that there memories are false—all in violation of the black letter law. *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 3193585, at *4 (N.D. Ill. 2017) (barring expert's credibility determination). For example, with regard to Coats, Dr. Wixted stated that Swanson's interview of Coats created "problematic issues" because she was employed by Loevy & Loevy and was "accompanied by someone who had been exonerated of a crime . . . ." Ex. 16, Wixted Report at 17. Dr. Wixted further questioned Swanson's statement that she was "only interested in getting the facts" because Swanson "told Coats that she was investigating police misconduct" and "declared to Coats that she believed Weston to be innocent." *Id*. Dr. Wixted concludes that these "[i]nfluences . . multiplied many times over the years is what makes long-delayed memories increasingly uninformative." *Id*. These are credibility determinations that should be made by the jury—not by an expert witness. *See Harris*, 2017 WL 3193585, at *4 .

On that score, *Rubalcava v. Perez*, No. 20-CV-04191-BLF, 2024 WL 3012808, at *3 (N.D. Cal. June 14, 2024) is instructive. Faced with a similar challenge there, the district court held:

> The difficulty is with other portions of Dr. Wixted's report in which he offers opinions as to which eyewitness testimony in this case is credible and which is not. For example, Dr. Wixted states that the police misconduct now reported by eyewitnesses "has little to no information value." *Id.* He also states that "delayed eyewitness accounts of police misconduct cannot reasonably be considered to provide any useful information." *Id.* at 17. Dr. Wixted's opinions that recent eyewitness accounts of 2002 events have no value, and cannot be considered, intrudes on the role of the jury.

*Id*. So too here.

**B. Dr. Wixted's Opinion Should be Barred Because it is Too Vague to Be Helpful**

Dr. Wixted's opinion should also be barred because it is too vague to be helpful to a jury. Dr. Wixted admitted that there is nothing about a memory itself that indicates whether it is true or false. Ex. 16, Wixted Report, at 11, 14. Instead, Dr. Wixted suggested that jurors look at the "first test" of a person's memory and whether there is corroborating evidence independent of the memory. Ex. 16, Wixted Report, at 7; Ex. 17, Wixted Dep., at 159:17-18 ("[T]he first test of memory is what matters."). But even as to those factors, Dr. Wixted admitted that there are no predictive rules; and their introduction at trial will only serve to inject confusion into the proceedings.

As to the former, Dr. Wixted did not define the "first test," but suggested that what is most important is the first time a person is asked about a particular detail. Ex. 17, Wixted Dep., at 217:1-21. Dr. Wixted gave as an example that "sometimes police will interview somebody, and they'll realize we should have asked them about these additional things, and they do a second [interview.]" *Id.* at 217:8-11. In that instance, the "first test" would actually be the second interview—not the first. And even then, Dr. Wixted admitted that sometimes people do not report their entire memory on this (now second) test for one reason or another. Ex. 17, Wixted Dep., at 204:9-22.[1]

The problem with Dr. Wixted's analysis is that there is no clear definition of the "first test." As such, introduction of this terminology will simply create mini-trials about what the first test is—*e.g.*, whether Plaintiff's discussions with his family immediately after his arrest (where he described his torture in detail) were the first test—or whether it was later, when he testified at

[1] Moreover, Dr. Wixted suggested that only the first test that is contemporaneously recorded matters. Ex.17, Wixted Dep., at 159:17-23. Such a framework gives primacy to police conversations—which are often memorialized in a supplementall report or GPR—and discounts conversations that a witness may have had with family or friends—which are not ordinarily memorialized in writing.

the motion to suppress. Ex. 17, Wixted Dep. at 229-30 (agreeing that the "first test" may be what Plaintiff said to his mother or his lawyer). These mini-trials within the trial will create delay and confusion. *See United States v. Redwood*, 216 F. Supp. 3d 890, 897–98 (N.D. Ill. 2016). That is particularly so because Dr. Wixted admits that there are a number of reasons why a witness might not provide all of the details during that "first test." Ex. 17, Wixted Dep., at 204:9-22. Moreover, Dr. Wixted cannot even say when after the first test that memory becomes unreliable. *Id*. at 210:4-8 (explaining that "people are asking me" where "a preliminary hearing is held a month after a crime" "is that too long? I'm like, I don't know. I – you know, I don't know."); *see also id*.a 208:21-24 ("Q. Is there a – is there a point where it becomes—which starts tending toward unreliability? A. Nope. I can't draw that line.").

Nor can Dr. Wixted opine that the failure to report a memory at the first test makes a memory more likely to be false; only that it "might be true . . . or [it] might be false." Ex. 16, Wixted Report at 16; *see also* Ex. 17, Wixted Dep. at 240:9-18 (cannot say for sure that Plaintiff's memories are false); 242:21-243:6 (cannot say for sure that Macklin's memories are false); 247:10-17 (cannot say whether Coats' memories are true). Dr. Wixted's inability to cast his opinions to any degree of certainty renders them so vague as to be unhelpful to the jury *See*., *Shohola, Inc*., 2019 WL 6053223, at *11.[2]

**C. Dr. Wixted's Opinions are Obvious to a Jury**

At bottom, all Dr. Wixted can testify to is that memories degrade over time, that people sometimes have false memories, and that in order to analyze a person's memory, a jury should look at whether there is independent corroborating evidence. These basic principles of memory are obvious to a juror and do not require expert testimony. In *R.D. v. Shohola, Inc.*, the district

[2] At his deposition, Dr. Wixted distanced himself from his prior statement that increasingly elaborate memories are a tell tale sign of a false memory. Instead, Dr. Wixted admitted that it is at most inconclusive evidence that a memory could be false. Ex. 17 (Wixted Dep.) at 195:12-20.

court excluded memory expert Dr. Loftus's testimony, finding that "many of the propositions about which Dr. Loftus proposed to testify are matters well within the ken of a lay jury." *Shohola, Inc.*, 2019 WL 6053223, at *13. "For example, the notion that memories deteriorate over time is well within the understanding of a jury without the aid of an expert." *Id.* "Likewise, the concept that witnesses can vehemently recall events in a faulty matter is readily understood and is something that falls within the common experience of jurors." *Id.*

So too here. Dr. Wixted's proffered testimony "falls within the category of common knowledge" and therefore should be barred. *Id*; *see also Estate of Arama v. Winfield*, No. 2:13-CV-381-JD, 2017 WL 1951462 at *4 (N.D. Ind. May 11, 2017) (expert "must testify to something more than what the jury can decide for itself"); *United States v. Redwood*, 216 F. Supp. 3d 890, 897-99 (N.D. Ill. 2016) (finding that jurors already have an understanding of basic principles of human memory and that expert testimony was unwarranted).

**Conclusion**

For all of the reasons stated herein, Dr. Wixted should be barred from providing any expert testimony in this case.

Respectfully submitted,

**DEMOND WESTON**

By: /s/ Theresa Kleinhaus
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Theresa Kleinhaus
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
Tess@loevy.com

**Certificate of Service**

I, Theresa Kleinhaus, an attorney, hereby certify that on January 17, 2025, I caused the foregoing document to be filed using the Court's CM/ECF system, thereby effecting service on all counsel of record.

/s/Theresa Kleinhaus