# Exhibit 61

**GENERAL PROGRESS REPORT**
**DETECTIVE DIVISION/CHICAGO POLICE**

| DATE OF ORIG. CASE REPORT | DATE OF THIS REPORT |
|---|---|
| DAY MONTH YEAR | DAY MONTH YEAR WATCH |
| 29 MAY 90 | 1 JUN 90 3 |

| OFFENSE CLASSIFICATION - LAST PREVIOUS REPORT | VICTIM'S NAME AS SHOWN ON CASE REPORT | BEAT/UNIT ASSIGNED |
|---|---|---|
| HOMICIDE/MURDER | WATSON, JOSEPH | 5312 |

This form is designed for recording handwritten notes and memoranda which are made during the conduct of investigations, including: inter-unit memoranda (handwritten or typewritten), witness and suspect interview notes, on-scene canvas notes, and any handwritten personal notes made by detectives during the field investigation of violent crimes which are used to prepare official Department case reports.

WASHINGTON, SYLVESTER

BALDY, ME, DAWON, EZEL + "MIKE-G" WALKED FROM 51ST + JUSTINE CORNER BRN. BLDS.

51ST + WOOP

⚹ - EZEL CARRIES .38 CAL. EARLIER ON 29 MAY 90. HAD BREAK OPEN H/P

M/B/18YRS - "SHANK" CARRIES .7mm B/S HAD

- 51 7TH + ADA (WEST SIDE) APT BLDS w/ ROOM

⚹ "SHANK" SHOWED ME 9.mm BEFORE DARK 29 MAY 90.

- SHANK, "D" (DARKER CAPS) BIZ + NATE IN BIZ'S CAR BIZ DROVE, SHANK FRNT SEAT NATE + "D" IN BACK SEAT.

EVERYBODY ON 53RD + WOOD— BIZ'S PEOPLE LEFT IN HIS CAR— WE ALL WALKED - DOWN WOOD TO HONORE + 51ST THEN TO CORNER OF 57TH + HONORE - SAW MORE THAN 5 BOYS ON WOLCOTT + 57TH CLOSE TO CORNER -

WENT W/ EZELL — WENT DOWN GARFIELD
SLY WENT ACROSS GARFIELD

| REPORTING OFFICER'S SIGNATURE—STAR NO. | RECEIVED BY SUPERVISOR'S SIGNATURE—STAR NO. | DAY—MO—YR. TIME |
|---|---|---|
| #16161 | 2108 | |

CPD-23.122 (Rev. 2/83)

R.D. NO. N-242748

# Exhibit 62

**CRIME LABORATORY REPORT**
CRIME LABORATORY DIVISION/CHICAGO POLICE

| INCIDENT/ OFFENSE CLASSIFICATION | I-UCR OFF. CODE | RD NO |
| --- | --- | --- |
| HOMICIDE / MURDER | 0110 | N242748 |

| VICTIM'S NAME | DISTRICT | AREA | DATE OF THIS REPORT |
| --- | --- | --- | --- |
| JOSEPH WATSON | | | 08 Jun 1990 |

| DEFENDANT'S NAME | LABORATORY UNIT |
| --- | --- |
| | POLYGRAPH UNIT |

The following subject was scheduled for a polygraph examination
at the Crime Laboratory Division Polygraph Unit.

```
SUBJECT:        MCMORRIS, KAVIN.
DATE/TIME:      04-06-90  1705 hours
REQUESTED BY:   DET. PALADINO of Area 3 VC
CONDUCTED BY:   Robert Tovar  12847

RESULT:         DECEPTION INDICATED
```

Page 1 of 1

| EXTRA COPIES REQUIRED (NO. & RECIPIENT) | REPORTING MEMBER (PRINT NAME) Robert Tovar  12847 |
| --- | --- |
| 1 To  Area 3 VC | SIGNATURE |

CPD-33.110 (9/89)

Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002392

# Exhibit 63

**POLYGRAPH EXAMINER'S WORKSHEET/** CRIME LABORATORY DIVISION CHICAGO POLICE

SUBJECT'S NAME KAVIN       McMORRIS    DATE (DAY-MO-YR) 05 JUN 90   RD NO N 242 748

7yrs   148/end   MED @ Pills 2x A day

Empl   Swifty Car Wash    Hop @ WED NECK STIFF

School: 606 E Junior    Doc Clinic 55/Halsted

NOR/MON @

I₁ KAVIN (SHONK)   I 3   Ch ⊕   I 5 Jacket   (woke of Juvenue   FEEL

I₂   16 ⊕   I 4   4/⊕   I   Henove    I feel pretty good

R1   R u lyin about what u said about former Dell ⊖

R2   Du see anyone get shot around 55-58 Street ⊖

R3   Du helpin' the shootins around 55-58 Street ⊖

R4   Du shoot at anyone around 55-58 Street ⊖

R5 BS FORMER Dell   Du Kn any other names right now involved in the shootin around 55-58 Street ⊖

R   BS Being   Du Kn people got shot the night it happened

R   BS Being on Add   Du hear the shots from any place else

C1   Fights Seno   WWfAB   BS Truffic   Hu done any other crimes ⊖

C2   BS lied   Du ever want to shoot u gun at anybody else ⊖

C3   Hu told me the complete truth but today ⊕

CPD-33 501 (REV 8/89)      **Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002395**

3) Folks Ashland
justin

→ about six went around shooti

Father Dell —
found out next day

SJ § festival = Damion he was
telly me about it

when I was on AdA I heard

gunshots
heard shots guy to
gus shutter

got shot

Penich ee
20
Brother

→ Father Dell

Thursday at School

They ran up on this
porch shot his
Brother →

Paul Lockhart
.37 cal.
Still 25 May 90
9mm cousin
32 shot
32

c/b

**POLYGRAPH EXAMINER'S WORKSHEET/** CRIME LABORATORY DIVISION
CHICAGO POLICE

SUBJECT'S NAME KAVIN    Mc Morris    DATE (DAY-MO.-YR.) 14 Jan 90    RD NO. N 242748

RH    Stimulus

Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002397

3

4

5

6

7

8

9

Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002398

# Exhibit 64

**Deposition of Robert Tovar**
**Taken:  March 21, 2023**
**Role:  Polygraph Examiner**

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

**CASE NO. 1:20-cv-06189**

**DEMIND WESTON**

**V.**

**CITY OF CHICAGO, ET AL.**

**DEPONENT:**

**ROBERT TOVAR**

**DATE:**

**March 21, 2023**



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

```
 1        Q    Okay.  So what's given to the area is the
 2   document that's been marked as Exhibit 2, CCSAO_2376,
 3   correct?
 4             MR. BURNS:  We didn't see the bottom form,
 5        Gayle.
 6             MS. HORN:  Oh, you need to see the bottom?
 7             MR. BURNS:  So there, at the bottom there.  See
 8        number --
 9             THE WITNESS:  Oh, down here?  Oh, I see what
10        you're talking about.
11   BY MS. HORN:
12        Q    I mean, I can ask it again.  This document
13   that's been marked as Exhibit 2, this crime laboratory
14   report, is this what's disclosed to the area?
15        A    Yes.
16        Q    Is your polygraph worksheet disclosed to the
17   area?
18        A    No.
19        Q    Is the polygraph worksheet disclosed to the
20   prosecutor?
21        A    If we're -- if I'm subpoenaed, we -- we would
22   send it.
23        Q    Okay.  Does the polygraph unit keep copies of
24   subpoenas?
25             MR. BURNS:  Talking about 1990 again, Gayle?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1      A    I --
 2      Q    Yes.  So in 1990 -- let me re-ask it and maybe
 3   this'll be an easier way to understand it.  Maybe not.
 4   Who knows?  In 1990, if the crime lab received a
 5   subpoena for polygraph documents, would a copy of that
 6   subpoena go in the file?
 7      A    It may.  Yeah, it may.  I -- I can't tell you
 8   exactly, but it may.
 9      Q    And do you know who within the crime lab was
10   responsible for responding to those subpoenas back in
11   1990?
12      A    Whoever the subpoena was -- name on it -- you
13   know -- for that information.
14      Q    So for example, in 1990, if the prosecutor
15   subpoenaed Robert Tovar for your polygraph documents,
16   would you, Mr. Tovar, be the one responsible for
17   responding to that subpoena?
18      A    Yes.
19      Q    How would you get a copy?  How would you get
20   that subpoena?  Like mechanically, who handed to you
21   back in 1990?
22           MR. BURNS:  Objection to the form of the
23      question.
24      Q    Do you understand my question?
25      A    I do.  Say who would give us that?  I -- I
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 14 of 89 PageID #:6081
The Deposition of ROBERT NOVAK, taken on March 21, 2023
101

1  couldn't tell you.  It would be -- it would come in, I

2  might see a subpoena on the desk -- in our file. I'll

3  look and I -- "Okay.  I'll -- it's my case."  But I

4  don't know.  They had different people sorting mail to

5  us or report some things from the -- our -- what I call

6  the front desk, if that -- that makes any sense.  So I

7  couldn't tell you who specifically would be the one that

8  would provide the subpoena.

9      Q    Okay.  And was it your practice when you got a

10  subpoena from the prosecutor to make a copy of it and

11  put it in the unit file?  So you had --

12         MR. BURNS:  I'm sorry, I didn't get that.

13      Q    Sure.  Was it your practice back in 1990, if

14  you received a subpoena from the prosecutor for your

15  documents relating to a polygraph, or set of polygraphs,

16  was it your practice to make a copy of that subpoena and

17  put it in the unit file?

18      A    Well, that -- that I -- I couldn't answer you.

19      Q    Why can't you answer that?

20      A    Well --

21         MR. BURNS:  Objection.  Form.

22      A    All I can say is that we kept all original

23  files.  So say I'll make a copy of something at that

24  time, I -- I -- I couldn't recall if I did or not.  But

25  we would keep the original and that was important to us.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 15 of 89 PageID #:6082
The Deposition of ROGER ROBERT TOVAR, taken on March 15, 2023
102

```
 1    All the original files were kept together on a
 2    particular polygraph.
 3         Q    And I think my question was actually a bit
 4    confusing.  What I'm wondering is if you, Mr. Tovar, in
 5    1990 received a subpoena, would you make a copy of the
 6    actual subpoena to put into your file so that you knew,
 7    for example, that "Hey, in this case the prosecutor
 8    subpoenaed my polygraph records."
 9         A    I would keep the original subpoena in our
10    file.
11         Q    How often do you recall in 1990 getting
12    subpoenaed by the prosecutor for your polygraph
13    documents?
14         A    That I -- I couldn't answer -- I -- I can't
15    tell you, Counsel.  Sorry.
16         Q    No, it's fair.  How about in your entire
17    career?  How often do you recall getting a subpoena from
18    the prosecutor for documents relating to polygraphs that
19    you had administered?
20         A    Oh, I -- you know -- I -- I can't answer
21    because it would -- I would -- that -- it would vary --
22    you know -- I could get none one year and maybe two the
23    following or I -- I -- yeah, I -- I don't want to -- I'm
24    guessing right now.  I don't want to provide that to --
25              MR. BURNS:  Don't guess.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 16 of 89 PageID #:6083
The Deposition of ROBERT ZOVAK, taken on March 21, 2023
112

1  memory, do you, of administering a polygraph to an

2  individual by the name of Kavin McMorris?

3      A    No, I don't, Counsel.

4      Q    Okay.  And according to this document, Mr.

5  McMorris arrived at the crime lab or the polygraph unit

6  at 17:05 on June 4th; is that correct?

7      A    That's what it has written down.

8      Q    And left at 18:20 on June 4th?

9      A    Yes.

10      Q    And I think I asked you this another time, but

11  you don't know what this 2228 means, do you?

12      A    I don't, I'm -- I'm confused about that.

13      Q    Okay.  And according to your case review, the

14  investigators were Paladino and Mosehr?

15      A    That's what's written down.

16      Q    Sorry, I missed that answer.

17      A    That's what's -- that's what's written down on

18  the report.

19      Q    Okay.  Did Detective Paladino or Detective

20  Mosehr bring Mr. McMorris to the polygraph unit for the

21  polygraph?

22      A    I would say yes.

23      Q    And can you read the remarks for me?

24      A    "Above subject alleged to be involved in

25  shooting."

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q     Okay.  Where did you get that information
 2   from?
 3        A     I would say it was the detectives.
 4        Q     And then going down.  Can you read the results
 5   for me, sir?
 6        A     Looks like, "Deception indicated.  Subject
 7   stated", I can't read that one.  Something tell or "told
 8   him he and six others involved in shooting." Famer or
 9   farmer -- something.
10        Q     Farmer Dell?
11        A     It might, I can't read that.  So I -- "Said
12   he" - "he shoot one in" -- I can't -- and I got H --
13   hard.  Hard or hand.  I -- I can't read -- read that
14   last word.
15        Q     Okay.  And that's information that you wrote
16   down on this polygraph case review, correct?
17        A     Yes.
18        Q     Where did you get that information from?
19        A     From the subject.
20        Q     And is that information that you would have
21   given to the detectives to use as they saw fit?
22        A     I -- I would just provide that information to
23   the detectives.
24        Q     Yes.  That's a better answer.  Is that
25   information that you would've provided to the
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 18 of 89 PageID #:6085
VIDEO DEPOSITION OF ROBERT ZOVAR taken on March 31, 2023
134

1      A      Yeah, I -- I couldn't answer that, Counsel.

2      I -- I -- I -- I wouldn't know.

3      Q      Okay.  The information that's contained on

4      this page, that's Bates stamped 2396, your notes

5      relating to your conversation with Mr. McMorris, is that

6      information that you would've communicated to the

7      detectives?

8      A      Yes.

9      Q      And then according -- going back to -- I was

10     trying to figure out the exhibit number, but maybe

11     Exhibit 5, your polygraph case review.  Yes.  I marked

12     it as Exhibit 5.  According to this, it indicates that

13     you found deception indicated.  Would you have

14     communicated that to the detectives as well?

15     A      Yes.

16     Q      Okay.  And I think you already said you

17     would've communicated this information underneath about

18     "Farmer Dell told him he and six others involved in

19     shooting, Farmer Dell said he shot one," and then we

20     couldn't quite read the rest of it; is that fair?

21     A      Yes.

22     Q      And that's information you would've given to

23     the detectives too, correct?

24     A      Yes.

25     Q      Would you have told Mr. McMorris that the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

# Exhibit 65

**Deposition of Bernard Murray**
**Taken:  April 6, 2023**
**Role:  Trial Prosecutor**

LOUISVILLE  LEXINGTON  LONDON  FLORENCE  CINCINNATI  INDIANAPOLIS  ORLANDO  JACKSONVILLE  TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

## CASE NO. 1:20-cv-06189

## DEMOND WESTON

## V.

## CITY OF CHICAGO, ET AL.

## DEPONENT:

## ASA BERNARD MURRAY

## DATE:

## April 06, 2023



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 21 of 89 PageID #:6088
The Deposition of ASH BERNARD MURRAY, taken on April 14, 2023

19

1    A    As getting ready for trial or motions or other

2    court events related to a case, we would -- I would know

3    the witnesses I was going to call, that I needed to

4    call, I'd prepare responses to legal filings, I'd

5    prepare my own legal filings.  So to that extent, yes, I

6    was familiar with the context of the filing.

7    Q    Okay.  I want to talk to you a little bit

8    about Brady versus Maryland.  Am I correct that in 1990

9    and 1991 you were aware of your obligation under

10   Brady v. Maryland to produce to a criminal defendant all

11   exculpatory evidence that was available to you?

12   A    I was aware of it.

13   Q    Okay.  And did you follow the Brady Rule

14   throughout your time in the Cook County State's Attorney

15   prosecutor's office?

16   A    Yes.

17   Q    Did you take your Brady obligation seriously?

18   A    Yes.

19   Q    Can you tell me what your understanding of

20   exculpatory is?

21   A    Well, under -- under Brady information that

22   could either lessen the degree of the charges or could

23   point to other suspects.

24   Q    So information about alternative suspects or

25   other suspects would be considered -- you would consider

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 22 of 89 PageID #:6089
The Deposition of JOSH BERNARD MURRAY, taken on April 12, 2023

23

```
 1          question.
 2              MR. OBERTS:  Objection, asked and answered,
 3          form, and overbroad.
 4     BY MS. HAMILTON:
 5          Q    You can answer.
 6          A    The -- as I said earlier, this motion is very
 7     similar, if not identical to other Motions for Discovery
 8     filed in criminal cases.
 9          Q    And then let's look at number 19.  That is on
10     page 7 or Bates stamp CCAAO_2122.  And Number 19 is
11     "Requesting any and all material or information within
12     its possession or control, which tends to negate the
13     guilt of the accused as the offense charged or would
14     tend to reduce his punishment, therefore."  Do you see
15     that last sentence?
16          A    I see that.
17          Q    Okay.  And would you consider this a request
18     for exculpatory information?
19          A    Yes.  Or, yeah, Brady information.
20          Q    And did you see this type of request on the
21     Motions for Discovery that you would receive when you
22     were a Cook County State's attorney?
23              MR. OBERTS:  Objection, overbroad.
24              MR. BAZAREK:  Object to foundation, too.
25          Q    You can answer.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 23 of 89 PageID #:6090
The Deposition of JOSH BERNARD MURRAY, taken on April 23, 2024

40

1        Q    Okay, so hold on a second.  Exhibit 2 is Bates

2   stamped CCSAO_2375 through 2390.

3        A    Okay.

4        Q    Can you flip through Exhibit 2 and let me know

5   when you finish?

6            MR. OBERTS:  And Mr. Murray, so the first page

7        is 2375?

8            THE WITNESS:  2375, yes.

9            MR. OBERTS:  Danielle, right now, you just want

10       him to look through all the pages?

11  BY MS. HAMILTON:

12       Q    Yeah, just flip through them.  You don't have

13  to --

14       A    Okay.

15       Q    -- memorize them.  I just want you to

16  familiarize yourself with the document.

17       A    Okay.  I'm leafing through them now.  Okay.

18  I've looked through them.

19       Q    Okay.  So if you'll go back to the first page,

20  2375?  There's handwriting that says, "Polygraph Bryan

21  Hampton."  Is that your handwriting?

22       A    No.

23       Q    Do you know whose handwriting it is?

24       A    I do not.

25       Q    And 2376 through 2383 appear to be polygraph

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 24 of 89 PageID #:6091
The Deposition of DASH BERNARD MURRAY, taken on April 14, 2023

41

1  documents related to Bryan Hampton; is that correct?

2       A    Through what page, you said?

3       Q    Through 2383.

4       A    I'm -- I'm not exactly sure what 2380 is, but

5  the other documents appear to be related to Bryan

6  Hampton.  Actually, I'm not really sure what 2382 is

7  either.

8       Q    Okay.  And then let's look at 2384.

9       A    Yes.

10      Q    And there's handwriting that says, "Polygraph

11 Nathaniel McCurine," at the top of 2384.  Do you see

12 that?

13      A    I do.

14      Q    And is that your handwriting?

15      A    It is not.

16      Q    And do you know whose handwriting it is?

17      A    I do not.

18      Q    And 2384, or sorry, 2385 through the end of

19 the document appear to be polygraph documents related to

20 Nathaniel McCurine, correct?

21      A    The only page I'm not sure of is 2389.  It

22 could be related to the polygraph examination, or it

23 could be something else that I'm not aware of.

24      Q    Okay.  Do you know who created the folders?

25 You know, the Polygraph Bryan Hampton folder and the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 25 of 89 PageID #:6092
The Deposition of DASH BERNARD MURRAY, taken on April 28, 2023

42

1    Polygraph Nathaniel McCurine folder?

2        A    I don't recognize the -- the handwriting on

3    those folders.  It's -- it's not my handwriting.

4        Q    I'm sorry, I didn't hear your complete answer.

5    Can you repeat it?

6        A    I -- I don't recognize the handwriting and

7    it's not my handwriting.

8        Q    So you don't know who created either folder;

9    is that correct?

10       A    The -- the -- the first page on each person? I

11   don't know who created those.  I'm assuming though

12   there's Xeroxed in the folder, they're not created by

13   me.

14       Q    Okay.  Do you know when these folders were

15   created?

16       A    The -- that page with the handwriting on it, I

17   don't know when that page of the handwriting was

18   created.

19       Q    And there are a number of folders in the

20   State's Attorney file, correct?  Or there are Xeroxes of

21   the first page of the folder in the State's Attorney

22   file?

23       A    Yes.

24       Q    Did you create any of the folders?

25       A    I didn't recognize any of the folders being my



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   handwriting.
 2       Q     Do you know when any of the folders were
 3   created?
 4       A     When they were created?
 5       Q     When, yes.
 6       A     No, I don't know when they were created.
 7       Q     Do you know if the folders were created at the
 8   time of trial?
 9            MR. OBERTS:  Objection, vague.  You're just
10        saying the folder, that actual -- whatever.
11        Objection, vague.
12   BY MS. HAMILTON:
13       Q     You can answer.
14       A     This folder and this handwriting is unfamiliar
15   to me.
16       Q     So does that mean that you -- do you think
17   that you had these folders at the time of trial?
18       A     I had reports that I accumulated in
19   preparation for discovery, motions, and for trial
20   containing a multitude of police reports.  But I didn't
21   create this folder.  My -- that's not my handwriting.
22            MR. OBERTS:  And "this," can you state what
23        "this" is?
24       A     I'm sorry.  What the -- what I'm looking at is
25   2375 specifically right now.  And I think the other one
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  was 2384.  That's not my handwriting.  Those are not the

2  folders that I had during the course of accumulating

3  discovery, tendering discovery, motions trial, post-

4  trial.

5       Q    Did you create folders of documents that you

6  received in preparation for the Weston prosecution?

7       A    For every prosecution.

8       Q    Okay.  And what was your practice in terms of

9  creating folders?  Did you put a certain category of

10 information together in one folder?  How did that work?

11      MR. OBERTS:  Objection, overbroad.  Go ahead.

12      A    My -- my general practice was to create, maybe

13 for lack of a better word, broad-base folders and then

14 as I get closer to trial, I would make smaller folders.

15      Q    Okay.  And having leafed through the

16 prosecution file for Demond Weston and the Xerox copies

17 of folders in that file, you didn't create any of those

18 folders?

19      A    I didn't create those.

20      MR. OBERTS:  Objection, form.  Go ahead.

21      A    I did not recognize any of the folders that

22 were inside the material that was -- that I reviewed.

23      Q    And can you say for certain one way or the

24 other if you had any of the folders that are in the

25 state's attorney file for the prosecution of Demond

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    Weston at the time of Demond Weston's criminal trial?

2            MR. OBERTS:  Objection, vague.

3        A    Well, I think all the reports that I reviewed

4    were from the Cook County State's Attorney's Office, and

5    I was the one who accumulated all those documents for

6    discovery and for trial.  So I had all those documents,

7    just not in the folders or the way they've written the

8    folders, written titles for folders.

9        Q    Got it.  So we looked at Exhibit 1, which was

10   the Motion for Discovery.  Can you pull that back up?

11       A    I have it.

12       Q    And that was for the John Walker prosecution.

13   Do you see that at the top?

14       A    I do.

15       Q    Do you recall if he received a similar motion

16   in the Demond Weston prosecution?

17       A    Yes.

18       Q    Did you receive one?

19       A    Yes.

20       Q    And did you answer the Motion for Discovery

21   that you received for the Demond Weston prosecution?

22       A    Yes.

23            MS. HAMILTON:  Okay, let's look at the answer

24       and mark it as Exhibit 3.  It's called Answer to

25       Discovery in People v. Jerrod Smith, John Walker,
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 29 of 89 PageID #:6096
The Deposition of JOSH BERNARD MURRAY, taken on April 29, 2023

46

 1      and Demond Weston.

 2             (EXHIBIT 3 MARKED FOR IDENTIFICATION)

 3    BY MS. HAMILTON:

 4        Q    Do you have that in front of you?

 5        A    I'm sorry, what's it titled?

 6        Q    It's Answer to Discovery, and the caption is

 7    People v. Jerrod Smith, John Walker, and Demond Weston.

 8        A    I have it.

 9             MR. OBERTS:  Is that 3302, Danielle, first

10      page?

11             MS. HAMILTON:  Yeah, the Bates is 3302 through

12    3307.

13    BY MS. HAMILTON:

14        Q    And if you could just look through it, leaf

15    through it and let me know when you're finished?

16        A    I'm looking at it.

17        Q    Okay, so this is a document that you created,

18    correct?

19        A    Yes.

20        Q    And let's go to number 12 in this document,

21    which is on page Bates stamped CCSAO_3306.

22        A    I'm sorry, I -- I missed the beginning of your

23    question.

24        Q    Oh, I just wanted you to turn to the paragraph

25    number 12 and it is on the page Bates stamped



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 30 of 89 PageID #:6097
The Deposition of DASH BERNARD MURRAY, taken on April 13, 2023

47

CCSAO_3306.

     A     Okay, I'm looking at it.

     Q     And you're looking at it.  Okay.  Number 12,
and the answer to Discovery number 12 says that, "Any
identification confrontations involved in this cause are
contained in the police reports tendered to the defense
in open court."  Do you see that?

     A     Yes, I do see that.

     Q     Okay.

          MR. OBERTS:  Just --

     Q     And --

          MR. OBERTS:  -- just object to the extent that
     that's not a complete recitation of the number 12
     file.

          MS. HAMILTON:  Right.
BY MS. HAMILTON:

     Q     And if it was true that any identification
confrontations involved in this case you tendered to the
defense in open court?  That correct?

     A     As -- yes, as part of the police reports.  Yes,
absolutely.

     Q     Okay.  And then number 12 also says that you
would make any photographs from photographic
identifications or lineup photographs available for
inspection?  Do you see that --

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1      A    I do.

 2      Q    -- in the rest of number 12?

 3      A    I see it.

 4      Q    And did you make those photographs available

 5   for inspection?

 6      A    Yes.

 7      Q    All right.  And the number 16 on the next

 8   page, 3307, reads, "The People are unaware of any

 9   evidence or witnesses which may be favorable to the

10   defense in this cause."  Do you see that?

11      A    I do.

12      Q    And that was a true statement, that when you

13   answered this discovery you were not aware of any

14   evidence or witnesses which may be favorable to the

15   defense in this cause?

16      A    Right.

17      Q    Okay.  Do you know what a street file is?

18      A    I'm aware of the term, yes.

19      Q    Okay.  And what does that term mean to you?

20      A    It's a term that usually refers to general

21   progress reports, but there are different names for what

22   that means.  Running file, street file, area file, GPRs

23   are different titles for it.  It's investigative

24   material that's created during the course of the

25   investigation.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     appreciate that.

2         COURT REPORTER:  Here you go.

3          (REPORTER PLAYS BACK REQUESTED QUESTION)

4         MR. NOLAND:  I will add to the objections to

5     this line of questions, of form and foundation.

6 BY MS. HAMILTON:

7     **Q    You can answer.**

8     A    As I've explained earlier in the deposition, I

9 turned over everything I received, and this would be in

10 response to a discovery motion, and possibly as regard

11 to a Brady motion.

12     **Q    Okay.  And I'll represent to you that this was**

13 **produced to us as part of the CCSAO file.  It has a**

14 **CCSAO Bates stamp.  Do you know when these notes were**

15 **added to the CCSAO file?**

16     A    The -- I don't know specifically when they

17 were added to the state's attorney file, but it would've

18 added pursuant to my subpoenas.  The date is June 4th?

19 Yes, June 4th of 1990, so I would've received it in

20 discovery from the Chicago Police Department sometime in

21 June or July.

22     **Q    Are you guessing, you know, based on the date**

23 **listed here, that you would've received it in June or**

24 **July, or do you know for certain that you would've**

25 **received it in June or July?**

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 33 of 89 PageID #:6100
The Deposition of RON BERNARD MURRAY, taken on April 13, 2023

71

```
 1              MR. BAZAREK:  Objection, asked and answered.
 2        Q    You can answer.
 3        A    I did receive these documents pursuant to
 4   subpoena.  The -- obviously, I could not get them before
 5   June 4th of 1990.  My subpoenas were going out during
 6   that time period.
 7        Q    What on this document reveals to you that you
 8   received this document, when you received this document?
 9              MR. OBERTS:  Objection, form and vague, and
10       compound, perhaps.  Do you understand the question?
11   BY MS. HAMILTON:
12        Q    You can answer.
13        A    I -- the Cook County State's Attorney's file
14   was created by me in response to the subpoenas that I
15   sent out, and the subpoenas, as you -- as you saw
16   before, go to all different parts of the Chicago Police
17   Department.  So I don't know the exact date I received
18   these documents, but they would've been early on after I
19   sent my subpoenas out.
20        Q    Right, and I guess I'm asking -- well, I am
21   asking, how do you know when you received this document?
22              MR. OBERTS:  And this document's Exhibit 5,
23       correct?
24              MS. HAMILTON:  Yes, Exhibit 5.
25        A    I was aware --
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 34 of 89 PageID #:6101
The Deposition of BERNARD MURRAY, taken on April 6, 2023

92

1    Q    Okay.  All right.  Did you withhold any

2    exculpatory information from the defense in the

3    Demond Weston prosecution?

4    A    I did not.

5    Q    Are you aware of any prosecutor in the State's

6    Attorney's Office withholding exculpatory evidence from

7    Mr. Weston and his criminal defense attorneys in the

8    Weston prosecution?

9    A    I'm not aware of anybody withholding

10   exculpatory material from Mr. Weston.  Any prosecutor.

11   Q    Do you have any reason to believe any

12   prosecutor in the State's Attorney's Office withheld

13   exculpatory evidence from the defense in this case?

14   A    I do not have any reason to believe that.

15       MS. HAMILTON:  Okay, I would like to take just

16   a ten-minute break, so let's come back at 3:26?

17       COURT REPORTER:  We are off the record.  The

18   time is 3:16 p.m. Central Time.

19          (OFF THE RECORD)

20       COURT REPORTER:  We are back on the record for

21   the deposition of Bernard Murray, being conducted by

22   video conference.  My name is Krystal, today's date

23   is April 6, 2023, and the time is 2:39 p.m. Central

24   Time.

25       MS. HAMILTON:  I think it's 3:29 Central Time.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

# Exhibit 66

300

A/3

(3-81) Form Crim. Div. No. 66

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS

JERROD SMITH

No. ........ 90-16376

## SUBPOENA · SUBPOENA DUCES TECUM

The People of the State of Illinois to all Peace Officers in the State · GREETING:

WE COMMAND THAT YOU SUMMON ............ SUPERINTENDENT OF POLICE - LEROY MARTIN

CHICAGO POLICE DEPARTMENT   1121 SOUTH STATE STREET   CHICAGO, ILLINOIS   60605

to appear to testify before the Honorable ............ JUDGE FIALA

on ... SEPTEMBER 19 ............ 19 90 in Room ........ 303 .... Circuit Court, 26th Street and

California Avenue, Chicago, Illinois, at 9:00 A .m.

YOU ARE COMMANDED ALSO to bring the following:

ANY AND ALL POLICE REPORTS, ARREST REPORTS, RAP SHEETS, "STREET FILES", ALSO KNOWN AS OFFICE UNIT OR WORKING FILES, GENERAL PROGRESS NOTES, INVESTIGATIVE FILES, MAJOR CRIME WORKSHEET, INVENTORY SLIPS, EVIDENCE TECHNICIAN REPORTS, AND LAB REPORTS, PREPARED IN CONNECTION WITH THE ABOVE CAPTIONED CASE.  R.D. #  N-242748_____, IR#  877704_____, CB#  8575-893_____.
XEROX COPIES MAILED TO A.S.A. BERNIE MURRAY WILL SUFFICE IN LIEU OF PERSONAL APPEARANCE.

in your possession or control.  ADDITIONAL RELATED R.D.#'S:  N-242763, N-242754.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR CONTEMPT OF THIS COURT.

WITNESS.... SEPTEMBER 6 ............ 19 90

Aurelia Pucinski

Clerk of Court

Atty No.
Name           BERNIE MURRAY - ASSISTANT STATE'S ATTORNEY
Attorney for   PEOPLE OF THE STATE OF ILLINOIS
Address        2650 S. CALIFORNIA  ROOM 13D24
City           CHICAGO, ILLINOIS   60608
Telephone      (312) 890-2860

DIRECT INQUIRIES TO:   AURELIA PUCINSKI
                       Clerk of the Circuit Court
                       Criminal Division
                       2650 South California, Chicago, Illinois 60608

NON-APPLICABLE · Strike out Title which does not apply · Subpoena or Subpoena Duces Tecum.

NOT VALID FOR SERVICE ON NEWS MEDIA WITHOUT ORDER OF COURT

(OVER)

# Exhibit 67

```
STATE OF ILLINOIS      )
                       )SS
COUNTY OF COOK         )
```

**FILED**

SEP 4 1990

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT,
CRIMINAL DIVISION

IN THE CIRCUIT OF COOK COUNTY
CRIMINAL DIVISION

```
PEOPLE OF THE STATE OF ILLINOIS    )
                                   )
              -vs-                 )    No. 90-103840
                                   )
JOHN WALKER                        )
                                   )
```

## MOTION FOR DISCOVERY

Now comes the defendant, JOHN WALKER, by his attorney, RANDOLPH N. STONE, Public Defender of Cook County, through JANICE McGAUGHEY, Assistant Public Defender, and moves this Honorable Court for an order to be entered upon the State's Attorney to disclose and produce certain evidence which is essential and material to the preparation of the defense.

The defendant requests that such disclosures and production include, but not limited to, the following:

1. A Bill of Particulars containing:

    a) The exact time and date of the occurrence;

    b) The exact street address and any physical description of the location of the occurrences.

2. A List of Witnesses of persons whom the prosecution may or may not call as witnesses and their addresses, including production of the following:

    a) Any written or recorded statements by these witnesses, including those written or recorded statements of police officers;

    b) Any memoranda reporting or summarizing oral statements by such witnesses.

-3-

3.     A List of Witnesses that the State may or may not call who were occurrence witnesses at the scene of the allege offense of who were present at the time of the arrest of defendant, together with their last known addresses and telephone numbers.

4.     Any written or recorded statement or statements and the substance of any oral statements made by the accused or co-defendant or co-indictee, and include:

      a)     A list of witnesses to the making and acknowledgement of such statements;

      b)     The time, place and the date of the making of such statements;

      c)     Any written or recorded memoranda containing the substance of oral statements.

5.     Any transcript of the Grand Jury Minutes containing testimony of the accused and testimony before the Grand Jury of those witnesses who may be called to testify at trial.  This is to include any transcription made of witnesses' testimony that may be favorable to the defense.

6.     A list of all physical property that the State intends to use at the time of trial, including:

      a)     a list of all physical property in the possession of law enforcement officials;

      b)     date and time the property was acquired;

      c)     location from which property was acquired;

      d)     what person or persons first took the property into their possession;

      e)     reports made by law enforcement authorities pertaining to this property, including scientific reports, etc.;

      f)     that such property be made available to the defense for inspection before trial.

— 4 —

**Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002119**

7. Any reports or statement of experts made in connection with the particular case, including the results of physical or mental examinations and/or scientific tests, experiments and comparisons.

8. Any books, papers, documents, photographs and tangible objects which the prosecution intends to use in the hearing or trial and/or which were obtained from or belong to the accused or co-defendants.

9. Prior criminal records of State's witnesses to be used for impeachment.

10. It is further requested that the prosecution disclose whether there is pending against any witness listed in paragraph (2) supra, any criminal or civil action involving the People of the State of Illinois or any such action pending during the pendency of the prosecution of the accused, and if so, full disclosure as to the nature and outcome of such legal action or actions.

11. Whether the prosecution intends to use certified copies of convictions of the accused for purposes of impeachment during trial and the time and jurisdiction of such convictions.

12. That the prosecution disclose whether it will rely on prior acts or convictions of a similar nature for proof of knowledge, intent or motive.

13. That the State provide defense counsel with the names and addresses of the witnesses they intend to call at the time of trial for identification of the defendant as the perpetrator of the crime including:

-5-

    a)    time, date and place of identification;

    b)    if photographic identification was used, production of any photo used, whether of defendant or of other person;

    c)    all persons present at such viewing;

    d)    any pictures taken of line-up, etc.;

    e)    names and addresses of any individuals who confronted accused and made no identification or identified him for other crimes.

14. That the prosecution inform counsel for the accused as to whether any person has identified anyone other than the accused as the perpetrator or participant in the offense charged.

15. That the prosecution inform counsel for the accused as to whether any person has identified the photograph of anyone other than the accused as the perpetrator or participant in the offense charged.

16. To supply any report and results of any and all scientific tests, experiments and examinations made by experts or others and the names of such persons who conducted the tests, (including such tests as ballistics, fingerprints, blood, semen and other stains) pertinent to this case.

17. That the prosecution shall inform defense counsel of any electronic surveillance (including wire-tapping) or conversations to which the accused was a party, of his premises or that the prosecution intends to use for prosecution of a conspiracy.

18. That the prosecution inform defense counsel whether any evidence was acquired as a result of the execution of any legal process. If so, a copy of the process to be supplied to the defense for purposes of inspection.

— 6 —

19. That the prosecution disclose to the defense the names and addresses of any witnesses who may be or would be favorable to the defense. These witnesses to be clearly and separately identified on the List of Witnesses. The same disclosure is requested of any physical evidence of scientific evidence that might be or would be favorable to the defense. Any and all material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefore.

20. In the event an anonymous informant is utilized in any fashion, that the Court compel production of the informant in camera for purposes of determining compliance with fundamental and procedural due process of any prior determination of probable cause by examination of said informant.

21. To provide to defendant not less than seven (7) days before the date set for the hearing or trial, or at such other time as the Court may direct, the names and addresses of witnesses the State intends to call in rebuttal, together with the information required to be disclosed in connection with other witnesses, and a specific statement as to the substance of the testimony such witnesses will give at the trial of the cause.

22. That pursuant to Supreme Court Rule 415(b), an order be entered upon the People to, from time to time, make such amendments to their answer as may be required by new or modified information in their possession, knowledge or control.

ACCORDINGLY, defendant requests this Honorable Court pursuant to Ill. Supreme Court Rule 412 and the Constitution of the United

-7-

Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002122

States Amendments Six and Fourteen and the Constitution of Illinois, Article 1, section 8 to enter an order requiring the prosecution to fulfill the aforesaid requests at the earliest time possible.

Respectfully submitted,

RANDOLPH N. STONE
Public Defender of Cook County

BY: JANICE McGAUGHEY
Assistant Public Defender 91580

-8-

Weston, Demond v. City of Chicago, et al. - 20 C 06189, CCSAO_002123

# Exhibit 68

IN
1705

4 ~~MORNING~~ 90
JUN

**POLYGRAPH CASE REVIEW**

CRIME LABORATORY DIVISION
CHICAGO POLICE DEPARTMENT

OUT
1820
4 JUN90

| OFFENSE | | | | | RD NO. | | |
|---|---|---|---|---|---|---|---|
| Homicide / Murder | | (0110) | | | N 242 748 | | |

VICTIM  WATSON, Joseph

MANNER  Multiple GSW

LOCATION

DATE & TIME  29 May 90
2228

| SUBJECT | ADDRESS | SEX M F | RACE | AGE |
|---|---|---|---|---|
| 1) KAVIN, Mc Morris | | | | |
| | | | | |
| | | | | |

INVESTIGATOR  Paledino  Mosche

AGENCY  A-3VC

REMARKS

Above S' alleged to be
involved in Shooting

Results: Deception Indicated
S' stated Farmer
Dell told him
he & six others involved
in shooting — Farmer Dell
said he shoot one in the
head.

# Exhibit 69

**Deposition of William Moser**
**Taken:  January 9, 2023**
**Role:  Defendant**

LOUISVILLE    LEXINGTON    LONDON    FLORENCE    CINCINNATI    INDIANAPOLIS    ORLANDO    JACKSONVILLE    TAMPA



# KENTUCKIANA
## COURT REPORTERS

**CASE NO. 1:20-cv-06189**

**DEMOND WESTON**

**V.**

**CITY OF CHICAGO, ET AL.**

**DEPONENT:**

**WILLIAM MOSER**

**DATE:**

**January 09, 2023**



schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273

www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 48 of 89 PageID #:6115
The Deposition of William Moser, taken on January 06, 2023
125

1     A     So you have one that he hand-wrote that day --

2     Q     Uh-huh.

3     A     -- and one he had put in later doesn't have

4     it.

5     Q     Uh-huh.

6     A     So we're assuming this is -- this is me.

7     I don't recall this individual with that name at all.

8     Q     Okay.  But just focusing on this, Exhibit 8,

9     the handwritten polygraph case review, is this type of

10    document something that you would've received at Area

11    3?

12    A     No, I honestly don't -- this is the first time

13    I've seen one.  They normally keep these themselves.

14    These normally don't come down my file.  If they say

15    there's deception or whatever, they -- they just keep it

16    down there and then they type it up like this.

17    We seldom see these.

18    Q     Okay.

19    A     Okay?

20    Q     Got it.  All right.  You can put that to the

21    side for right now.

22    A     Okay.

23    Q     Assuming that you and Detective Paladino sent

24    Mr. McMorris to be polygraphed, the two of you would've

25    interviewed him before you sent him to be polygraphed,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 49 of 89 PageID #:6116
The Deposition of WILLIAM MOSER, taken on January 09, 2023
126

```
 1    right?

 2              MS. BITOY:  Just going to object to form.

 3         It calls for speculation.

 4         A    I don't recall.

 5         Q    Okay.  But if he was a suspect, you would've

 6    interviewed him before you sent him to the polygraph,

 7    right?

 8              MS. BITOY:  It's the same objection.  You can

 9         answer.

10         A    I -- I'm sorry, I don't recall Mr. McMorris.

11         Q    I know, but if you had a suspect, you would do

12    an interview of the suspect before you sent a suspect to

13    be polygraphed, right?

14         A    That's correct.

15         Q    Okay.  And you would document information

16    about that interview, right?

17         A    That's correct.

18         Q    And when you completed that interview, you

19    would put the notes from that interview into the running

20    file, right?

21         A    It wouldn't have been a note.  If he went to

22    the polygraph, it should have been on a report.

23         Q    Okay.  It should have been on a type --

24    written report?

25         A    Somewhere put in a report.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

# Exhibit 70

**Deposition of John Paladino**
**Taken: December 5, 2022**
**Role: Defendant**

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA



# KENTUCKIANA
## COURT REPORTERS

CASE NO. 1:20-CV-06189

DEMOND WESTON

V.

CITY OF CHICAGO, ESTATE OF MICHAEL KILL, ANTHONY MASLANKA,

WILLIAM  MOSER, JOHN PALADINO, DAN MCWEENY, ANDREW

CHRISTOPHERSON,  JEROME RUSNAK, VICTOR BRESKA,

AND  UNKNOWN EMPLOYEES OF THE CITY OF  CHICAGO

DEPONENT:

JOHN PALADINO

DATE:

DECEMBER 5, 2022



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

1    recollection of?

2         A    I have an independent recollection.  There was

3    a retaliation shooting by the Gangster Disciples

4    Wrecking Crew against the Vice Lords in the Englewood

5    area, and we responded to a shooting in Englewood.

6         Q    And what memory do you have of working on that

7    investigation?

8         A    Very limited.  I recall -- I can't recall

9    exactly reviewing the reports to people I interviewed on

10   the scene.  Basically, that's about it.

11        Q    Do you recall being on the scene?

12        A    I was there.  Personally recall?  No.

13        Q    Yes.  Okay.  Is there any action you took in

14   this investigation that you recall, not relying on the

15   reports, but that you yourself have a memory of doing?

16        A    No.

17        Q    When you were employed at Area 3, you had the

18   option of sending a suspect to be polygraphed, correct?

19        A    Upon advice of Counsel, I respectfully decline

20   to answer this question and invoke my constitutional

21   rights and privileges against self-incrimination as

22   guaranteed by the Fifth Amendment.

23        Q    You're invoking your Fifth Amendment right in

24   response to that question because you believe answering

25   whether you had the option to send someone -- send a

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 53 of 89 PageID #:6120
The Deposition of JOHN PALADINO, taken on December 5, 2022
114

```
 1        time is 12:28 p.m.
 2              (OFF THE RECORD)
 3              VIDEOGRAPHER:  We are now on record for the
 4        deposition of John Paladino.  Today's date is
 5        December 5, 2022, and the time is 1:27 p.m.
 6  BY MS. KLEINHAUS:
 7        Q    Sir, were you involved in an investigation
 8  involving suspect Harold Hill?
 9        A    Upon advice of Counsel, I respectfully decline
10  to answer this question and invoke my constitutional
11  rights and privileges against self-incrimination as
12  guaranteed by the Fifth Amendment.
13        Q    And you're working your Fifth Amendment right
14  in response to that question because you have a
15  reasonable belief that answering that question could
16  subject you to criminal liability, correct?
17        A    On advice of Counsel, I respectfully decline
18  to answer this question and invoke my constitutional
19  rights and privileges against self-incrimination as
20  guaranteed by the Fifth Amendment.
21        Q    What did you do differently in the
22  investigation of the May 29th shootings than what you
23  did in the Harold Hill matter?
24              MR. BAZAREK:  Object to the form of the
25        question, foundation, compound.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A    The question, I don't know a Harold Hill.  I
 2   don't recall Harold Hill and I don't know what I could
 3   have done differently.
 4        Q    Okay.  And were you involved in a case, an
 5   investigation, involving suspect Madison Hobley?
 6        A    Upon advice of Counsel, I respectfully decline
 7   to answer this question and invoke my constitutional
 8   rights and privileges against self-incrimination as
 9   guaranteed -- as guaranteed by the Fifth Amendment.
10        Q    And you're invoking your Fifth Amendment right
11   as -- with regards to Mr. Hobley because you have a
12   reasonable belief that answering my question could
13   subject you to criminal liability, correct?
14        A    Upon advice of Counsel, I respectfully decline
15   to answer this question and invoke my constitutional
16   rights and privileges against self-incrimination as
17   guaranteed by the Fifth Amendment.
18        Q    What did you do differently in your
19   investigation of the May 29th shooting than what you did
20   in the investigation of Mr. Hobley?
21        MR. BAZAREK:  Object to the form of the
22   question, foundation, compound.  That's the
23   objection.
24        A    On advice of Counsel, I respectfully decline
25   to answer this question and invoke my constitutional
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 55 of 89 PageID #:6122
The Deposition of JOHN ALADINO, taken on December 5, 2022

116

```
 1  rights and privileges against self-incrimination as
 2  guaranteed by the Fifth Amendment.
 3       Q    And you're invoking your Fifth Amendment right
 4  in response to that question because you have a
 5  reasonable belief that answering that question could
 6  subject you to criminal liability?
 7       A    On advice of Counsel, I respectfully decline
 8  to answer this question and invoke my constitutional
 9  rights and privileges against self-incrimination as
10  guaranteed by the Fifth Amendment.
11       Q    Sir, you were involved in an investigation and
12  interrogation involving Travis Richardson, correct?
13       A    Upon advice of Counsel, I respectfully decline
14  to answer this question and invoke my constitutional
15  rights and privileges against self-incrimination as
16  guaranteed by the Fifth Amendment.
17       Q    You're invoking your Fifth Amendment right in
18  response to that question because you have a reasonable
19  belief with answering that question could subject you to
20  criminal liability?
21       A    On advice of Counsel, I respectfully decline
22  to answer this question and invoke my constitutional
23  rights and privileges against self-incrimination as
24  guaranteed by the Fifth Amendment.
25       Q    What did you do differently in the
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 56 of 89 PageID #:6123
The Deposition of JOHN FLADING, taken on December 15, 2022
117

```
1   investigation of the May 29, 1990 shootings than what
2   you did in the Travis Richardson investigation?
3           MR. BAZAREK:  Object to the form of the
4       question, foundation, compound, vague, ambiguous.
5       Go ahead.
6       A    Upon advice of Counsel, I respectfully decline
7   to answer this question and invoke my constitutional
8   rights and privileges against self-incrimination as
9   guaranteed by the Fifth Amendment.
10      Q    And you're refusing to answer that question
11  because you believe answering it could subject you to
12  criminal liability?
13      A    On advice of Counsel, I respectfully decline
14  to answer this question and invoke my constitutional
15  rights and privileges against self-incrimination as
16  guaranteed by the Fifth Amendment.
17      Q    Were you involved in investigation including
18  suspect Eric Johnson?
19      A    Upon advice of Counsel, I respectfully decline
20  to answer this question and invoke my constitutional
21  rights and privileges against self-incrimination as
22  guaranteed by the Fifth Amendment.
23          MR. BAZAREK:  But if, just for reference, is
24      Johnson a co-offender with Gibson?
25          MS. KLEINHAUS:  I don't know.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 57 of 89 PageID #:6124
The Deposition of JOHN PLADINO, taken on December 13, 2022
118

1      MR. BAZAREK:  All right.  Give me a second,

2  please.  Let me -- hold on one second.

3      MS. KLEINHAUS:  It doesn't matter.

4      MR. BAZAREK:  Well, I just want to make sure

5  the witness understands the question so just give me

6  a moment.

7      MS. KLEINHAUS:  Okay.  Well, if I want to

8  include those co-defendants in my question, I'll

9  include that, but I don't.

10     MR. BAZAREK:  Okay.

11     MS. KLEINHAUS:  So let's move on.

12     MR. BAZAREK:  No, I want to -- hold on a

13  minute.  I'm going to take a break for a minute.

14     MS. KLEINHAUS:  Okay.  Then you can do that

15  outside the presence of the witness.  You don't need

16  to tell your client how to answer the question.

17     MR. BAZAREK:  So I take offense at that

18  assertion.  I'm not.  I'm just seeking

19  clarification. You refused to answer whether or not

20  Mr. -- I don't even know who Mr. Johnson is.  You

21  could be -- it could be Santa Claus.  You're just

22  making some stuff up.

23     MS. KLEINHAUS:  That's fine.

24     MR. BAZAREK:  You have to have a good faith

25  basis for asking a question.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 58 of 89 PageID #:6125
The Deposition of JOHN PALADINO, taken on December 05, 2022

119

```
1          MS. KLEINHAUS:  I do.

2          MR. BAZAREK:  You do?

3          MS. KLEINHAUS:  I do.

4          MR. BAZAREK:  Okay.

5          MS. KLEINHAUS:  And I don't have to prove it to

6    you, Bill, and you know that.

7          MR. BAZAREK:  Okay.  So you're representing,

8    you have a good faith basis to ask that question

9    about Eric Johnson?

10         MS. KLEINHAUS:  Yes, I do.

11         MR. BAZAREK:  Just bear -- let me take a break.

12         MS. KLEINHAUS:  Okay.  Take a break.

13         VIDEOGRAPHER:  We are off the record.  The time

14   is 1:32 p.m.

15            (OFF THE RECORD)

16         VIDEOGRAPHER:  We are back on the record for

17   the deposition of John Paladino.  Today's date is 12

18   -- December 5, 2022, and the time is 1:33 p.m.

19         MR. BAZAREK:  And I'm going to make a record

20   that Keith Johnson, aka Keith Smith, aka Eric

21   Johnson, is a co-defendant of Gibson in another

22   pending lawsuit filed in the District Court.  And my

23   client is not taking the Fifth as to any questions

24   about Keith Johnson, Keith Smith, or Eric Johnson.

25   But he's not going to answer questions about the
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 59 of 89 PageID #:6126
The Deposition of JOHN FLADINO, taken on December 19, 2022

120

```
 1      Gibson case at this deposition.
 2          MS. KLEINHAUS:  Okay.  You don't have to imply
 3      that I don't have a good faith basis.  You just
 4      didn't know the guy's other name, so relax.
 5          MR. BAZAREK:  I'm not saying that.  I just -- I
 6      wanted to make sure who we were talking about.
 7      That's the problem with these types of, you know,
 8      you're just asking them names without showing a
 9      piece of paper.  But anyway, I'm not going to -- I'm
10      not arguing with you.  I can ask questions too at
11      the end of the dep.
12          MS. KLEINHAUS:  Okay.  Let's go off the record.
13      I'll get the deponent back.
14          VIDEOGRAPHER:  We are now off the record.
15           (OFF THE RECORD)
16          VIDEOGRAPHER:  Back on the record.  The time is
17      1:35 p.m.
18 BY MS. KLEINHAUS:
19      Q    Sir, what did you do differently in the
20 investigation of the May 29th shooting than what you did
21 in the investigation of Eric Johnson?
22          MR. BAZAREK:  So I'm going to instruct the
23      witness not to answer questions regarding Eric
24      Johnson as it relates to a lawsuit brought by James
25      Gibson.  So I'm going to instruct the witness not to
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 60 of 89 PageID #:6127
The Deposition of JOHN ALBINO, Taken on December 09, 2022
121

 1    answer it. He's represented by another Counsel in
 2    that proceeding.
 3          MS. KLEINHAUS:  Okay.  And do you have any
 4    legal authority for the proposition that he doesn't
 5    have to answer questions because he's being sued
 6    multiple times?
 7          MR. BAZAREK:  I'm instructing him not to answer
 8    questions about the Gibson case, yes.
 9          MS. KLEINHAUS:  Do you have any legal authority
10    for that position that he can decline to answer
11    because he is being sued multiple times?
12          MR. BAZAREK:  He's represented by other Counsel
13    in the Gibson case, not me.  That's my -- that's
14    what I'm saying.  You're asking questions of him
15    where other Counsel are representing him in that
16    matter.
17          MS. KLEINHAUS:  Okay.  I don't believe that's a
18    proper basis, but we can take it up with the judge
19    if we need to.
20          MR. BAZAREK:  And if you want to answer --
21    sorry, go ahead.
22     A    I'm represented by another Counsel in that
23    case.  My lawyer's not present here at this time, so I
24    am not going to answer that question.
25    BY MS. KLEINHAUS:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 61 of 89 PageID #:6128
The Deposition of JOHN PLADINO, taken on December 01, 2022
122

1      Q     So you're taking the advice of Mr. Bazarek not
2  to answer that question, correct, sir?
3      A     Yes.
4      Q     Okay.  And we may need to return to the judge
5  to litigate that.  Sir, were you involved in an
6  interrogation of Marcus Wiggins?
7      A     On advice of Counsel, I respectfully decline
8  to answer this question and invoke my constitutional
9  rights and privileges against self-incrimination as
10  guaranteed by the Fifth Amendment.
11     Q     And you're invoking your Fifth Amendment right
12  because you have a reasonable belief that answering that
13  question could subject you to criminal liability,
14  correct?
15     A     Upon advice of Counsel, I respectfully decline
16  to answer this question and invoke my constitutional
17  rights and privileges against self-incrimination as
18  guaranteed by the Fifth Amendment.
19     Q     Sir, what did you do differently in your
20  involvement in the investigation involving suspect
21  Marcus Wiggins than what you did in the investigation of
22  the May 29, 1990 shootings?
23         MR. BAZAREK:  Object to the form of the
24     question, foundation, vague, ambiguous, compound.
25     A     Upon advice of Counsel, I respectfully decline

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 62 of 89 PageID #:6129
The Deposition of JOHN FLADINO, taken on December 03, 2022

123

1  to answer this question and invoke my constitutional

2  rights and privileges against self-incrimination as

3  guaranteed by the Fifth Amendment.

4  **Q     Sir, you're invoking your Fifth Amendment**

5  **right in response to that question because you have a**

6  **reasonable belief that answering that question would**

7  **subject you to criminal liability, correct?**

8  A     Upon advice of Counsel, I respectfully decline

9  to answer this question and invoke my constitutional

10  rights and privileges against self-incrimination as

11  guaranteed by the Fifth Amendment.

12  **Q     Sir, have you been deposed yet in the Johnson**

13  **Gibson matter?**

14  A     Yes.

15  **Q     Did you invoke your Fifth Amendment right with**

16  **regard to your activities in that investigation?**

17  A     As far as my activities in the investigation

18  itself, no.

19  **Q     Did you invoke your Fifth Amendment right as**

20  **to your practices as a police detective?**

21  A     Yes.

22  **Q     Were you involved in the interrogation**

23  **including Jesse Clemon?**

24  A     Upon advice of Counsel, I respectfully decline

25  to answer this question and invoke my constitutional

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 63 of 89 PageID #:6130
The Deposition of JOHN ALADINO, taken on December 09, 2022
124

1  rights and privileges against self-incrimination as

2  guaranteed by the Fifth Amendment.

3      Q    You're invoking your Fifth Amendment right in

4  response to that question because you have a reasonable

5  belief to answer that question could subject you to

6  criminal liability?

7      A    Upon advice of Counsel, I respectfully decline

8  to answer this question and invoke my constitutional

9  rights and privileges against self-incrimination as

10 guaranteed by the Fifth Amendment.

11     Q    Sir, were you involved in a case involving

12 Jerry Gilespie?

13     A    Upon advice of Counsel, I respectfully decline

14 to answer this question and invoke my constitutional

15 rights and privileges against self-incrimination as

16 guaranteed by the Fifth Amendment.

17     Q    You're invoking your Fifth Amendment right

18 because you believe that by answering that question you

19 would would subject yourself to criminal liability?

20     A    Upon advice of Counsel, I respectfully decline

21 to answer this question and invoke my constitutional

22 rights and privileges against self-incrimination as

23 guaranteed by the Fifth Amendment.

24     Q    What did you do differently in your

25 investigation of the May 29, 1990 shootings than what

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 64 of 89 PageID #:6131
The Deposition of JOHN SPATINO, taken on December 04, 2022
125

1  you did in the investigation involving Jerry Gilespie?

2       MR. BAZAREK:  Object to the form of the

3    question, foundation, compound, vague, and

4    ambiguous.

5       A    Upon advice of Counsel, I respectfully decline

6  to answer this question and invoke my constitutional

7  rights and privileges against self-incrimination as

8  guaranteed by the Fifth Amendment.

9       Q    And you're invoking your Fifth Amendment right

10  in response to that question because you believe

11  answering it could subject you to criminal liability,

12  correct?

13      A    Upon advice of Counsel, I respectfully decline

14  to answer this question and invoke my constitutional

15  rights and privileges against self-incrimination as

16  guaranteed by the Fifth Amendment.

17      Q    A couple questions ago I asked you about Jesse

18  Clemon, what did you do differently in the investigation

19  of the May 29, 1990 shootings and what you did in the

20  investigation involving Jesse Clemon?

21      MR. BAZAREK:  Object to the form of the

22    question, foundation, vague, ambiguous, compound.

23      A    Upon advice of Counsel, I respectfully decline

24  to answer this question and invoke my constitutional

25  rights and privileges against self-incrimination as

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 65 of 89 PageID #:6132
The Deposition of JOHN ALADINO, taken on December 05, 2022
126

1  guaranteed by the Fifth Amendment.

2      Q    **And you're invoking your Fifth Amendment right**

3  **in response to my question because you believe answering**

4  **it truthfully could subject you to criminal liability,**

5  **correct?**

6      A    Upon advice of Counsel, I respectfully decline

7  to answer this question and invoke my constitutional

8  rights and privileges against self-incrimination as

9  guaranteed by the Fifth Amendment.

10      Q    **Sir, were you involved in an investigation**

11  **including Diyaz Owens?**

12      A    Upon advice of Counsel, I respectfully decline

13  to answer this question and invoke my constitutional

14  rights and privileges against self-incrimination as

15  guaranteed by the Fifth Amendment.

16      Q    **And you're invoking your Fifth Amendment right**

17  **with regarding Diaz Owens because you have a reasonable**

18  **belief that answering truthfully could cause criminal**

19  **liability for you, correct?**

20      A    Upon advice of Counsel, I respectfully decline

21  to answer this question and invoke my constitutional

22  rights and privileges against self-incrimination as

23  guaranteed by the Fifth Amendment.

24      Q    **Have you ever in your career as a police**

25  **detective told a witness who to select from a line-up?**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 66 of 89 PageID #:6133
The Deposition of JOHN HALORAN, taken on December 09, 2022

127

 1       A     Upon advice of Counsel, I respectfully decline

 2  to answer this question and invoke my constitutional

 3  rights and privileges against self-incrimination as

 4  guaranteed by the Fifth Amendment.

 5       **Q     And you're invoking your Fifth Amendment right**

 6  **in response to that question because you have a**

 7  **reasonable belief that if you answered that question**

 8  **truthfully you could subject yourself to criminal**

 9  **liability, correct?**

10       A     Upon advice of Counsel, I respectfully decline

11  to answer this question and invoke my constitutional

12  rights and privileges against self-incrimination as

13  guaranteed by the Fifth Amendment.

14       **Q     In your career as a police detective with the**

15  **Chicago Police Department, did you ever fabricate**

16  **evidence?**

17       A     Upon advice of Counsel, I respectfully decline

18  to answer this question and invoke my constitutional

19  rights and privileges against self-incrimination as

20  guaranteed by the Fifth Amendment.

21       **Q     You're invoking your Fifth Amendment right**

22  **because you believe answering that question truthfully**

23  **could subject you to criminal liability, correct?**

24       A     Upon advice of Counsel, I respectfully decline

25  to answer this question and invoke my constitutional

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 67 of 89 PageID #:6134
The Deposition of JOHN HALADO, taken on December 05, 2022
128

1  rights and privileges against self-incrimination as

2  guaranteed by the Fifth Amendment.

3      Q     In the course of your career as a Chicago

4  Police Detective, did you ever feed facts to suspects?

5      A     Upon advice of Counsel, I respectfully decline

6  to answer this question and invoke my constitutional

7  rights and privileges against self-incrimination as

8  guaranteed by the Fifth Amendment.

9      Q     You're invoking your Fifth Amendment right

10 because you have reasonable belief that if you answered

11 that question truthfully you would be subjected to

12 criminal liability, correct?

13     A     Upon advice of Counsel, I respectfully decline

14 to answer this question and invoke my constitutional

15 rights and privileges against self-incrimination as

16 guaranteed by the Fifth Amendment.

17     Q     In your career as a police detective, did you

18 ever use physical force coerce a statement from a

19 suspect?

20     A     Upon advice of Counsel, I respectfully decline

21 to answer this question and invoke my constitutional

22 rights and privileges against self-incrimination as

23 guaranteed by the Fifth Amendment.

24     Q     And you're invoking your Fifth Amendment right

25 in response to that question because you have a

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  reasonable belief that answering it could subject you to

2  criminal liability, correct?

3      A    Upon advice of Counsel, I respectfully decline

4  to answer this question and invoke my constitutional

5  rights and privileges against self-incrimination as

6  guaranteed by the Fifth Amendment.

7      Q    In your career as a police detective, did you

8  ever fail to make a police reporter write down the

9  information that you gathered?

10     A    Upon advice of Counsel, I respectfully decline

11 to answer this question and invoke my constitutional

12 rights and privileges against self-incrimination as

13 guaranteed by the Fifth Amendment.

14     Q    You're invoke your Fifth Amendment right

15 because you have a reasonable belief that answering that

16 question could subject you to criminal liability,

17 correct?

18     A    Upon advice of Counsel, I respectfully decline

19 to answer this question and invoke my constitutional

20 rights and privileges against self-incrimination as

21 guaranteed by the Fifth Amendment.

22     Q    In your career as a police detective, did you

23 ever fail to turn over an exculpatory report to a

24 prosecutor?

25     A    Upon advice of Counsel, I respectfully decline

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 69 of 89 PageID #:6136
The Deposition of JOHN SPADAFINO, taken on December 09, 2022
130

1    to answer this question and invoke my constitutional

2    rights and privileges against self-incrimination as

3    guaranteed by the Fifth Amendment.

4         **Q    You're invoking your Fifth Amendment right in**

5    **response to that question because you reasonably believe**

6    **that answering that question could subject you to**

7    **criminal liability?**

8         A    Upon advice of Counsel, I respectfully decline

9    to answer this question and invoke my constitutional

10   rights and privileges against self-incrimination as

11   guaranteed by the Fifth Amendment.

12        **Q    In your career as a police detective, did you**

13   **ever place exculpatory evidence in a street file?**

14        A    Upon advice of Counsel, I respectfully decline

15   to answer this question and invoke my constitutional

16   rights and privileges against self-incrimination as

17   guaranteed by the Fifth Amendment.

18        **Q    And you're invoking your Fifth Amendment right**

19   **because you reasonably believe that answering that**

20   **question truthfully could subject you to criminal**

21   **liability?**

22        A    Upon advice of Counsel, I respectfully decline

23   to answer this question and invoke my constitutional

24   rights and privileges against self-incrimination as

25   guaranteed by the Fifth Amendment.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 79 of 89 PageID #:6137
The Deposition of John Flardng, taken on December 09, 2022
134

```
 1   not sure.
 2       Q    Did you do anything differently in your
 3   interview with Brian Hampton than what you did with
 4   Marcus Wiggins?
 5            MR. BAZAREK:  I'm going to object to the form
 6       of that question because it presently -- that
 7       assumes the fact not in evidence and also vague,
 8       ambiguous, compound, as well as form of the
 9       question.
10       A    Upon advice of Counsel, I respectfully decline
11   to answer this question and invoke my constitutional
12   rights and privileges against self-incrimination, as
13   guaranteed by the Fifth Amendment.
14   BY MS. KLEINHAUS:
15       Q    You're invoking your Fifth Amendment right in
16   response to that question, because you reasonably
17   believe if you answered it truthfully, it would -- you
18   could subject yourself to criminal liability, correct?
19       A    Upon advice of Counsel, I respectfully decline
20   to answer this question and invoke my constitutional
21   rights and privileges against self-incrimination, as
22   guaranteed by the Fifth Amendment.
23       Q    We can put that exhibit to the side now.  I'm
24   going to show you what we'll mark as Exhibit 7.  For the
25   record, Exhibit 7 is marked City DW 40 and 43, but it's
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 71 of 89 PageID #:6138
The Deposition of JOHN FLADING, taken on December 01, 2022
135

```
 1   two sides of the same report.  Does reading this report

 2   refresh your recollection at all about your involvement

 3   in the investigation of the May 29, 1990 shootings?

 4              (EXHIBIT 7 MARKED FOR IDENTIFICATION)

 5        A    According to this report, I conducted a line-

 6   up on May 30th.

 7        Q    Do you have any independent recollection, like

 8   your own memory, of conducting this line-up?

 9        A    No.

10        Q    Do you know what your role was in conducting

11   this line-up?

12        A    No.

13        Q    What instructions would you typically give a

14   witness before viewing a line-up?

15        A    Upon advice of Counsel, I respectfully decline

16   to answer this question and invoke my constitutional

17   rights and privileges against self-incrimination, as

18   guaranteed by the Fifth Amendment.

19        Q    You're invoking your Fifth Amendment right

20   because you reasonably believe that answering that

21   question would subject you to criminal liability?

22        A    Upon advice of Counsel, I respectfully decline

23   to answer this question and invoke my constitutional

24   rights and privileges against self-incrimination, as

25   guaranteed by the Fifth Amendment.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 72 of 89 PageID #:6139
The Deposition of JOHN YUCAITIS, taken on December 03, 2022

136

```
 1        Q     Put Exhibit 7 to the side.  When you were
 2  working the third shift in Area 3 Violent Crimes, other
 3  detectives -- I'm sorry, strike that, please.  When you
 4  were working on the May 29, 1990 shooting investigation
 5  on the third shift, there were other detectives working
 6  on it on the other shifts, right?
 7        A     I believe so.
 8        Q     And how would you get information about what
 9  work those detectives had done on this investigation
10  during their shifts?
11        A     Usually by reading reports they left, or by
12  talking to them.
13        Q     And would you leave reports for them on what
14  you had done on your investigations?
15        A     Usually, regarding this investigation, we'd
16  leave reports or personally speak to them.
17        Q     Over the course of your career as a Chicago
18  police detective, how many line-ups do you think that
19  you conducted?
20        A     Upon advice of Counsel, I respectfully decline
21  to answer this question and invoke my constitutional
22  rights and privileges against self-incrimination, as
23  guaranteed by the Fifth Amendment.
24        Q     And you're invoking your Fifth Amendment
25  rights in response to that question, because you believe
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 73 of 89 PageID #:6140
The Deposition of JOHN FLADING, taken on December 03, 2022
137

1  answering it could subject you to criminal liability?

2      A    Upon advice of Counsel, I respectfully decline

3  to answer this question and invoke my constitutional

4  rights and privileges against self-incrimination, as

5  guaranteed by the Fifth Amendment.

6      Q    Were you ever trained not to put more than one

7  suspect in a line-up?

8      A    Upon advice of Counsel, I respectfully decline

9  to answer this question and invoke my constitutional

10  rights and privileges against self-incrimination, as

11  guaranteed by the Fifth Amendment.

12      Q    You're invoking your Fifth Amendment rights in

13  response to that question, because you believe answering

14  that question truthfully could subject you to criminal

15  liability, correct?

16      A    Upon advice of Counsel, I respectfully decline

17  to answer this question and invoke my constitutional

18  rights and privileges against self-incrimination, as

19  guaranteed by the Fifth Amendment.

20      Q    Okay.  I'm going to show you what we'll mark

21  as Exhibit 8.  Is it your handwriting on Exhibit 8?

22             (EXHIBIT 8 MARKED FOR IDENTIFICATION)

23      A    Looks like -- yes, could be.

24      Q    And can you tell what you -- where you -- or

25  I'm sorry, strike that, please.  Based on your practice

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 74 of 89 PageID #:6141
The Deposition of JOHN HALORAN, Taken on December 04, 2022
146

1    A    Well, I would have had some type of GPR report
2  if I'd interviewed Shank.
3    **Q    And why would you have some type of interview**
4  **report or GPR?**
5    A    I -- if I interviewed him, I believe I would
6  have had some type of GPR for that interview.
7    **Q    And why do you believe that?**
8    A    Because if that's -- it's part of the -- this
9  investigation.
10   **Q    What do you mean as part of this**
11 **investigation?**
12   A    If Shank was part of this investigation and I
13 interviewed him, I should have had a GPR or a report
14 about him.
15   **Q    Did you ever, in the course of your career as**
16 **a Chicago detective, interview a suspect and not create**
17 **a GPR?**
18   A    Upon advice of Counsel, I respectfully decline
19 to answer this question and invoke my constitutional
20 rights and privileges against self-incrimination, as
21 guaranteed by the Fifth Amendment.
22   **Q    You're invoking your Fifth Amendment rights in**
23 **response to that question, because you believe that**
24 **answering it truthfully could subject you to criminal**
25 **liability, correct?**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A     Upon advice of Counsel, I respectfully decline
 2   to answer this question and invoke my constitutional
 3   rights and privileges against self-incrimination, as
 4   guaranteed by the Fifth Amendment.
 5        Q     Did you put information about Shank into a
 6   street file?
 7        A     I don't recall.
 8        Q     You may have, you may not have, right?
 9        A     I don't recall.
10        Q     Did you ever, in the course of your career as
11   a Chicago police detective, put information about a
12   suspect into a street file?
13        A     Upon advice of Counsel, I respectfully decline
14   to answer this question and invoke my constitutional
15   rights and privileges against self-incrimination, as
16   guaranteed by the Fifth Amendment.
17        Q     You're invoking your Fifth Amendment rights in
18   response to that question because you believe that
19   answering that question truthfully could subject you to
20   criminal liability, correct?
21        A     Upon advice of Counsel, I respectfully decline
22   to answer this question and invoke my constitutional
23   rights and privileges against self-incrimination, as
24   guaranteed by the Fifth Amendment.
25        Q     Okay.  You can put Exhibit 10 to the side. Did
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 76 of 89 PageID #:6143
The Deposition of JOHN ALLADING, taken on December 09, 2022
153

1    the procedure was, I don't recall.

2    **Q    Okay.  What about in your experience as a**

3    **police detective, do you know the procedure for sending**

4    **someone to be polygraphed?**

5    A    Upon advice of Counsel, I respectfully decline

6    to answer this question invoking my constitutional

7    rights and privileges against self-incrimination, as

8    guaranteed by the Fifth Amendment.

9    **Q    Invoking your Fifth Amendment right in**

10    **response to that question because you have a reasonable**

11    **belief that answering that question could subject you to**

12    **criminal liability?**

13    A    Upon advice of Counsel, I respectfully decline

14    to answer this question invoking my constitutional

15    rights and privileges against self-incrimination, as

16    guaranteed by the Fifth Amendment.

17    **Q    Under what circumstances would you request to**

18    **have a suspect polygraphed?**

19    A    Upon advice of Counsel, I respectfully decline

20    to answer this question invoking my constitutional

21    rights and privileges against self-incrimination, as

22    guaranteed by the Fifth Amendment.

23    **Q    And you're invoking your Fifth Amendment right**

24    **in response to that question because you have a**

25    **reasonable belief that answering that question could**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 77 of 89 PageID #:6144
The Deposition of JOHN ZALUDO, taken on December 03, 2022

154

```
 1   subject you to criminal liability?

 2        A    Upon advice of Counsel, I respectfully decline

 3   to answer this question invoking my constitutional

 4   rights and privileges against self-incrimination, as

 5   guaranteed by the Fifth Amendment.

 6        Q    You would always interview a suspect before

 7   you would send the suspect to be polygraphed, right?

 8        A    Upon advice of Counsel, I respectfully decline

 9   to answer this question invoking my constitutional

10   rights and privileges against self-incrimination, as

11   guaranteed by the Fifth Amendment.

12        Q    You're invoking your Fifth Amendment right in

13   response to that question because you have a reasonable

14   belief that, by answering that question truthfully, you

15   can be subjected to criminal liability?

16        A    Upon advice of Counsel, I respectfully decline

17   to answer this question invoking my constitutional

18   rights and privileges against self-incrimination, as

19   guaranteed by the Fifth Amendment.

20        Q    When you would interview a suspect before

21   sending the suspect to be polygraphed, you would write

22   down the information that you got from the suspect

23   during that interview, right?

24        A    Upon advice of Counsel, I respectfully decline

25   to answer this question invoking my constitutional
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 78 of 89 PageID #:6145
The Deposition of JON BURGE, Taken on December 08, 2022

155

```
 1   rights and privileges against self-incrimination, as
 2   guaranteed by the Fifth Amendment.
 3        Q    Okay.  And you're invoking your Fifth
 4   Amendment right in response to that question because you
 5   reasonably believe that, if you answer that question
 6   truthfully, you could subject yourself to criminal
 7   liability?
 8        A    Upon advice of Counsel, I respectfully decline
 9   to answer this question invoking my constitutional
10   rights and privileges against self-incrimination, as
11   guaranteed by the Fifth Amendment.
12           MR. BAZAREK:  Do you want any water?  You're
13        good?
14        Q    Okay.  I'm going to show you what will Mark as
15   Exhibit 12.  And for the record, Exhibit 12 is marked at
16   the bottom as City DW 264.  Sir, do you recognize
17   Exhibit 12 as the notes of Detective Maslanka on a
18   polygraph from 19th of June 1990?
19           (EXHIBIT 12 MARKED FOR IDENTIFICATION)
20        A    His name is on there, yes.
21        Q    Okay.  And would you expect to see notes about
22   a polygraph like this if you sent someone to be
23   polygraphed?
24        A    I don't know.
25        Q    Did you ever take notes on a polygraph like
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 79 of 89 PageID #:6146
The Deposition of JOHN HALLORAN, taken on December 09, 2022
163

1    Q    Well, it would've been your practice to have a
2  conversation with Mr. Tovar about what information you
3  had from Mr. McMorris, right?
4    A    I don't recall.  I don't recall if he just
5  looked at police reports or interviewed the person in
6  the polygraph himself.
7    Q    Okay.  In the course of your career as a
8  detective with the Chicago Police Department, did you
9  ever have conversations with the polygraph examiners
10  about what to ask a suspect?
11    A    Upon advice of Counsel, I respectfully decline
12  to answer this question invoking my constitutional
13  rights and privileges against self-incrimination, as
14  guaranteed by the Fifth Amendment.
15    Q    You're invoking your Fifth Amendment right in
16  response to that question because you believe answering
17  it truthfully could subject you to criminal liability?
18    A    Upon advice of Counsel, I respectfully decline
19  to answer this question invoking my constitutional
20  rights and privileges against self-incrimination, as
21  guaranteed by the Fifth Amendment.
22    Q    Okay.  In the course of this investigation,
23  sometimes you sent witnesses -- sometimes detectives on
24  this investigation sent witnesses to be polygraphed and
25  sometimes they sent suspects, right?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 80 of 89 PageID #:6147
The Deposition of JOHN HALORAN, taken on December 09, 2022
164

 1     A    I can't speak for other detectives but looks

 2  like this is the only person I requested to have a

 3  polygraph.

 4     **Q    And what makes you think this is the only**

 5  **person you requested?**

 6     A    Because this is the only report I see with my

 7  name in it.

 8     **Q    Okay.  And you don't know from this report**

 9  **whether this person, Kavin McMorris, was a witness or a**

10  **suspect, right?**

11     A    No, I don't.

12     **Q    And you would've interviewed Mr. McMorris**

13  **before sending him to be polygraphed, correct?**

14     A    I don't recall Kavin McMorris, so I can't say

15  if I interviewed him or not.

16     **Q    Okay.  Someone would've interviewed him before**

17  **he was sent to a polygraph, right?**

18     A    I assume.

19     **Q    Why do you assume that?**

20     A    Because he was sent to polygraph, so somebody

21  had to interview him.

22     **Q    And in keeping with your practice when you**

23  **were at Area 3, you would've put that interview report**

24  **in the street file, right?**

25     A    Upon advice of Counsel, I respectfully decline

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 81 of 89 PageID #:6148
The Deposition of JOHN PLACINO, taken on December 01, 2022
165

1  to answer this question invoking my constitutional

2  rights and privileges against self-incrimination, as

3  guaranteed by the Fifth Amendment.

4      Q    And you're invoking your Fifth Amendment right

5  in response to that question because you believe

6  answering it truthfully could cause you criminal

7  liability?

8      A    Upon advice of Counsel, I respectfully decline

9  to answer this question invoking my constitutional

10 rights and privileges against self-incrimination, as

11 guaranteed by the Fifth Amendment.

12     Q    You can put that exhibit to the side.  Okay.

13 I'll show you what we're going to mark as Exhibit 15.

14 Okay.  Have you had a chance to review Exhibit 15?

15         (EXHIBIT 15 MARKED FOR IDENTIFICATION)

16     A    Yes.

17     Q    And for the record, it's Bates labeled CCSAO

18 2394 through 2397.  Do you recognize this type of

19 report?

20     A    No.  It's the first time I've ever seen this

21 report.

22     Q    Okay.  You've never seen a polygraph case

23 review before?

24     A    No.

25     Q    Okay.  According to these notes, subject Kavin

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 82 of 89 PageID #:6149
The Deposition of JOHN HALADO, taken on December 03, 2022
169

1      Q   Would you agree with me that the information

2  contained in this report from Mr. McMorris should have

3  been documented in some GPR or police report somewhere,

4  right?

5        MR. BAZAREK:  Objection to the form of the

6    question.  Calls for speculation.

7      A   I -- as I stated previously, I had never seen

8  this report before and I don't recall talking to the

9  polygraph operator.

10     Q   Okay.  In keeping with your practice while you

11  were at Area 3, you failed to document your interview

12  with Kavin McMorris, correct?

13     A   I don't recall interviewing Kavin McMorris.

14     Q   In keeping with your practice while you were

15  at Area 3, you fail to document your interview with

16  Kavin McMorris, correct?

17     A   I don't recall interviewing Kevin Morris

18  [sic].

19     Q   Okay.  Was it your practice, while you were a

20  detective at Area 3, to document your interviews with

21  suspects?

22     A   Upon advice of Counsel, I respectfully decline

23  to answer this question invoking my constitutional

24  rights and privileges against self-incrimination, as

25  guaranteed by the Fifth Amendment.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 83 of 89 PageID #:6150
The Deposition of JOHN FLADING, taken on December 09, 2022
170

```
 1        Q     You're invoking your Fifth Amendment right
 2   because you reasonably believe that, by answering that
 3   question, you could be subjected to criminal liability?
 4        A     Upon advice of Counsel, I respectfully --
 5   respectfully decline to answer this question invoking my
 6   constitutional rights and privileges against self-
 7   incrimination, as guaranteed by the Fifth Amendment.
 8        Q     So in this case, as in so many other cases,
 9   you failed to document your interview of the suspect?
10        MR. BAZAREK:  Object to the form of the
11     question, also argumentative.
12        A     I don't recall ever interviewing the subject.
13        Q     Right.  You don't recall it, and we don't have
14   a report to refresh your recollection because you didn't
15   document it, right?
16        MR. BAZAREK:  Objection, argumentative.  Form
17     of the question.
18        A     I did -- I don't recall ever interviewing this
19   subject.
20        Q     Okay.  You can put this exhibit to the side.
21   Can you think of any reason that you wouldn't have
22   memorialized your interview with Kavin McMorris?
23        MR. BAZAREK:  Object to the form of the
24     question.  Also calls for speculation.
25        A     I don't recall ever interviewing Kavin
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 84 of 89 PageID #:6151
The Deposition of JOHN FLADINO, taken on December 84, 2022
178

1      Q    What was it your practice to tell individuals

2  viewing a line-up to look for?

3      A    For the person they recognized.

4      Q    Did you show Ms. Coats photos of individuals

5  in the line-up before the line-up?

6      A    No.

7      Q    And why do you believe you didn't do that?

8      A    Because I -- I didn't do it.

9      Q    Well, you have no memory of anything in this

10  investigation, is that right?

11      MR. BAZAREK:  That mischaracterizes his prior

12    testimony.

13      Q    Okay.  Other than recalling that some

14  attorneys may have at one point been at a line-up, do

15  you have any recollection of anything in this

16  investigation that you did?

17      A    Nothing.

18      Q    Okay.  Why are you -- why do you say that you

19  didn't show Ms. Coat's photos before this line-up?

20      A    Because I don't recall showing her photos

21  before the line-up.

22      Q    Okay.  Was it your practice when you were a

23  Chicago police detective to show victims photos of

24  suspects who would be in the line-up before showing them

25  the line-up?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 85 of 89 PageID #:6152
The Deposition of JOHN PLADINO, Taken on December 05, 2022
179

```
 1              MR. BAZAREK:   Objection.   Foundation.
 2        A    Upon advice of Counsel, I respectfully decline
 3   to answer this question and invoke my constitution
 4   rights and privileges against self-incrimination, as
 5   guaranteed by the Fifth Amendment.
 6        Q    Okay.   And you're invoking your Fifth
 7   Amendment rights in response to that question because
 8   you reasonably believe that answering that question
 9   truthfully could result in a criminal liability for you,
10   correct?
11        A    Upon advice of Counsel, I respectfully decline
12   to answer this question and invoke my constitutional
13   rights and privileges against self-incrimination, as
14   guaranteed by the Fifth Amendment.
15        Q    You were trained that you wanted participants
16   who looked like one another to stand in a line-up,
17   right?
18        A    Upon advice of Counsel, I respectfully decline
19   to answer this question and invoke my constitutional
20   rights and privileges against self-incrimination, as
21   guaranteed by the Fifth Amendment
22        Q    And you're invoking your Fifth Amendment right
23   because you believe that answering that question
24   truthfully could make you subject to criminal liability,
25   correct?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 86 of 89 PageID #:6153
The Deposition of JOHN FLADING, taken on December 05, 2022
180

 1          A     Upon advice of Counsel, I respectfully decline
 2    to answer this question and invoke my constitutional
 3    rights and privileges against self-incrimination, as
 4    guaranteed by the Fifth Amendment.
 5          Q     **It would've been your practice to do an**
 6    **interview of Ms. Coats about what she remembered about**
 7    **the shooting before doing this line-up, right?**
 8          A     As far as this line-up, I don't recall
 9    interviewing her before.
10          Q     **It would've been your practice generally to**
11    **interview witnesses about what they knew about the crime**
12    **before having them view a line-up, right?**
13          A     Upon advice of Counsel, I respectfully decline
14    to answer this question and invoke my constitutional
15    rights and privileges against self-incrimination, as
16    guaranteed by the Fifth Amendment.
17          Q     **You're invoking your Fifth Amendment right**
18    **because you reasonably believe that, if you were to**
19    **answer that question truthfully, it could subject you to**
20    **criminal liability, correct?**
21          A     Upon advice of Counsel, I respectfully decline
22    to answer this question and invoke my constitution
23    rights and privileges against self-incrimination, as
24    guaranteed by the Fifth Amendment.
25          Q     **Okay.  You were involved in the interrogation**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 87 of 89 PageID #:6154
The Deposition of JOHN FLADING, taken on December 07, 2022
185

1    Q    Okay.  Let me ask it a different way to get it
2    clear.
3    A    Okay.
4    Q    Have you ever covered up the conduct of
5    Maslanka and Moser?
6    A    Upon advice of Counsel, I respectfully decline
7    the answer this question and invoke my constitutional
8    rights and privileges against self-incrimination, as
9    guaranteed by the Fifth Amendment.
10   Q    And you're invoking your Fifth Amendment right
11   in response to that question because you believe that
12   answering that question truthfully could lead to
13   criminal liability for you?
14   A    Upon advice of Counsel, I respectfully decline
15   to answer this question and invoke my constitutional and
16   rights and privileges against self-incrimination as
17   guaranteed by the Fifth Amendment.
18   Q    Okay.  Other than turning reports into your
19   sergeant and putting reports in street files, is there
20   any other place that you ever put any reports?
21        MR. BAZAREK:  Objection.  Foundation, form of
22    the question, and mischaracterizes prior testimony.
23   A    I don't recall putting police reports anywhere
24   else.
25   Q    Okay.  I'm going to show you what we'll mark

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1    paragraph says, "McCurine is told that Biz put the
 2    shooting on him and used Biz's car for the Wrecking Crew
 3    and he denies it."  Do you see that part?
 4        A    Yes.
 5        Q    Okay.  And that was a common tactic that you
 6    used throughout your career as a detective of telling
 7    one suspect that another suspect put the shooting on
 8    him, right?
 9        A    Upon advice of Counsel, I respectfully decline
10    to answer this question and invoke my constitutional
11    rights and privileges against self-incrimination, as
12    guaranteed by the Fifth Amendment.
13        Q    You're invoking your Fifth Amendment right in
14    response to that question because you reasonably believe
15    that answering that question truthfully could put you at
16    risk of criminal liability?
17        A    Upon advice of Counsel, I respectfully decline
18    to answer this question and invoke my constitutional
19    rights and privileges against self-incrimination, as
20    guaranteed by the Fifth Amendment.
21        Q    And it was within your practice as a detective
22    at the Chicago Police Department to lie to suspects and
23    say that someone else put the shooting on them even when
24    they didn't, right?
25        A    Upon advice of Counsel, I respectfully decline
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-06189 Document #: 327-7 Filed: 02/11/25 Page 89 of 89 PageID #:6156
The Deposition of JOHN HALLING, taken on December 09, 2022
195

1  to answer this question and invoke my constitutional

2  rights and privileges against self-incrimination, as

3  guaranteed by the Fifth Amendment.

4      **Q    You're invoking your Fifth Amendment right in**

5  **response to that question because you reasonably believe**

6  **that answering that question truthfully could subject**

7  **you to criminal liability?**

8      A    Upon advice of Counsel, I respectfully decline

9  to answer this question and invoke my constitutional

10  rights and privileges against self-incrimination, as

11  guaranteed by the Fifth Amendment.

12      **Q    If you look a little further into that**

13  **paragraph, it says, "McCurine stays with his story that**

14  **he didn't have anything to do with it but is wavering**

15  **and might admit that he drove them or was a lookout." Do**

16  **you see that part?**

17      A    Yes.

18      **Q    And in the course of your career as a**

19  **detective with the Chicago Police Department, what**

20  **tactics would you use when someone was wavering and you**

21  **were trying to get them to admit to a crime?**

22      A    Upon advice of Counsel, I respectfully decline

23  to answer this question and involve my constitutional

24  rights and privileges against self-incrimination as

25  guaranteed by the Fifth Amendment.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com