IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMOND WESTON, ) | |
| ) | |
| Plaintiff, ) | Case No. 20 C 6189 |
| ) | |
| v. ) | Judge LaShonda A. Hunt |
| ) | |
| CITY OF CHICAGO, GEORGE E. BECKER AS ) | Magistrate Judge Keri L. Holleb |
| SPECIAL REPRESENTATIVE FOR THE ) | Hotaling |
| ESTATE OF MICHAEL KILL, GERI LYNN ) | |
| YANOW AS SPECIAL REPRESENTATIVE ) | |
| FOR ANTHONY MASLANKA, WILLIAM ) | |
| MOSER, JOHN PALADINO, DANIEL ) | |
| McWEENY, ANDREW CHRISTOPHERSON, ) | |
| JEROME RUSNAK, VICTOR BRESKA, and ) | |
| UNKNOWN EMPLOYEES OF THE CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE
DEFENDANTS' PROPOSED POLICE PRACTICES EXPERT**

Defendants William Moser, Daniel McWeeny, Jerome Rusnak, Victor Breska, John Paladino, George Becker as Special Representative for the Estate of Michael Kill, Geri Lynn Yanow as Special Representative for Anthony Maslanka, and Andrew Christophersen (collectively "Defendant Officers" unless otherwise noted), by and through their undersigned counsel, hereby submit the following response to Plaintiff's Motion to Exclude Defendants' Proposed Police Practices Expert ("Pltf.'s Mot."), Dkt. 296, as follows:

**INTRODUCTION**

Plaintiff has moved to exclude Richard Rudolph, who was retained by Defendant Officers to review the investigation into the May 29, 1990 murder of Joseph Watson and the attempt murders of Deneen Coats, Ronald Nesbit, and Timothy Jones for which Plaintiff was arrested and

convicted ("Weston Investigation"). Exhibit A, April 8, 2024 Report of Richard Rudolph ("Rudolph Report"), pp. 2-3. Plaintiff argues that: (1) Mr. Rudolph's opinions are subjective and not grounded in a reliable methodology, (2) his opinions "simply recite Defendants' version of the facts," and (3) Mr. Rudolph may not speculate as to the motives or reasoning of witnesses. Pltf's. Mot., pp. 4-10. Plaintiff's arguments are without merit. As discussed below, Mr. Rudolph's opinions are reliable and proper under case law and the Federal Rules of Evidence; his citation to facts and evidence is proper in the context of his opinions; and his opinions regarding the motives or reasoning of witnesses are not speculative. Therefore, this Court should deny Plaintiff's Motion in its entirety.

## **LEGAL STANDARD**

"Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony." *United States v. Godinez*, 7 F.4th 628, 637 (7th Cit. 2021); *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Daubert* directs district courts to serve as "gatekeepers" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. For a court to consider an opinion, four factors must be evaluated: (1) if the witness is qualified to provide the opinion; (2) whether the testimony will assist the trier of fast; (3) whether the testimony is based on sufficient facts or data and reliable principles and methods; and (4) whether the opinion is based on a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013); *see also Daubert*, 509 U.S. at 589-96; *Oritz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011); *Pursley v. City of Rockford*, No. 18-cv-50040, 2024 WL 1050242, at *4 (N.D. Ill. Mar. 11, 2024) (Johnston, J.). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation

2

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013).

Rule 702 provides that an expert's opinion is only admissible when the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702(a). In other words, "the ultimate test is whether the testimony would assist the trier of fact in understanding the evidence. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). When expert testimony would be unhelpful to the jury, it can be properly excluded. *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The proponent of the expert's testimony bears the burden of demonstrating that it is more likely than not that the proffered testimony meets each of these admissibility requirements. Fed. R. Evid. 702, Advisory Committee Notes to 2023 Amendments.

## **ARGUMENT**

This Court should reject Plaintiff's arguments. First, Mr. Rudolph is extremely qualified to offer opinions on police practices based on his 30 years in law enforcement, including significant experience in homicide investigations. His opinions are based on generally accepted law enforcement standards and draw from his three decades of experience as a law enforcement officer with the New York Police Department ("NYPD"). Second, Mr. Rudolph is not simply reciting Defendant Officers' version of events, but is properly relying on evidence in the record to reach his conclusions. Finally, Mr. Rudolph's opinions about the motivations and reasoning of witnesses, in particular Dwayne Macklin, is not speculation, but based on statements Macklin made during an interview outside of this investigation with representatives of the Illinois Attorney General's Office.

3

As a practical matter, district courts apply the *Daubert* framework using a three-part analysis: first, the court determines whether the proposed witness is qualified as an expert by knowledge, skill, experience, training, or education; second, the court decides whether the reasoning or methodology underlying the expert's testimony is reliable; and third, the court must assess whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The test for reliability is necessarily flexible and courts enjoy broad discretion in making this evaluation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). That said, the admissibility inquiry "must be tied to the facts of a particular case," *Id.* at 150, and must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of as an expert in the relevant field." *Id.* at 152.

## I. Mr. Rudolph's opinions are reliable and proper under *Daubert* and Federal Rule of Evidence 702.

Mr. Rudolph's opinions are based on his 30 years in law enforcement and his analysis of the Weston Investigation in light of his experience and training, as well as his review of and reliance upon relevant CPD documents. Plaintiff argues that Rudolph's opinions do not employ a reliable methodology and that he fails to explain the bases for his opinions. Plaintiff is incorrect. For the reasons discussed below, Mr. Rudolph's opinions are reliable and comport with *Daubert* and Federal Rule of Evidence 702. This Court should deny Plaintiff's Motion.

Mr. Rudolph has a long and extensive history as a law enforcement officer.[1] He was a member of the New York Police Department ("NYPD") for 30 years, starting in October 1990, Ex.

---

[1] Plaintiff does not challenge Mr. Rudolph's qualifications to serve as an expert. To the extent he raises such an argument in his reply brief, this Court should deem this argument waived. *See Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020).

4

B, Deposition of Richard Rudolph, May 9, 2024 ("Rudolph Dep."), p. 25:5-10, and he had been assigned to several different areas within the NYPD over that time. Ex. A, Rudolph Report, p. 2. Mr. Rudolph served in the Special Operations Division's Street Crime Unit, and later was a Narcotics Investigator. *Id.* at p. 2. Mr. Rudolph also served as the Internal Affairs Supervisor Sergeant/Investigator, where he was responsible for conducting citywide investigations into allegations of excessive force, deaths in custody, and firearm discharges by NYPD personnel. *Id.* Mr. Rudolph was promoted to Detective Squad Commander and then to the Commanding Officer of the Queens Homicide Squad. *Id*. Over the course of his career, Mr. Rudolph supervised and managed over 500 homicide investigations. *Id.* His opinions are based on those three decades in law enforcement, including investigating or supervising the investigation of homicides and allegations of excessive force by NYPD officers, extensive training, teaching, and applying that vast experience and knowledge to his analysis of the information from the dozens and dozens of documents, including Chicago Police Department ("CPD") reports, court and deposition transcripts, and witness statements, regarding the Weston Investigation. *See* Exhibit C, Rudolph Report, Revised Addendum B – Material Relied Upon ("Rudolph Addendum"). Mr. Rudolph also reviewed CPD training materials in effect at the time concerning Detective training, lineups, interrogations, and interview techniques. *Id.* The manner in which Mr. Rudolph conducted his review is precisely how a police practices expert should assess a criminal investigation. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013); *Blackmon v. City of Chicago*, 19-cv-767, 2022 WL 21296465, at *3 (N.D. Ill. Aug. 30, 2022).

  The court's analysis is *Blackmon* supports the conclusion that Mr. Rudolph's Report is reliable and he should be permitted to testify to his opinions. In *Blackmon*, the district court found a police practices expert opinion was sufficiently reliable where he reviewed information related

5

to the case (including police reports, criminal trial transcripts, and deposition transcripts from the underlying lawsuits) and then explained how he reached his conclusions. *Id.* The court explained an expert could show how he reached his conclusions by linking them to generally accepted standards in the field or "by citing information within his own practical experience." *Id.*; *see Potts v. Manos*, No. 11-cv-3952, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under *Daubert* and the Federal Rules of Evidence"); *see also* Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendment ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Mr. Rudolph's opinions were reached using the same methodology[2] as endorsed in *Blackmon*. Mr. Rudolph reviewed many of the same materials, including police reports, criminal court transcripts, depositions transcripts (Ex. C, Rudolph Addendum), and explained how the Defendant Officers' actions were consistent with generally accepted law enforcement practices and relied on his vast experience in relevant law enforcement fields in order to reach his conclusions. Ex. A, Rudolph Report, pp. 5-27. He explained how he was familiar with the standards at that time through his own experiences, including supervising and training of detectives, reviewing of written reports, working with federal, state, and local law enforcement agencies from other jurisdictions, and providing training to law enforcement. *Id.* at pp. 3-4. Through his work with the NYPD, Mr. Rudolph was working with the standards for investigating and documenting the steps in the investigations on a daily

---

2 The expert in Blackmon "disclaimed having followed any particular 'methodology" testifying that he did not apply a methodology, but "just…read the police reports." *Blackmon*, 2022 WL 21296465, at *3.

basis. *Id.* at p. 3. Therefore, Mr. Rudolph's opinions are proper under *Daubert* and Rule 702, and he should be permitted to provide them to the jury.

Plaintiff focuses on the precise year of the homicide (1990) in an effort to discredit Mr. Rudolph's opinions and diminish his experience. However, this misguided effort ignores his extensive experience starting with his work the Street Crime Unit involving burglaries, robberies, and violent street crime (Ex. B, Rudolph Dep., p. 26:8-10), to criminal investigations, including the supervision and management of detectives in over 85,000 investigations and over 500 homicides, and cases involving officer misconduct, including excessive force (which is an allegation in this case), and his ability to apply that experience in his review of the Weston Investigation. Ex. A, Rudolph Report, pp. 2-3; Ex. B, Rudolph Dep., p. 30:5-12 ("if somebody had made an allegation that he was beaten during his interrogation, then we're going to investigate that."). Contrary to Plaintiff's intimation[3], Mr. Rudolph testified that he did analyze cases from 1990 and he did review CPD policies and practices from 1990, *Id.* at p. 196:6-8, 17-22. Mr. Rudolph was working with standards related to criminal investigations and documentation of said investigations on a daily basis, and he refers to generally accepted law enforcement standards throughout his Report. Ex. B, Rudolph Report, pp. 2, 12-25. Moreover, application of Mr. Rudolph's extensive law enforcement experience in and of itself would be sufficient to show that his opinions are reliable and admissible. *See* Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendment, *infra* (permitting an expert to rely "solely or primarily on experience" as support for their opinion); *Blackmon*, 2022 WL 21296465, at *3; *see also Potts*, 2017 WL 4365948, at *5. "Put another way, a police practices expert must 'explain how he reaches his conclusions—either

---

3 Read in proper context, Mr. Rudolph is expressing his beliefs about reports written in 1990 and that, in retrospect, things could have been done better, evincing his awareness of the previous standards and an ability to compare them to current ones. Ex. A, Rudolph Dep, p. 196:7-16.

7

by linking them to generally accepted standards in the field or by citing information within his own practical experience.'" *Mendez v. City of Chicago*, 18-cv-5560, 2024 WL 4661139, at *5 (N.D. Ill. Sept. 20, 2024) (*citing Andersen v. City of Chicago*, 454 F. Supp. 3d 808, 814 (N.D. Ill. 2020)).

Plaintiff does not challenge Mr. Rudolph's qualifications, but instead argues that he does not apply a reliable methodology. As discussed above, this argument is without merit. Mr. Rudolph reviewed voluminous materials related to the Weston Investigation (Ex. C, Rudolph Addendum)— as one would expect an expert to do—and he relied on generally accepted law enforcement standards and his three decades of law enforcement experience to arrive as those opinions. *See Blackmon*, 2022 WL 21296465, at *3. Plaintiff offers incomplete snippets and excerpts of certain portions of Rudolph's Report in order to skew the context in which the opinion is offered. The only example Plaintiff cites is Mr. Rudolph's opinion about the interview of Macklin, claiming that Mr. Rudolph fails to provide any basis for that opinion. Pltf.'s Mot., p. 7. However, Plaintiff completely ignores the significant review and analysis of that interview that precedes the portion of Mr. Rudolph's Report to which he cites, and which explains the basis for his opinion regarding Macklin's interview. Ex. A, Rudolph Report, pp. 11-14.

Moreover, Plaintiff's citation to *Andersen v. City of Chicago*, 454 F. Supp. 3d 740 (N.D. Ill. Apr. 14, 2020), is misplaced. Unlike the proposed police practices expert in that case, Mr. Rudolph applied his extensive experience and training, as well as information he learned from a review of voluminous documents, including CPD training materials, to formulate the opinions he reached about the Weston Investigation. Mr. Rudolph's reliance on his law enforcement experience is a proper basis for this opinion, and Plaintiff's argument is therefore without merit. *See Mendez*, 2024 WL 4661139, at *5; *Blackmon*, 2022 WL 21296465, at *3; *Potts*, 2017 WL 4365948, at *5.

Having failed to show Mr. Rudolph's opinions are unreliable, the proper vehicle for Plaintiff to challenge Mr. Rudolph's opinions is cross-examination. *See, e.g.*, *Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); Fed. R. Evid. 702, Advisory Committee Note, *infra* (2000 Amendments); *Schultz,* 721 F.3d at 431; *Sheldon v. Munford, Inc.*, 950 F.2d 403, 410 (7th Cir. 1991) ("Once the district court has found a sufficient foundation for an expert's testimony, it properly leaves questions concerning his methodology, findings, and expertise to cross-examination"); *see also, e.g.*, *Caine v. Burge*, 11-cv-8996, 2013 WL 1966381, at \*\*2-3 (N.D. Ill. May 10, 2013) (noting that the bases challenging the expert's methodology "obviously provide ample areas for cross-examination"); *Wielgus v. Ryobi Techs., Inc.*, 08-cv-1597, 2012 WL 3643682, at \*3 (N.D. Ill. Aug. 23, 2012) ("[T]he trial court's role as gatekeeper is not intended to replace cross-examination and the presentation of conflicting evidence as traditional mechanisms for highlighting weaknesses in the expert's testimony"). In addition to the *Andersen* case cited by Plaintiff, *infra,* the court also issued a separate opinion in that same case regarding another police practices expert. *Andersen v. City of Chicago*, 16-cv-1963, 454 F. Supp. 808, 813 (N.D. Ill. April 14, 2020) (*Andersen* II). In that opinion, the court permitted a police practices expert to opine as to report writing and interrogation practices, both of which he had experience in. *Id.* The court noted that to the extent the defendants wanted to highlight the experts' lack of experience in other areas he was going opine on, they could do so through cross-examination. *Id.*

At trial, Defendant Officers anticipate Mr. Rudolph will testify about his review of the Weston Investigation, the investigatory procedures and standards described in his report, and whether Defendant Officers complied with or violated those standards. This is well-established as

a proper area for a police-practices expert to opine on. *See Jimenez*, 732 F.3d at 721; *see also Blackmon*, 2022 WL 3909182, at \*\*3-7. Defendant Officers will also elicit testimony from Mr. Rudolph to explain his reasoning as to that opinion. Rudolph's 30-year career with the NYPD, another large metropolitan law enforcement agency, and his application of that wealth of knowledge and experience to the Weston Investigation is proper and reliable. For the above reasons, this Court should deny Plaintiff's Motion.

II. **Rudolph's opinions do not "simply recite Defendants' version of the facts," but provide factual bases for his opinions and address certain evidence that is relied upon by Plaintiff.**

Plaintiff's argument that Mr. Rudolph is just reciting Defendants' version of the facts is baseless. Without providing the information he relied on, there would be no factual basis for his opinions. Mr. Rudolph set forth the facts he considered, including those that Plaintiff is asserting are true, and explained how they impacted or were considered in rendering his opinions. This is proper and the Court should deny Plaintiff's Motion.

Mr. Rudolph's inclusion of facts he gleaned from the voluminous materials he reviewed are necessary to explain the basis for his opinions. *See* Ex. A, Rudoph Report, pp. 5-27, Ex. C, Rudolph Addendum. Although Plaintiff seeks to impugn Mr. Rudolph by making the blanket statement that he "largely repeats information from the homicide file, often as though it is fact," the single example he provides is, again, related to the interview of Macklin. Pltf's. Mot., pp. 8-9. And again, Plaintiff ignores the rest of Mr. Rudolph's opinion about that interview, which includes the basis for his opinion. Ex. A, Rudolph Report, pp. 11-14. As far as the dispute about the circumstances surrounding Macklin's interview, that does not impact Mr. Rudolph's opinion. It is well established that "an expert may take one or the other party's version of disputed facts as true when offering an opinion," so there is nothing improper about the manner in which Mr. Rudolph

has arrived at this opinion. *See Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1067 (N.D. Ill. 2018), opinion clarified, 12-cv-04428, 2018 WL 11469072 (N.D. Ill. May 17, 2018); *Sanders v. City of Chicago Heights*, 13-cv-0221, 2016 WL 1730608, at *6 (N.D. Ill. May 2, 2016). Mr. Rudolph can testify to how Macklin's interview was conducted and whether or not it was done consistent with generally accepted law enforcement standards and based on his own experience, and Plaintiff may, subject to potential pretrial rulings or trial objections, cross-examine Mr. Rudolph about the basis for this opinion. *See Caine*, 2013 WL 1966381, at **2-3. Therefore, this Court should reject Plaintiff's argument and deny his Motion.

### III. Mr. Rudolph's opinions regarding motivations or reasoning of witnesses are not speculative and should be allowed.

Plaintiff argues that Mr. Rudolph should not be permitted to testify about motives or intentions of witnesses. Pltf.'s. Mot., p. 9-10. First, Plaintiff's argument is perfunctory and undeveloped, and therefore any argument has been waived. *Shipley v. Chi. Bd. Election Comm'rs*, 947 F.3d 1056, 1062-63 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived"). Second, Mr. Rudolph's opinion would assist the jury in understanding the potential consequences of implicating someone for a crime and the reasons why witnesses who do so may later recant. Finally, Rudolph's opinion is not speculative, but based on his law enforcement experience and, with regard to the single example offered by Plaintiff (again related to the interview of Macklin), is based on statements made by Macklin during an interview with investigators from the Illinois Attorney General's Office. Therefore, Plaintiff's argument is meritless and this Court should permit Rudolph to testify to this and any related opinions.

Plaintiff has provided only one example where he claims Mr. Rudolph is opining based on alleged speculation about a witness's motives or reasoning. Accordingly, Defendant Officers can only respond to this single example. And Plaintiff's entire argument on this point consists of a

conclusory sentence wherein he asserts that Mr. Rudolph speculates as to Macklin's "fear of retaliation" and that this opinion does not require expertise and is "so unreasonably prejudicial" that is should be excluded. That's it. Plaintiff makes no effort to explain why this opinion is speculative, why expert testimony is not required on this topic, or why it is "unreasonably prejudicial." Nor does he provide for the Court which of Mr. Rudolph's opinions he believes should be barred for these reasons. Indeed, Plaintiff does no more than vaguely state that these types of opinions should be barred, without identifying the opinions at issue or making any attempt to explain his reasoning. This argument does not inform the Court of the specific opinions he is challenging, lacks any legal reasoning or explanation, and is undeveloped. Therefore, this argument should be deemed waived. *See Shipley*, 947 F.3d at 1062-63; *Tuduj*, 958 F.3d at 579.

Waiver aside, Plaintiff's argument still fails. Plaintiff contends that it does not require expertise to explain why Macklin would have a fear of retaliation based on gang affiliation. But this underlying opinion would assist the jury in understanding how retaliation may occur when someone informs the police about someone else's criminal conduct and the reasons that a witness may later recant statements that he made that implicate someone in criminal activity, something to which Mr. Rudolph can testify based on his three decades in law enforcement. Moreover, Mr. Rudolph should be permitted to explain the basis for this opinion which, as discussed below, stems from statements that Macklin made to non-CPD personnel.

Contrary to Plaintiff's suggestion, Mr. Rudolph's opinion that Macklin, who implicated Plaintiff in the May 29, 1990 shootings and had a "fear of retaliation" from Plaintiff of another witness (Vic Brown) because of their gang affiliation, is not speculative. Pltf.'s Mot., pp. 9-10. Macklin was interviewed by investigators Ronald Yawger and Gregory Baiocchi from the Illinois Attorney General's Office, Division of Investigations, on June 16, 2009 about the Curtis Sims

homicide at a Wendy's located at 242 West Garfield Boulevard. Exhibit D, Office of the Attorney General Investigative Report ("OAG Report"), pp. 1, 3, IND DEF 0341783. Macklin told those investigators that he talked to "Vic" (presumably "Vic Brown") while in jail and that Vic threatened him, stating that if he did not "take the weight" for the Sims murder, Vic would kill Macklin's brother. Exhibit D, OAG Report, pp. 1, 3, IND DEF 0341783, 0341785. Macklin also told his mother that if his brother ended up getting killed and a .45 caliber was used, Vic was the murderer. *Id.* The OAG Report memorializing Macklin's statement was part of the materials reviewed by Mr. Rudolph, and he properly considered the contents of that report[4] in reaching his opinion. *See* Ex. C, Rudolph Addendum; Ex. D, OAG Report, IND DEF 0341783-0341785. Therefore, this opinion is not speculation, and Mr. Rudolph should be permitted to testify to it, as well as provide the basis for that opinion.

Plaintiff will likely argue in his reply that Macklin's statements were made in connection with the Sims murder, which occurred on June 9, 1990, and not the May 29, 1990 murder and attempt murders, so they should not have been considered as part of Mr. Rudolph's opinion. Such a position is unreasonable and should not be considered. Certainly, fear of retaliation for implicating someone in one murder would easily carry over to implicating someone else in another, which is precisely the situation Macklin faced here. Moreover, and as discussed above, should Plaintiff wish to challenge this opinion or the bases therefor, cross-examination is the proper way to do so. *Mendez*, 2024 WL 4661139, at *5 (*citing Daubert*, 509 U.S. at 595) (the weight an expert give to various facts in forming his opinion "makes for good cross-examination, but is not a basis to exclude the testimony); *Sheldon*, 950 F.2d at 410; *see also Manpower, Inc. v. ins. Co. of Pa.*,

---

4 At his deposition, Macklin testified that he remembers meeting at that Wendy's, but he testified that he did not know anything about the Attorney General's Office and that he just came home and the "police" were out there, and that he never provided them with information about the Sims' homicide. Ex. E, September 28, 2022 Deposition of Dwayne Macklin ("Macklin Dep."), pp. 249:10-250:1, 251:22-24.

732 F.3d 796, 809 (7th Cir. 2013) ("Our system relies on cross-examination to alert the jury to the difference between good data and speculation.") (cleaned up).

Mr. Rudolph's opinion would help the jury determine why Macklin may have decided to, years later, recant what he said about Plaintiff's involvement in the May 29, 1990 crime spree. This opinion is not speculation, but based on his law enforcement experience. It is for the jury to decide why Macklin recanted his statement implicating Plaintiff, and Mr. Rudolph should be permitted to provide them with his well-founded opinion about why Macklin could have recanted absent police misconduct.

## **CONCLUSION**

For the reasons discussed above, this Court should deny Plaintiff's Motion to Exclude Defendants' Proposed Police Practices Expert and permit Mr. Rudolph to testify to the opinions set forth in his Report.

Dated: February 19, 2025.

                                      Respectfully submitted,

                                      */s/ Anthony E. Zecchin*
                                      Special Assistant Corporation Counsel
                                      One of the Attorneys for Defendant Officers

Andrew M. Hale
William E. Bazarek
Jennifer Bitoy
Anthony E. Zecchin
Allyson West
Anne Erickson
HALE & MONICO LLC
53 West Jackson, Suite 334
Chicago, IL 60604
(312) 870-6905
andy@halemonico.com
web@halemonico.com
jbitoy@halemonico.com
azecchin@halemonico.com
awest@halemonico.com
aerickson@halemonico.com

**CERTIFICATE OF SERVICE**

I, Anthony E. Zecchin, an attorney, hereby certify that, on February 19, 2025, I electronically filed the forgoing, **DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' PROPOSED POLICE PRACTICES EXPERT**, with the Clerk of the Court using the ECF system, which simultaneously served copies on all counsel of record via electronic notification.

*/s/ Anthony E. Zecchin*