**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEMOND WESTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 6189 |
| | ) | |
| v. | ) | Judge LaShonda A. Hunt |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Judge Keri L. Holleb |
| | ) | Hotaling |
| Defendants. | ) | |

**DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' PROPOSED GANG EXPERT**

Defendants William Moser, John Paladino, George Becker as Special Representative for the Estate of Michael Kill, Geri Lynn Yanow as Special Representative for Anthony Maslanka and Daniel McWeeny, and Andrew Christophersen (collectively "Defendant Officers"), by and through their undersigned counsel, hereby submit the following response to Plaintiff's Motion to Exclude Defendants' Proposed Gang Expert ("Motion"), Dkt. 437.[1]

## INTRODUCTION

Plaintiff is gaslighting the Court when he suggests that the shootings on May 29, 1990, were somehow not gang-related, peppering his Motion throughout with phrases like CPD "apparently believed the shootings were gang-motived … whether there was a gang-motivation for the trial or whether Plaintiff's co-defendants were in a gang … whether gangs sometimes shared guns or used particular slang … (Motion at p. 1) … investigators apparently believed it was gang motivated, and there is some evidence from police reports that gang slogans were used in

---

[1] The City joins in the relief requested in this response to the extent Plaintiff is seeking to hold the City vicariously liable for alleged actions of the Defendant Officers.

some of the crimes … police had a theory ... that was not borne out by any evidence … (p. 6)." To be clear, the May 29, 1990, shootings, were entirely gang-related. The witnesses and perpetrators of these senseless gang-shootings that killed a working man and wounded a little kid all admitted as much during the investigation. *See* Group Ex. A, CITY-DW-19-20, 35-36, 47 and CITY-DW-217-222. So too did Plaintiff – in his now disputed confession. In his court-reported statement to ASA Paul Sabin, Plaintiff described how the Vice Lords had shot at the Gangster Disciplines earlier in the day on May 29, 1990, and that Gangster Disciples John Walker and Keith Jackson had recruited him and others to "scare" the Vice Lords, which in reality was a mandate to gather guns and shoot back at them. Ex. B, Weston 7540-7545. Indeed, Plaintiff admitted that he shot at a man who was lying in the street after already being shot at as he pleaded "don't shoot." *Id.* at Weston 7546. Further, at the time of the criminal trial the prosecution's theory presented gang evidence front and center. Indeed, the prosecution's opening statement was centered around the gang-related aspects of this shooting and the involvement of gang members, including Weston. Group Ex. C, April 14, 1992 Trial Excerpt, IND DEF 0308664-0308672. The same theme was presented to the jury in the prosecution's closing argument. Group Ex. C, April 20, 1992 Trial Excerpt, IND DEF 0308120-0308151.

Now Plaintiff claims his admissions were all lies and he only said them because he was "tortured" by Defendant Officers to do so and that the gang evidence that is inextricably connected to every facet of this case is somehow not relevant or, if relevant, too prejudicial for this jury to know. Plaintiff wants to rewrite history, ignore facts, and pretend a jury does not need this information but, if it does, an expert is not necessary because it is common sense. Nonsense. Juries do not know how street gangs actually operate and they certainly do not have the institutional knowledge that McMahon does about the Gangster Disciples and Vice Lords. This is not common

sense as Plaintiff suggests, and Mr. McMahon provides precisely that necessary information. The Motion must be denied.

Captain Thomas McMahon was retained by Defendant Officers to review this gang-related murder and the related shootings that occurred on May 29, 1990, and the subsequent investigation that resulted in Plaintiff being arrested and ultimately convicted of the murder of Joseph Watson and attempt murders of Deneen Coats, Ronald Nesbit, and Timothy Jones ("Watson Investigation"). On May 29, 1990, at 1904 W. 57th Street, Watson, a laborer, was fatally shot and 14-year-old Jones, a 7th grade student at Henderson Grammar School, was wounded after being shot three times while riding his bike. This shooting took place at approximately 10:28 p.m. A second shooting took place at 5530 S. Justine, where Coats and Nesbit were shot while sitting on the porch/stairs at that address. A third and final shooting took place on May 29 at 5759 S. Honore, where J.D. Lee, Pierre Solomon, and Derrick Mason were shot. The shootings were all undertaken by Plaintiff's Gangster Disciples street gang in retaliation against a rival gang, the Vice Lords. Group Ex. C, January 16, 1992 Trial Excerpt, IND DEF 0307755-56; Group Ex. A, CITY-DW-47. Less than two months before May 29, 1990 shootings, Plaintiff was arrested for selling narcotics on April 14, 1990 and he identified himself as a "GD" (Gangster Disciple) to members of the Chicago Police Department who arrested him. Ex. D, Demond Weston April 14, 1990 arrest report. During the investigation, Chicago Police officers and detectives learned from witnesses that Gangster Disciples had decided to form a "wrecking crew" to carry out violence (including shooting) against Vice Lords in response to Vice Lords shooting out a car window in Gangster Disciple John Walker's car or because Vice Lords were selling narcotics on Gangster Disciple turf. *See* Group Ex. A, CITY-DW 19, 31-32, 36; Group Ex. C, IND DEF 0307755-56, 0307760, 0307719-20. After the shooting, witnesses reported the offenders yelling gang slogans, including

"G.D.s," a reference to the Gangster Disciple street gang. Group Ex. A, CITY-DW-19-20. At his deposition, Plaintiff could not rule out that he told the arresting officers on April 14, 1990 that he was a GD. Exhibit E, Plaintiff's deposition excerpt, pp. 131-132. And Plaintiff does not dispute that he was a Gangster Disciple, but he claims he was not a Gangster Disciple in May 1990, and claims he became a Gangster Disciple in 1992 after he was incarcerated in the Illinois Department of Corrections for the crimes that are at issue in this case. *Id.* at pp. 135-143.

In his Motion, Plaintiff does not argue or contend McMahon is not an expert on gangs or lacks the qualifications to render the opinions set forth in his Report and deposition. Instead, Plaintiff argues that "McMahon's opinions are inadmissible because they are either determinations for the jury to make or entirely irrelevant and therefore unhelpful." Dkt. 437, at 2. Plaintiff's arguments are without merit. McMahon's opinions are admissible and will be helpful and assist the trier of fact in their determination of the issues in this case. This Court should deny Plaintiff's Motion in its entirety.

## LEGAL STANDARD

"Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony." *United States v. Godinez*, 7 F.4th 628, 637 (7th Cit. 2021); *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Daubert* directs district courts to serve as "gatekeepers" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. For a court to consider an opinion, four factors must be evaluated: (1) if the witness is qualified to provide the opinion; (2) whether the testimony will assist the trier of fast; (3) whether the testimony is based on sufficient facts or data and reliable principles and methods; and (4) whether the opinion is based on a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22

(7th Cir. 2013); *see also Daubert*, 509 U.S. at 589-96; *Oritz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011); *Pursley v. City of Rockford*, No. 18 CV 50040, 2024 WL 1050242, at *4 (N.D. Ill. Mar. 11, 2024) (Johnston, J.).

Rule 702 provides that an expert's opinion is only admissible when the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702(a). In other words, "the ultimate test is whether the testimony would assist the trier of fact in understanding the evidence. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996).

## ARGUMENT

District courts apply the *Daubert* framework using a three-part analysis: first, the court determines whether the proposed witness is qualified as an expert by knowledge, skill, experience, training, or education; second, the court decides whether the reasoning or methodology underlying the expert's testimony is reliable; and third, the court must assess whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The test for reliability is necessarily flexible and courts enjoy broad discretion in making this evaluation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). That said, the admissibility inquiry "must be tied to the facts of a particular case," *Id.* at 15, and must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 150, 152.

## I. Mr. McMahon's Opinions Will Aid the Jury.

Plaintiff argues (Motion at p. 6) that gang activities "are well-within the knowledge of the jury." The Supreme Court says otherwise and has recognized evidence of gang membership and subscription to tenets of a gang is admissible. *See United States v. Abel,* 469 U.S. 45, 47-56 (1984). Further, the Seventh Circuit has "consistently held that under appropriate circumstances gang membership evidence has probative value that can outweigh claims of undue prejudice." *United States v. Butler,* 71 F.3d 243, 251 (7th Cir. 1995) (affirming trial court's admittance of gang evidence against criminal defendant to explain circumstances related to the offense charged). Gang evidence is "particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue, such as in a conspiracy case." *United States v. Suggs,* 374 F.3d 508, 516 (7th Cir. 2004) (affirming admission of gang evidence). In addition, gang evidence should not be excluded if it would "leave a chronological and conceptual void in the story." *See Wilson v. Groaning,* 25 F.3d 581, 584 (7th Cir. 1994) ("Leaving out this evidence [about how the altercation between the plaintiff and defendant took place] would have left the jury with an unduly sanitized and incomplete version of the facts.").

In Section 1983 actions, gang evidence has been admitted through expert witnesses. *See Aguilar v. Dixon,* No. 93 C 1936, 1995 WL 319621, **5-6 (N.D. Ill. May 25, 1995) (admitting expert testimony relating to practices and tenets of street gang to demonstrate bias against the police); *Martinez v. City of Chicago*, No. 07-CV-422, 2009 WL 3462052, at *4 (N.D. Ill. Oct. 23, 2009) (admitting defendants' proposed gang identification expert finding "defendants' theory is that plaintiffs were motivated by their gang affiliation, which rewards criminality, and by their desire to prove their worth as gang members . . . Thus, plaintiff's alleged gang affiliation goes to the heart of defendants' theory of the case. . . this court finds that Malkin's opinions are relevant

to facts in issue."). This is particularly necessary here considering three of the Defendant Officers are deceased, and thus do not have the ability to testify for themselves.

Based on his vast expertise about Chicago street gangs, McMahon opined regarding the underlying gang murder and multiple shootings that occurred on May 29, 1990. Plaintiff does not question his qualifications as an expert and has therefore waived any argument that McMahon is not qualified to render opinions in this case. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (failure to address an argument resulted in waiver). A thorough review of McMahon's Report (Exhibit F, ("McMahon Report")) demonstrates that McMahon opinions are relevant and will assist the trier of fact in this case. Plaintiff's Motion should be denied in its entirety. However, should this Court have further questions regarding McMahon's opinions and testimony, McMahon can be available for a *Daubert* hearing at the Court's convenience.

McMahon's testimony is admissible because it supports Defendant Officers' theory of the case. That is, Plaintiff was motivated by his gang affiliation (as a Gangster Disciple) to participate in gang violence against a rival street gang, the Vice Lords on May 29, 1990. *See United States v. Rodriguez*, 925 F.2d 1049, 1053 (7th Cir. 1991) (testimony regarding gang involvement admissible because it "could have helped the jury understand Mr. Rodriguez's motive for participating in the robbery"). McMahon's opinions will assist the jury in understanding how the Gangster Disciple street gang operated during the relevant time period of the murder and shootings. He will also offer some historical information on the Gangster Disciples and the Vice Lords. McMahon is an expert on Chicago street gangs with significant background and expertise in Chicago street gang activity, and he is extremely knowledgeable on gang members and their affiliations, including the Gangster Disciples and Vice Lords. Exhibit F, at pp. 2-6. McMahon has trained law enforcement on various matters related to Chicago street gangs. *Id.* at pp. 1-2. He has also co-authored a manual on Chicago

Street gangs that has been utilized by law enforcement. *Id.*, at p. 1. Accordingly, McMahon undoubtedly has the requisite expertise to offer expert opinions on Chicago street gangs and the facts and circumstances of the gang-related murder and shootings of May 29, 1990, that resulted from one gang's retaliation against a rival gang. He will also offer historical information on street gangs and how gangs use firearms to commit multiple violent acts and how gang members often recant prior admissions they made to law enforcement. He will further give opinions on how witnesses may fear retaliation by gang members if they provide information to law enforcement. *Id.* at p. 3; *see* generally McMahon Report.

The gang evidence in this matter is inextricably linked to Defendants Officers' ability to explain to the jury what occurred in the underlying case and to rebut the present-day contentions made by Plaintiff and his fellow Gangster Disciples who now deny they participated in or have direct knowledge of the murder and shootings that occurred on May 29, 1990. In short, this information is necessary for Defendant Officers to explain their theory of the case. Courts have long recognized this as a permissible basis for gang expert testimony. *See Martinez v. City of Chicago*, 2009 WL 3462052, at **2-5 (N.D. Ill. Oct. 23, 2009) (denying *Daubert* motion to exclude gang expert opinions, including finding that such information is necessary for the Defendants' theory of their case and that "the average juror is unlikely to be familiar with … gang culture generally."). Plaintiff disputes gang involvement, disputes this was even gang-related, and contends (Motion at p. 6) that the theory that "the motive for the crime was that windows were shot out of the car owned by witness John Walker who was a Gangster Disciple and the shootings were in retaliation" was "not borne out." However, Defendants' theory that the shootings were gang related is appropriately supported by the record. Group Ex. A, CITY-DW-32. Plaintiff is free

to argue otherwise, but that does not support barring McMahon and his opinions as to the gang-related nature of the May 29, 1990 shootings.

Plaintiff also argues that McMahon's determinations about the underlying crimes and investigation are not expert opinions and invade the province of the jury. Motion at p. 5. Plaintiff is incorrect. McMahon's opinions comply with *Daubert* and the requirements Federal Rule of Evidence 702. In fact, Plaintiff's argument is predicated upon his assumption that the evidence offered by McMahon will not assist the trier of fact because "it does not help the jury when it can be derived from common sense, common experience, the jury's own perceptions, or simple logic." *Id.* But this case involves horrific acts of violence perpetrated by the Gangster Disciples to exact revenge on a rival gang that led to a murder and shootings of innocent people. The average juror is unlikely to be familiar with the inner workings of the Gangster Disciples and the Vice Lord gangs or with gang culture generally. *See Martinez*, 2009 WL 3462052, at *4. This entire case is inextricably linked with gangs and gang violence and requires expert testimony that will assist the jury to understand the evidence and determine the facts at issue in this case.

The Seventh Circuit has held gang evidence admissible through expert witnesses as "probative circumstantial support for [a] theory of the case." *Suggs,* 374 F.3d at 517. In *Suggs,* the defendants claimed they were not involved in a drug conspiracy and denied their gang affiliation, instead claiming their tattoos and other affiliation references were reflective of their membership in a rap group. *Id.* at 516-17. Gang evidence was admitted as circumstantial evidence to show the defendants' engagement in a common enterprise and to disprove the defense theory about the rap group, *i.e.* to impeach the defendants. *Id.* at 517. The government properly utilized an expert to testify that the defendants' tattoos were reflective of gang membership. *Id.*

*Suggs* is instructive here. Plaintiff denies he was affiliated with a gang at the time of the murder and shootings. Therefore, gang affiliation and membership is admissible to show the "plaintiffs' bias for each other and against the defendant police officers." *Aguilar,* 1995 WL 319621, at *6 (admitting gang expert to testify about gang tenets and gang membership of plaintiffs in Section 1983 excessive force case); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *6 (N.D. Ill. May 2, 2016). The proffered testimony assists the jury in understanding what otherwise might be outside its grasp. *See S.E.C. v. Lipson*, 46 F.Supp.2d 758, 763 (N.D. Ill. 1998); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person.").

Because the average juror is unlikely to be familiar with the actions of the Gangster Disciple and Vice Lords street gangs, the bitter rivalry over drug turf and willingness to engage in brazen shootings, or with gang culture generally, McMahon's opinions are necessary. *See Martinez*, 2009 WL 3462052, at *4. McMahon will be able to assist the jury in understanding how gangs retaliate against gang members who inform law enforcement about criminal activity perpetrated by other gang members. For example, Dwayne Macklin implicated Plaintiff and other Gangster Disciples in the May 29, 1990, shootings. *See* Exhibit G, Macklin June 9, 1990 court-reported statement. According to Macklin, on May 29, 1990, he was in front on 5928 S. Union with several GDs, including Cortez "Vic" Brown, Willie Childs/Walker, and Demond Weston. They were approached by other GDs from 53rd and Wood including his friend Ronnie Black and other unknown GDs. The 53rd and Wood GDs discussed forming a wrecking crew to retaliate against the Vice Lords for trespassing on GD drug turf. Detective Kill showed Macklin several photos. Detectives presented Macklin with several photos of possible suspects. Macklin identified

Keith Jackson, Johnny Walker, and Tony Miller as the GDs who formed the wrecking crew and directed the crew to be ready between 9:00pm –10:00 pm. *See id.* At his deposition, Macklin disavowed his statements to law enforcement. In his experience as a gang investigator, McMahon has found it is not uncommon for members of a gang to protect each other, to not provide incriminating statements about fellow gang members to law enforcement, and/or to recant previously given incriminating statements to law enforcement after they get into the criminal justice system. One reason being the fear of retaliation. This is just one example of how McMahon's testimony will aid the jury in its review and determination of the issues in this case. And in another example of gang retaliation, McMahon notes how Macklin's own brother, Delvin Bolter was murdered by Cortez Brown following a threat Brown made to Macklin while Mackin was incarcerated. Exhibit F, at p. 13.

## II. McMahon's Opinions Regarding Motivations of Witnesses Is Not Speculative And Should Be Allowed.

Plaintiff argues that McMahon should not be permitted to testify about the motives or intentions of gang members because it is improper. Motion at pp. 7-8. Specifically, Plaintiff asserts that McMahon's opinions that gang members "routinely recant" and opinions as to Dwayne Macklin's recantation are "speculation." In addition, Plaintiff contends McMahon lacks foundation to opine as to the motivation of the shooters. *Id.*

McMahon's opinions on these aspects of gang life are not speculative but based on his decades in law enforcement and his investigations into gang members; the crimes they have committed; intelligence gathering and enforcement activities regarding street gangs operating in Chicago; as well as on his general knowledge that gang culture often requires members to participate in illegal activity to achieve gang membership and respect. As to Plaintiff's assertion that McMahon should be barred from testifying as to why gang members recant, including Macklin

here, such testimony will aid the jury. McMahon will explain that gang members face retaliation in the form of harm and injury from cooperating with police, so gang members recant for "self-preservation." Ex. F, at p. 16. In addition, gang members like Macklin recant to help their fellow gang members avoid criminal liability. *Id.* Similarly, McMahon is qualified to opine on the motivation of the shooters in the Gangster Disciple "wrecking crew." McMahon explained that gang retaliation is usually spontaneous and quick to occur, and the evidence in the record shows that a "wrecking crew" was formed. *Id.* at p. 17. As a fellow gang member, Plaintiff would be expected to participate in the retaliation, and the goal was to shoot members of the Vice Lords in the area where Vice Lords controlled.

Far from being speculation, McMahon's opinions are based on his over three decades in law enforcement. It is ultimately for the jury to decide why witnesses in this case recanted their prior statements, but McMahon should be permitted to assist the jury by providing the framework regarding why gangs members recant prior statements. See *Martinez*, 2009 WL 3462052, at *5. In addition, McMahon will properly assist the jury, based on the record, in understanding why the shooters would form a wrecking crew and retaliate against the Vice Lords. *Rodriguez*, 925 F.2d at 1053 (testimony regarding gang involvement admissible because it "could have helped the jury understand Mr. Rodriguez's motive for participating in the robbery").

## III. McMahon's Opinions Are Relevant, Not Unfairly Prejudicial and Should Be Allowed.

Plaintiff's next argument in support of his motion is that McMahon's discussion of gang history in Chicago is irrelevant and prejudicial and therefore should be barred pursuant to Federal Rule of Evidence 403. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ..." Fed. R. Evid. 403. Even so, only *unfairly* prejudicial evidence *must* be excluded." *Suggs*, 374 F.3d at 516 (emphasis in

original). As the Seventh Circuit recognizes, "[t]here is a difference between evidence that brings unfair prejudice and evidence that is damning." *United States v. Burt,* 495 F.3d 733, 740-41 (7th Cir. 2007) (admitting graphic chat logs in criminal prosecution for sexual exploitation). Here, McMahon's opinions are probative to assist the jury in deciding what happened on May 29, 1990 and are not substantially outweighed by unfair prejudice to Plaintiff. McMahon's testimony regarding gang activity provides probative circumstantial support for Defendants' theory of the case, in particular that Plaintiff and his fellow gang members' actions stemmed from their common gang membership and desire to seek revenge against a rival gang. *See Suggs*, 374 F.3d 508. This, and the other opinions offered by McMahon, will assist the trier of fact in understanding the role that gang affiliation and membership played in this case. Further, Plaintiff has not shown why these opinions are unfairly prejudicial, beyond his own say so.

Furthermore, the Seventh Circuit has "long recognized that gang membership has probative value under appropriate circumstances," *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990), such as to show motive, bias, or the existence of a conspiracy. *See United States ex rel. Hairston v. Warden*, 597 F.2d 604, 607-08 (7th Cir. 1979) (evidence of gang membership admissible to show motive for murder); *United States v. Montgomery*, 390 F.3d 1013 (7th Cir. 2004) (evidence of gang membership admissible to show defendant's motive for carrying a weapon); *Clark v. O'Leary,* 852 F.2d 999 (7th Cir. 1988) (witness' membership in rival gang admissible for purposes of impeachment to show bias); *Suggs*, 374 F.3d at 517 (evidence of defendants' gang affiliation admissible to show existence of a conspiracy); *United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir. 1984) (evidence of motorcycle gang's lifestyle admissible to provide accurate description of kidnapping victim's "ordeal"). Similarly, in *Abel*, 469 U.S. at 49, the Supreme Court held that evidence demonstrating gang membership was "sufficiently

probative of … possible bias towards respondent to warrant its admission into evidence." In this case, McMahon's opinions will assist the jury in understanding the bias that gang members have to protect fellow gang members, which the jury could conclude was the basis for the recantations of prior statements about Plaintiff's involvement in the May 29, 1990 murder and shootings.

McMahon's testimony about the inner workings of the GDs and Vice Lords to demonstrate motive for Plaintiff's and other gang members behavior, not merely to show gang membership. McMahon will also offer opinions such as gang retaliation and why witnesses may recant out of fear for their own safety, and the use of gang guns for retaliation purposes. Thus, gang evidence and Plaintiff's gang activities provide probative circumstantial support for Defendants' theory of the case: that Plaintiff and his fellow Gangster Disciples were motivated by revenge to attack a rival gang. *See Suggs*, 374 F.3d 508 (evidence of gang affiliation, including expert testimony, admissible to support government's theory of the case that the indicted individuals had engaged in a conspiracy to distribute crack). And, as discussed above, the probative value of McMahon's opinion regarding Plaintiff's gang activities and that of his cohorts is not substantially outweighed by the danger of unfair prejudice. *See Martinez*, 2009 WL 3462052, at *5.

Finally, Plaintiff's reliance on *Fields v. City of Chicago* is misplaced. "The District Court applies the *Daubert* analysis to evaluate an expert on a case-by-case basis and is not convinced to depart from that analysis by the finding of other Courts." *Demouchette v. Dart*, 2012 WL 6568232, at *7 (N.D. Ill. Dec. 14, 2012) (refusing to bar expert even where that expert was barred in a previous case by a different judge.). This Court should analyze the admissibility of McMahon's testimony based on the materials and briefing in this case without reliance on *Fields*.

*Fields* is also distinguishable. First, the *Fields* court barred McMahon's opinions, rejecting the defendants' assertion that the opinions corroborate their theory of the case. But in doing so,

that decision appears to conflict with Seventh Circuit case law holding gang evidence admissible through an expert witness because it is "probative circumstantial support for [a] theory of the case." *Suggs,* 374 F.3d at 517; *see also Martinez*, 2009 WL 346052, at *5. To the extent *Fields* improperly discounts circumstantial support for a party's theory of a case, contrary to Seventh Circuit case law, it should not be followed.

Second, Defendants here are not offering McMahon's opinions to "expand the case into a trial involving the full scope of criminal activity engaged in" by the Gangster Disciples. *See Fields*, 2014 WL 13110802, at *3. Rather, as explained, McMahon is offering opinions as to gang-related issues, including recantation of statements and gang retaliation. In reaching its conclusion that the gang evidence was inadmissible, the *Fields* court found that generalized misconduct by the El Rukn street gang had no bearing on the case to the extent it was "not claimed to have involved Fields" and not "directly related to the Smith/Hickman and Vaughn/White" murders. *Id.* Here, McMahon opines Plaintiff was motivated by his gang affiliation (as a Gangster Disciple) to participate in gang violence against a rival street gang, the Vice Lords on May 29, 1990. Because these opinions are "directly related" to the underlying case, *Fields* is distinguishable.

## CONCLUSION

WHEREFORE, Defendant Officers respectfully request that this Honorable Court enter an order denying Plaintiff's motion to exclude the expert opinions and testimony of Thomas McMahon, and for any other relief the Court deems just and proper.

Dated: July 24, 2026.

Respectfully submitted,

*/s/ Jennifer Bitoy*
Special Assistant Corporation Counsel
One of the Attorneys for Defendant Officers

Andrew M. Hale
Jennifer Bitoy
Anthony E. Zecchin
Allyson West
Anne Erickson
HALE & MONICO LLC
53 West Jackson, Suite 337
Chicago, IL 60604
(312) 870-6905
andy@halemonico.com
web@halemonico.com
jbitoy@halemonico.com
azecchin@halemonico.com
awest@halemonico.com
aerickson@halemonico.com

**CERTIFICATE OF SERVICE**

I, Jennifer Bitoy, an attorney, hereby certify that, on July 24, 2026, I electronically filed the forgoing, **DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' PROPOSED GANG EXPERT**, with the Clerk of the Court using the ECF system, which simultaneously served copies on all counsel of record via electronic notification.

*/s/ Jennifer Bitoy*